IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHEN OLLAR, et al.

        Plaintiffs,

        v.                   Case No.:  1:19-cv-01847-KBJ

THE DISTRICT OF COLUMBIA, et al.

        Defendants.

_____

**PLAINTIFFS' OPPOSITION TO DEFENDANT NORRELL ATKINSON'S MOTION TO DISMISS**

COME NOW Plaintiffs Miriam Berman and Stephen Ollar, appearing *pro se*, and hereby request that the Honorable Court deny Defendant Atkinson's Motion to Dismiss the Complaint.

As set forth in the Memorandum and Points of Authorities, the Complaint more than satisfies Plaintiffs' obligation to state a claim for relief and provide Defendant Atkinson with fair notice of those claims and the grounds upon which they rest.  Furthermore, Defendant Atkinson has failed to satisfy her burden to establish that she is entitled to immunity for the misconduct alleged in the Complaint.

Respectfully submitted,

/s/ Miriam Berman
Miriam Berman
3600 Connecticut Ave., N.W., Apt. 307
Washington, DC 20008
Tel:  (703) 282-8384
mimsberman@yahoo.com
*Pro se Plaintiff*

RECEIVED
OCT 2 1 2019
Clerk, U.S. District and
Bankruptcy Courts

1

/s/ Stephen P. Ollar
Stephen P. Ollar
D.C. Bar No.:  1617446
3600 Connecticut Ave., N.W., Apt. 307
Washington, DC 20008
Tel:  (907) 382-7675
stephenpollar@gmail.com
*Pro se Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of October, 2019, a copy of the foregoing

Plaintiffs' Opposition was hand filed with the Court and served via email[1] to:

Robert A. Deberardinis, Jr.
Aimee E. Saginaw
441 4th Street, N.W., Suite 630 South
Washington, DC 20001
robert.deberardinis@dc.gov
*Attorneys for Defendants the District of Columbia, Channelle Reddrick, Brooke Beander,*
*and Lynsey Nix*

and

Jodi V. Terranova
1500 K. Street, N.W., Suite 330
Washington, DC 20005
jodi.terranova@wilsonelser.com
*Attorney for Defendant Atkinson*

/s/ Stephen P. Ollar
Stephen P. Ollar

---

[1]  The District Court's adoption of the NextGen CM/ECF efiling system on October 7, 2019, has disabled Plaintiffs'
ability to electronically file with the Court.  Plaintiffs are in the process of resolving the issue with the Court.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEPHEN OLLAR, et al.** | : | |
| Plaintiffs, | : | |
| v. | : | **Case No.:  1:19-cv-01847-KBJ** |
| **THE DISTRICT OF COLUMBIA, et al.** | : | |
| Defendants. | : | |

<u>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**</u>
<u>**THEIR OPPOSITION TO DEFENDANT ATKINSON'S MOTION TO DISMISS**</u>

COME NOW Plaintiffs Miriam Berman and Stephen Ollar, appearing *pro se*, file this Memorandum of Points and Authorities in support their opposition to Defendant Atkinson's Motion to Dismiss.

As reasons therefore, Plaintiffs state as follows:

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   THE LEGAL STANDARD FOR MOTIONS TO DISMISS ................................ 1

III.  DEFENDANT ATKINSON'S ARGUMENT THAT THE COURT LACKS SUBJECT MATTER JURISDICTION IS MERITLESS ............................................................ 2

IV.   DEFENDANT ATKINSON FAILS TO MEET HER BURDEN OF PROVING THAT SHE IS ENTITLED TO STATUTORY IMMUNITY ................................................. 4

  A.  STATES CANNOT IMMUNIZE INDIVIDUALS FROM LIABILITY UNDER § 1983 FOR VIOLATING THE CONSTITUTIONAL RIGHTS OF OTHERS ................................. 4

  B.  DEFENDANT ATKINSON IS A STATE ACTOR AND IS NOT ENTITLED TO IMMUNITY PURSUANT TO D.C. CODE § 4-1321.04 ............................................. 5

  C.  DEFENDANT ATKINSON IS ALSO NOT ENTITLE TO IMMUNITY  PURSUANT TO D.C. CODE § 4-1301.08 ............................................................................. 7

V.   PLAINTIFFS HAVE SUFFICIENTLY PLED A SECTION 1983 CLAIM AGAINST DEFENDANT ATKINSON ................................................................................. 9

  A.  DEFENDANT ATKINSON CONCEDES THAT SHE IS A STATE ACTOR ............... 10

  B.  CONSTITUTIONAL VIOLATIONS ALLEGED IN THE COMPLAINT ..................... 12

VI.   THE COMPLAINT STATES VIABLE COMMON LAW CLAIMS, FOR WHICH PLAINTIFFS ARE ENTITLED TO RELIEF ......................................................... 13

  A.  NEGLIGENCE AND GROSS NEGLIGENCE ............................................... 13

  B.  ABUSE OF PROCESS ............................................................................ 15

  C.  NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ............................... 15

D.  INTENTIONAL   INFLICTION   OF   EMOTIONAL   HARM   AND   PUNITIVE

DAMAGES ........................................................................................................... 16

VII.  LEAVE TO AMEND SHOULD BE GIVEN TO CURE ANY DEFICIENCIES ............ 17

VIII.  CONCLUSION ........................................................................................................ 18

## **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .................................................................... 2

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 2

*Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016) ................................................. 8

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ............................................... 1

*Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) .......................................................... 5

*Burns v. Reed*, 500 U.S. 478 (1991) ......................................................................... 4

*Crowley v. North American Telecommunications Ass'n*, 691 A.2d 1169 (D.C. 1997) ............... 18

*Dennis v. Sparks*, 449 U.S. 24 (1980) ...................................................................... 9

*Foman v. Davis*, 371 U.S. 178 (1962) ...................................................................... 18

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011) ......................... 14, 16

*In re Interbank Funding Corp. Sec. Litig.*, 668 F. Supp. 2d 44 (D.D.C. 2009) ............ 2

*Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033 (D.C. Cir. 2003) ............... 2, 13

*Matthews v. District of Columbia*, 730 F. Supp. 2d 33 (D.D.C. 2010) ..................... 2

*Parham v. J.R.*, 442 U.S. 584 (1979) ................................................................... 3, 12

*Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79 (D.D.C. 2000) ........................... 10

*Santosky v. Kramer*, 455 U.S. 745 (1982) ............................................................... 3

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ................................................................. 2

*Singh v. District of Columbia*, 881 F. Supp. 2d 76 (D.D.C. 2012) ................... 1, 2, 4, 13

*Taylor v. District of Columbia*, 840 F. Supp. 2d 348 (D.D.C. 2012) ......................... 2

*Tenney v. Brandhove*, 341 U.S. 367 (1951) ............................................................. 5

*Turner v. District of Columbia*, 532 A.2d 662 (D.C. 1987) ..................................... 14

*Warren v. District of Columbia*, 444 A.2d 1 (D.C. 1981) ............................................................. 14

*Williams v. United States*, 396 F.3d 412 (D.C. Cir. 2005) ............................................................. 9

**Statutes**

42 U.S.C. § 1983 ............................................................................................................ 4, 9

D.C. Code § 12-302 .......................................................................................................... 3

D.C. Code § 4-1301.08 .................................................................................................. 7, 8

D.C. Code § 4-1321.01 ...................................................................................................... 6

D.C. Code § 4-1321.02 ...................................................................................................... 6

D.C. Code § 4-1321.04 ................................................................................................ 4, 5, 6

D.C. Code § 4-1321.08 ...................................................................................................... 5

## I.      INTRODUCTION

Similar to Defendants District of Columbia, Reddrick, Nix, and Beander's motion to dismiss, Defendant Atkinson's motion prefers to exalt her actions rather than grapple with the well-pled facts in the Plaintiffs' Complaint.   But Defendant Atkinson's characterization of her conduct is not at issue.   The sole question for the Court is whether the Complaint, taken on its face, alleges sufficient facts to state a claim upon which relief may be granted.

To that end, Plaintiffs have set forth in considerable detail the various underlying facts and the nature of their claims against Defendant Atkinson.   The Complaint describes how Defendant Atkinson was purposefully directed by the District of Columbia (hereinafter "the District") and Defendant Reddrick to conduct a medically unnecessary investigation of the Plaintiffs' daughter without Plaintiffs' knowledge or consent.   That investigation inflicted needless suffering onto a six-week-old infant and violated Plaintiffs' parental rights.   When Plaintiffs confronted Defendant Atkinson with her abuses, she notified Defendant Reddrick, and they agreed to unlawfully seize Plaintiffs' daughter and remove Plaintiffs from the hospital. These acts violated Plaintiffs' constitutionally protected right to the sanctity of their family. Although no evidence of abuse has ever existed, Plaintiffs were subjected to family separation for nine months as they were forced to incur substantial economic losses, and suffer severe and irreparable emotional harm and special injuries.   Plaintiffs now seek compensation for their various damages caused by these Defendants.

## II.     THE LEGAL STANDARD FOR MOTIONS TO DISMISS

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint." *Singh v. District of Columbia*, 881 F. Supp. 2d 76, 81 (D.D.C. 2012) (citing *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)).   It does not test the plaintiffs' ultimate likelihood of success on the merits, but rather, whether plaintiffs have

properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The complaint is only required to set forth a short and plain statement of the claim to give the defendants fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003). It is unnecessary for plaintiffs to plead all elements of a prima facie case in the complaint or to plead law or match facts to every element of a legal theory. *Singh*, 881 F. Supp. 2d at 81. "A court considering this type of motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff[s'] favor." *Id.* "Ambiguities must be resolved in favor of the plaintiffs, giving them the benefit of every reasonable inference drawn from the well-pleaded facts and allegations in their complaint." *Taylor v. District of Columbia*, 840 F. Supp. 2d 348, 351 (D.D.C. 2012) (citing *In re Interbank Funding Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009)).

"[T]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiffs' allegations." *Taylor*, 840 F. Supp. 2d at 351 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This amounts to a 'two-pronged approach' under which a court first identifies the factual allegations entitled to an assumption of truth and then determines 'whether they plausibly give rise to an entitlement of relief.'" *Matthews v. District of Columbia*, 730 F. Supp. 2d 33, 35 (D.D.C. 2010).

## III.   DEFENDANT ATKINSON'S ARGUMENT THAT THE COURT LACKS SUBJECT MATTER JURISDICTION IS MERITLESS

Defendant Atkinson's initial argument is that the Court lacks subject matter jurisdiction because Plaintiffs' daughter is not a party to this matter. Def.'s M. at 5. According to Defendant

Atkinson, Plaintiffs cannot show "injury-in-fact" because all "legal rights . . . belong to the child." *Id.* at 6. In other words, Defendant Atkinson suggests that Plaintiffs were unharmed when she conspired with the other Defendants to abuse and unlawfully seize Plaintiffs' daughter and to fabricate evidence.

First, the physical and emotional harm inflicted onto parents when their child is taken from their care is so universally known that the Court's time should not be wasted disputing it. *See e.g.*, U.S. Const. Amend. V. ("No person shall be . . . deprived of life, liberty or property, without due process of law."); *Santosky v. Kramer*, 455 U.S. 745, 753 (1982) (recognizing the fundamental right and protected interest of parents to raise their children). The unlawful seizure here, of which Defendant Atkinson was a principle actor, caused irreparable emotional and financial harm to Plaintiffs and violated their Constitutional rights, as fully alleged in the Complaint. Compl. ¶¶ 1, 10, 34, 38, 50, and 76. Defendant Atkinson's misconduct further violated Plaintiffs' constitutionally protected right to make all medical decisions regarding their daughter's medical care. *See infra* Part IV; *Parham v. J.R.*, 442 U.S. 584, 603 (1979).

Second, Defendant Atkinson's efforts to require Plaintiffs' daughter to be a party to this suit is a veiled attempt to trap Plaintiffs in an impossible situation on account of their *pro se* status. While not clearly established in this jurisdiction, a majority of the states preclude a parent from representing their child's interests in a court without the assistance of counsel. Although Plaintiff Ollar is a member of the bar, familial representation is highly discouraged. Plaintiffs' daughter certainly has claims against these Defendants, but her claims are tolled until three years after she reaches the age of maturity. D.C. Code § 12-302. Plaintiffs' individual claims are not tolled and had to be brought before the expiration of the three-year statute of limitations. Defendant Atkinson does not cite any statute or rule that mandates that every potential plaintiff

must bring their claims together in a single action.  As discussed above, the Complaint more than satisfies Plaintiffs' requirement to show injury-in-fact.

A motion to dismiss tests the legal sufficiency of the complaint that was actually filed. *Singh*, 881 F. Supp. 2d at 81.  It is not a vehicle in which a defendant can force the inclusion of additional plaintiffs.  Defendant Atkinson's argument fails to address even one of the many harms caused by her misconduct on Plaintiffs as alleged in the Complaint.  It is not Plaintiffs' burden to prove Defendant Atkinson's motion to dismiss.  Because Defendant Atkinson failed to do so, the Court must deny her subject matter jurisdiction argument.

## IV.   DEFENDANT ATKINSON FAILS TO MEET HER BURDEN OF PROVING THAT SHE IS ENTITLED TO STATUTORY IMMUNITY

Defendant Atkinson alone bears the burden to show that she is entitled to statutory immunity. *See e.g., Burns v. Reed*, 500 U.S. 478, 486 (1991).  She has resoundingly failed to meet that burden.  Defendant Atkinson's entire argument for immunity is that, because she can be classified as a "mandatory reporter" under D.C. Code § 4-1321.04, she is automatically granted complete immunity for all of her misconduct, irrespective of the fact that she never even made a report.  Def.'s M. at 7-9.  Under this tenuous logic, all medical providers are exempt from all liability for all tortious conduct simply because they are mandatory reporters.  This argument is meritless.

## A.   STATES CANNOT IMMUNIZE INDIVIDUALS FROM LIABILITY UNDER § 1983 FOR VIOLATING THE CONSTITUTIONAL RIGHTS OF OTHERS

Section 1983 provides a cause of action against "**every person** who, under color of any statute . . . of any State" deprives another of his "rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured."  42 U.S.C. § 1983.  The Supreme

4

Court has long interpreted § 1983 to not abrogate immunities "well grounded in history and reason." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (citing *Tenney v. Brandhove*, 341 U.S. 367, 376 (1951)).  Some immunities, such as legislative and prosecutorial immunity, were well established in 1871 when the Civil Rights Act was passed.  *Id.*  However, the Supreme Court has stated that the courts "do not have a license to establish immunities from § 1983 actions in the interests of what [the courts] judge to be sound public policy." *Id.*  Congress alone must expressly provide immunity from suit under § 1983.

Defendant Atkinson is simply incorrect when she states that D.C. Code §§ 4-1321.04 and 4-1321.08 entitles her to "civil immunity" and that "all of Plaintiffs' claims must be dismissed against her." Def.'s M. at 9.  Defendant Atkinson has failed to direct the Court to any authority that supports that these two state statutes immunize her against federal claims brought pursuant to § 1983 for constitutional violations.  Immunity for being a mandatory reporter has no basis in history, let alone in 1871 when the Civil Rights Act was passed.  Therefore, even if *arguendo* the Court finds that Defendant Atkinson was a mandatory reporter, it would not provide her immunity from suit with regard to Plaintiffs § 1983 claims.

**B.      DEFENDANT ATKINSON IS A STATE ACTOR AND IS NOT ENTITLED TO IMMUNITY PURSUANT TO D.C. CODE § 4-1321.04**

The statutory immunity granted under the D.C. Code is far narrower than Defendant Atkinson suggests.  Specifically, D.C. Code § 4-1321.04 states:

> Any person, hospital, or institution **participating in good faith in the making of a report** pursuant to this subchapter shall have immunity from liability, civil or criminal, that might otherwise be incurred or imposed **with respect to the making of the report**.  Any such participation shall have the same immunity with respect to participation in any judicial proceeding involving the report.  In all civil or criminal proceedings concerning the child or resulting from the report good faith shall be presumed unless rebutted.

(emphasis added).  The plain reading of this statute and its subchapter of the code limits its

applicability to those persons who initially notify the District of suspected neglect. *See* D.C. Code § 4-1321.01 ("It is the purpose of this subchapter to require a report of a suspected neglected child in order to **identify** neglected children . . . ."); D.C. Code § 4-1321.02 ([A]ny person . . . who knows or reasonable cause to suspect that a child . . . has been or is immediate danger of being a mentally or physically abused or neglect child . . . **shall immediately report** . . such knowledge . . . .") (emphasis added). Defendant Atkinson admits that a nurse at a different hospital made the only report to CFSA. *See* Def.'s M. at 8; Compl. ¶ 15. That report was made two days before Defendant Atkinson's involvement in this matter. Moreover, Defendant Reddrick made a "referral" to Children's National Medical Center's (hereinafter "CNMC") Child and Adolescent Protection Center (hereinafter "CAPC") to assist in the District's investigation. *Id.* at ¶ 27. That is the definition of purposeful direction, not of mandatory reporting.

Defendant Atkinson wholly fails to justify why she should be afforded statutory immunity for a report that she is disconnected from in both time and space. The mere fact that the District directed Defendant Atkinson to conduct an investigation, after a report had already been made, does not entitle her to immunity for her tortious conduct committed days and weeks afterwards. The purpose of § 4-1321.04 is to encourage the good faith reporting of suspected abuse by those individuals who are in a position to observe such abuse. It was never intended to protect state actors from liability for their own intentional abuse of a child while performing an investigation at the District's behest.

Furthermore, the Complaint has more than rebutted any presumption that Defendant Atkinson conducted herself in "good faith," so as to be entitled to immunity under § 4-1321.04. As stated in the Complaint, Defendant Atkinson intentionally misled Plaintiffs as to the purpose

6

of her involvement.  Compl. ¶ 28.  She did not disclose that the District had directed her to investigate the etiology of the Plaintiffs' daughter's injuries.  *Id.* at ¶ 27.  Defendant Atkinson failed to seek Plaintiffs' consent for the painful and unnecessary tests she herself ordered.  Those tests subjected D.O. to 72-hours of needless starvation for an MRI of her spine, painful lacerations of her feet for a battery of blood tests, and poisoned her with dangerous radiation and anesthetic.  *Id.* at ¶¶ 27-32.  Even after Plaintiffs' removal from the hospital, Defendant Atkinson ordered D.O. to undergo a second MRI, for which she was again needlessly sedated.  Defendant Atkinson knew Plaintiffs' removal prevented them from consenting to the MRI or the sedation, but she ordered it regardless.  *Id.* at ¶ 34, 40.  Yet, Plaintiff Berman's signature was forged on the consent form for said sedation.  *Id.* at ¶ 40.  Defendant Atkinson sought evidence of parental malfeasance to justify her actions and avoid liability for the clear abuse that she committed on Plaintiffs' daughter.  When that evidence did not materialize, Defendant Atkinson and the other Defendants fabricated claims of an unexplained injury and accused Plaintiffs' of not cooperating with their joint investigation.  *Id.* at ¶ 37, 44.  These are the facts as alleged in the Complaint. Defendant Atkinson does not address how these facts, taken as true, entitle her to a presumption of good faith.  Therefore, her claim of immunity must fail.

**C.   DEFENDANT ATKINSON IS ALSO NOT ENTITLE TO IMMUNITY PURSUANT TO D.C. CODE § 4-1301.08**

Defendant Atkinson makes a second mistaken argument that she is somehow immune from liability pursuant to D.C. Code § 4-1301.08.  Section 4-1301.08 states:

> As part of the investigation required by this part, **any person responsible for the investigation** may take, or have taken, photographs of each area of possible trauma on the child or photographs of the conditions surrounding the suspected abuse or neglect of the child, and if medically indicated, have radiological examinations, including full skeletal x-rays, performed on the child.

First, the "person responsible for the investigation" as specifically limited by this "part" of the

code are CFSA or MPD investigators, and not doctors or state actors.   Defendant Atkinson was highly selective of the language from this statute she included in her motion so as to give the appearance that it applied to her; it does not.  Def.'s M. at 8.  Second, nowhere in the statute or this subchapter of the D.C. Code is immunity even discussed.  Defendant Atkinson, without a basis for doing so, extends immunity from another subchapter of the D.C. Code to the conduct discussed in this subchapter.

Third, Plaintiffs submit that § 4-1301.08 is *per se* unconstitutional since *Birchfield v. North Dakota*, wherein the Supreme Court held that it was an unconstitutional intrusion in the right of an individual to have his/her blood drawn without a warrant, in order to search for evidence of a criminal offense located within the individuals' body.  136 S. Ct. 2160, 2184 (2016).  Subjecting a non-consenting child to a medically unnecessary radiological examination for the purposes of an investigation—based solely on the mere suspicion of abuse or neglect rather than actual evidence—is far more intrusive than the blood draw discussed in *Birchfield*.  It carries with it the significant risk of the child developing life-threating cancer as a result of the increased radiation exposure.  Furthermore, Defendant Atkinson's misconduct was not limited to a radiological examination.  She ordered medically unnecessary and lengthy blood draws, which *Birchfield* explicitly held unconstitutional, and ordered an MRI that resulted in D.O. being deprived of nutrition for 72 hours and administered potentially lethal sedation, all without Plaintiffs' consent.  Compl. ¶¶ 29-32.  Defendant Atkinson continued abusing D.O. after Plaintiffs' removal by subjecting her to a second MRI.  *Id.* at ¶ 40.  The illegality of this conduct was so apparent that "Plaintiff Berman's signature was *forged* on the medical authorization for the anesthetic."  *Id.*   And yet, Defendant Atkinson would have this Court find that she is somehow entitled to immunity for abusing a six-week-old infant.

8

While Defendant Atkinson makes the unsupported and self-serving pronouncements that she "was responsible for caring for a child" and was "using hospital standard practices and protocols to evaluate head trauma in an infant," she fails to address how Defendants Beander and Reddrick's testimony that they directed her to investigate the etiology of Plaintiffs' daughter's injuries entitles her to immunity. Def.'s M. at 9. Confusingly, Defendant Atkinson concedes that she was working at the direction of the District. She states, "[CNMC], and specifically [CAPC], **works with** [CFSA] to *investigate, assess, and treat child abuse*." Def.'s M. at 8 n.2 (emphasis added). Defendant Atkinson goes on to cite a statute that permits CFSA to contract with third-parties to conduct its investigation. *Id.* That is again the very definition of a state actor. Defendant Atkinson simply does not justify why a state actor should be protected from liability as a mandatory reporter, when the government officials who directed her misconduct lack similar immunity. Therefore, this argument is meritless.

## V.   PLAINTIFFS HAVE SUFFICIENTLY PLED A SECTION 1983 CLAIM AGAINST DEFENDANT ATKINSON

As noted above, section 1983 provides a cause of action against "**every person** who, under color of any statute . . . of any State" deprives another of his "rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983 (emphasis added). The Supreme Court has held that "to act under color of state law for § 1983 purposes does not require that the defendant be an officer of the state." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Rather, it is enough that the private person be a "**willful participant** in joint action with the State or its agents." *Id.* "Private persons, jointly engaged with state officials in the challenged action, are acting see 'under color' of law for purposes of § 1983 actions." *Id.* at 27-28. *See also Williams v. United States*, 396 F.3d 412, 414 (D.C. Cir. 2005)

("Courts generally treat 'under color' of law as the same thing as the 'state action' required under the Fourteenth Amendment, and state action may be found if . . . there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself."); *Parker v. Grand Hyatt Hotel*, 124 F. Supp. 2d 79, 88 (D.D.C. 2000) ("Liability for conspiracy under section 1983 . . . may be imposed on a private individual or party who acts in concert with the party or parties who are acting under color of law.").

### A.    DEFENDANT ATKINSON CONCEDES THAT SHE IS A STATE ACTOR

Defendant Atkinson attempts to evade liability by asserting that she is not a state actor; yet, while addressing her conduct in this matter, she repeatedly concedes her willful participation in the District's investigation.   Def.'s M. at 8-11.   For example, Defendant Atkinson simultaneously promotes her lofty duty to "participate[] in an investigation using hospital standard practices" and then retreats in the very next section by claiming that she was merely coincidently "examining and treating D.O. while [CFSA] conducted its investigation."  *Compare* Def.'s M. at 9, *with* Def.'s M. at 10.

The facts alleged in the Complaint, and reinforced by Defendants' prior testimony, fully support that Defendant Atkinson was a willful participant in the District's investigation. Defendant Reddrick made a "referral" to CAPC to have one of its pediatricians assist in the District's investigation because the District needs CAPC's "medical information and medical findings to assist in CFSA's . . . determination and investigation.  Compl. ¶ 27.  Defendant Reddrick has testified that she "absolutely" relies on information she receives from CAPC in making her disposition determinations because she does not have any medical training. Defendant Atkinson too concedes that her work is at the direction of the District.  She states, "[CNMC], and specifically [CAPC], **works with** [CFSA] to *investigate, assess, and treat child*

*abuse*," citing then to a statute that permits CFSA to contract with third-parties to conduct its investigation.   Def.'s M. at 8 n.2 (emphasis added).   Even after the Defendant Reddrick's referral, Defendants Reddrick and Atkinson routinely contacted each other to discuss the investigation and coordinated their investigation function.

CAPC and Defendant Atkinson are an indispensable part of the District's investigations. CFSA's stated policy is to take children to CNMC and CAPC for "medico-legal evaluation," rather than to the child's pediatrician or any other medical facility.   CFSA, *Program - Investigations*, https://cfsa.dc.gov/publication/program-investigations, at 9 and 32 (Jan. 16, 2015).   CFSA's Investigations Procedural Operations Manual instructs its investigators that CNMC and CAPC are "the preferred provider for [maltreatment] investigations."   CFSA, *Investigations – Procedural Operations Manual*, https://cfsa.dc.gov/sites/default/files/dc/sites/ cfsa/publication/attachments/Investigations-POM_0.pdf, at 111, 128, 187.   The manual states again, "REMINDER: in instances of immediate medical evaluation or follow-up medical evaluation, CAPC is the preferred provider."   *Id.* (emphasis in original).   Yet, with all of this joint conduct, Defendant Atkinson would have the Court find that she was merely an independent participant in the incidents alleged herein.

Furthermore, after Defendant Atkinson was accused of committing a battery on Plaintiffs' daughter, Defendants Atkinson and Reddrick conspired to unlawfully seize Plaintiffs' daughter and remove Plaintiffs from the hospital, all under color of state law.   Compl. ¶ 34, 40. They then conspired to fabricate claims of an unexplained injury and accused Plaintiffs' of not cooperating with their joint investigation.   *Id.* at ¶ 37, 44.   Plaintiffs submit that this was done to avoid liability for their previous misconduct.

Defendant Atkinson minimizes her involvement in this matter with semantics.   However,

11

her motion fully fails to dispute the two allegations of willful participation above.   The Complaint does not allege that Defendant Atkinson "reported suspected child abuse" or that she was "providing housing and nursing care."  Def.'s M. at 10-11 (citing non-authoritative cases for support).   The Complaint explicitly alleges that Defendant Atkinson was purposefully directed by the District to conduct an investigation in violation of Plaintiffs' and their daughter's constitutionally protected rights, that Defendant Atkinson was a willful participant in said investigation, and that when confronted with their abuses Defendants conspired to further violate Plaintiffs' rights to avoid liability.   Therefore, the Court must find that the Complaint has satisfactorily alleged that Defendant Atkinson is a state actor for the purposes of § 1983.

**B.      CONSTITUTIONAL VIOLATIONS ALLEGED IN THE COMPLAINT**

Defendant Atkinson's second meritless argument is that Plaintiffs cannot show a deprivation of constitutionally protected rights.  The Complaint, in fact, alleges several violations of Plaintiffs' Constitutional rights by Defendant Atkinson.  These include, but are not limited to:

- Defendant Atkinson violated Plaintiffs' right to make medical determinations regarding their daughter's care, when the District directed her to perform medically unnecessary and harmful tests on D.O. to look for non-existent evidence of abuse, without Plaintiffs' knowledge or informed consent.  *See Parham v. J.R.*, 442 U.S. 584, 603 (1979) (parental right to make decisions regarding child's medical care).

- Defendant Atkinson violated the sanctity of Plaintiffs' family and their Fourth Amendment right to be free from the warrantless removal of their daughter from their private hospital room, where they possessed a legitimate and reasonable expectation of privacy.  *See Doe v. District of Columbia*, 796 F.3d 96, 103 (D.C. Cir. 2015).

- Defendant Atkinson violated Plaintiffs' Fifth Amendment Due Process rights when she

12

conspired to fabricate claims of an unexplained injury to justify the unlawful removal of Plaintiffs' daughter.

*See* Compl. Count I.  Thus, the Complaint satisfies Plaintiffs' minimal pleading requirements to allege Constitutional violations.  Therefore, this argument too must fail.

## VI.   THE COMPLAINT STATES VIABLE COMMON LAW CLAIMS, FOR WHICH PLAINTIFFS ARE ENTITLED TO RELIEF

With each common law count, Defendant Atkinson pitches a legal theory, regardless of merit, in an uneconomical effort to see if anything sticks.  Rather than perform the necessary analysis why the facts as alleged in the complaint fail to support each count, Defendant Atkinson states some law and makes inaccurate conclusory claims about the Complaint.  Notably, anyone reading Defendant Atkinson's motion can detect when facts in the Complaint are being obscured because in each instance her motion vaguely cites the Complaint as "*See generally* Compl."  *See, e.g.*, Def.'s M. at 10, 18, and 21.

### A.   NEGLIGENCE AND GROSS NEGLIGENCE

With regard to the negligence and gross negligence argument, Defendant Atkinson simply argues that the Complaint does not allege a duty or breach.  To make this argument, Defendant Atkinson rewrites the pleading requirements necessary to survive a motion to dismiss. The Complaint is only required to set forth a short and plain statement of the claim to give the defendants fair notice of the claim and the grounds upon which it rests.  *Kingman Park Civic Ass'n*, 348 F.3d at 1040.  It is unnecessary for Plaintiffs to plead all elements of a prima facie case in the complaint or to plead law or match facts to every element of a legal theory.  *Singh*, 881 F. Supp. 2d at 81.  Even with this low pleading standard, Plaintiffs' have more than alleged negligence and gross negligence by Defendant Atkinson.

13

When Defendant Atkinson became a willful participant in the District's investigation, she inherited a duty to perform that investigation with reasonable care and with due regard for the truth and established procedures. *See* Compl. ¶ 87. The D.C. Court of Appeals held in *Turner v. District of Columbia* that the Prevention of Child Abuse and Neglect Act—D.C. Code Title 4, Chapter 13—created a special relationship between CFSA and families, after a report of child abuse or neglect is filed. 532 A.2d 662, 667 (D.C. 1987). Here, Plaintiffs and their daughter had this special relationship with the District, and by extension its agents, servants, employees, and state actors, such as Defendant Atkinson. As such, Defendant Atkinson had a duty to conduct herself fairly, impartially, and with respect for the rights of Plaintiffs.

Even if *Turner* did not exist, the Complaint alleges that these Defendants acted affirmatively towards the Plaintiffs, with these Defendants singling out Plaintiffs from the rest of the general public. Plaintiffs were placed into a special relationship with Defendants through the Defendants' own actions, when Defendants formally accused Plaintiffs of child neglect. Once deciding to pursue Plaintiffs individually a "form of privity between the [Defendants] and the victim that sets the victim apart from the general public" developed. *Warren v. District of Columbia*, 444 A.2d 1, 10 (D.C. 1981) (en banc).

Likewise, a similar duty of care was owed to avoid serious emotional distress due to the nature of Defendant Atkinson's undertaking to, or relationship with, Plaintiffs. *See infra* Part VI(C); *see also Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 792 (D.C. 2011).

The Complaint is replete with examples of Defendant Atkinson's breach of the aforementioned duty of care. As previously discussed at length, Defendant Atkinson failed to disclose that she was performing an investigation on behalf of the District; ordered medically unnecessary and harmful tests to be performed on Plaintiffs' daughter without their consent;

14

conspired with the other Defendants to fabricate claims that D.O.'s injuries were "not medically possible"; falsely portrayed Plaintiffs as being uncooperative with her investigation (some of which had to be amended out of the District's Petition); continued performing harmful tests on D.O. after Plaintiffs' removal from the hospital; and fabricated claims of additional injuries. *See generally* Compl.

To provide sufficient notice of the allegations against Defendant Atkinson, the Complaint only had to state 1) that she had a duty to exercise reasonable care when performing her joint investigation with the District and 2) that she breached said duty. The Complaint, however, goes above and beyond this minimal requirement by pleading sixty-six paragraphs of factual allegations and listing fifteen examples how these Defendants breached said duties. Therefore, Plaintiffs have sufficiently pled the necessary facts to survive a motion for summary judgment and to have this matter to proceed to discovery.

### B.   ABUSE OF PROCESS

With regard to her abuse of process argument, Defendant Atkinson meagerly argues that the Complaint does not "plead an ulterior motive" on behalf of Defendant Atkinson. Def.'s M. at 16-17. The Complaint, however, alleges two ulterior motives on the part of Defendant Atkinson: 1) to avoid liability for the abuses she was accused of inflicting on Plaintiffs' daughter at the behest of the District and 2) to continue seeking non-existent evidence of abuse absent Plaintiffs' objections. Compl. ¶¶ 1, 10, 34, 40, 52, 92. As such, Defendant Atkinson misleads the Court by claiming that "Plaintiffs did not, and cannot, sufficiently plead a claim of abuse of process." Def.'s M. at 17. The Court should rightly deny Defendant's motion in this regard.

### C.   NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

With regard to her negligent infliction of emotional distress argument, Defendant

Atkinson claims that there was no "special relationship or undertaking" by Defendant Atkinson that necessarily implicated Plaintiffs' emotional well-being. Def.'s M. at 18-20. As addressed in the negligence argument above, a special relationship was in fact formed when Defendant Atkinson undertook an investigation into the etiology of Plaintiffs' daughter's injuries at the behest of the District. *See supra* Part VI(A). The D.C. Court of Appeals has held that "a duty to avoid negligent infliction of serious emotional distress will be recognized only where the defendant has an obligation to care for plaintiff's emotional well-being or the plaintiff's emotional well-being is necessarily implicated by the nature of the defendant's undertaking to or relationship with the plaintiff, and serious emotional distress is especially likely to be caused by the defendant's negligence." *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 792 (D.C. 2011). Defendant Atkinson's joint investigation is included in this precedent. Negligently performing an investigation into suspected child abuse necessarily implicates the emotional well-being of families because the nature of the allegations will always result in familial separation and extensive legal proceedings, as it did here.

Therefore, Plaintiffs have once again more than satisfied their burden to set forth a short and plain statement of the claim to give defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n*, 348 F.3d at 1040.

**D.      INTENTIONAL INFLICTION OF EMOTIONAL HARM AND PUNITIVE DAMAGES**

Finally, with regard to the intentional infliction of emotional harm and punitive damages counts, Defendant Atkinson does not submit any valid legal argument against. Rather, Defendant Atkinson submits two pages of *naysaying*. Simply claiming that the allegations in the Complaint do not rise to the level of causing emotional harm or warranting punitive damages is insufficient.

The Complaint details the exacting emotional toll that Defendant Atkinson and the other Defendants inflicted on this family.  Defendant Atkinson forced these parents to watch as their daughter was subjected to painful and medically unnecessary testing, while failing to disclose the true investigatory purpose of the tests.  Compl. ¶¶ 27-32.  Defendant Atkinson conspired to unlawfully seize Plaintiffs' daughter after Plaintiffs confronted her with the abuses she inflicted at the District's direction.  The entire PICU was assembled to observe the "humiliating spectacle" as Plaintiffs were escorted from the hospital, while Defendant Atkinson watched along with them.  *Id.* at ¶ 38.  Defendant Atkinson fabricated evidence and additional injuries. *Id.* at ¶¶ 41-48.  The result of which placed Plaintiffs' daughter into shelter care with family friends, who lived over an hour away from Plaintiffs.  *Id.* at ¶ 50.  "Plaintiff Miriam Berman in particular would make the hour-long drive each day to bring breast milk to her still breast-feeding child."  *Id.*  Plaintiffs were subjected to a neglect proceeding, which lasted six months and consumed 15 days of trial.  *Id.* at ¶ 66.  Plaintiffs would not be fully reunited with their child for nine months.   And finally, Plaintiffs have spent years correcting the wrongs that were committed against them by these Defendants.  The enormity of the pain, suffering, humiliation, inconvenience, emotional trauma, and financial drain on Plaintiffs has been fully delineated in the Complaint.

## VII.   LEAVE TO AMEND SHOULD BE GIVEN TO CURE ANY DEFICIENCIES

Even if the Court determines that the instant Complaint is not sufficient, and that greater factual specificity is necessary even at this early stage, the Court's proper course should be to grant Plaintiffs' leave to amend, rather than dismissing Defendant Atkinson outright.

Pursuant to Federal Rules of Civil Procedure Rule 15(a), a "party may amend its pleading

only with . . . the court's leave.  The court should freely give leave when justice so requires."
The Supreme Court has noted that leave to amend should be given freely "[i]n the absence of any
apparent or declared reason" for not permitting amendments.  *Foman v. Davis*, 371 U.S. 178,
182 (1962); *see also Crowley v. North American Telecommunications Ass'n*, 691 A.2d 1169,
1174 (D.C. 1997) ("Although the decision rests within the trial court's discretion, the policy
which favors resolution of cases on the merits imposes a virtual presumption that leave should be
granted absent sound reasons which dictate a contrary result.").

## VIII.   CONCLUSION

Defendant Atkinson has failed to meet her burden of establishing that the Complaint must
be dismissed against her or that she is entitled to immunity for her various misdeeds.
Accordingly, the Motion to Dismiss should be denied.  Alternatively, Plaintiffs should be given
leave to amend their Complaint to address any deficiencies that the Court may identify.

Respectfully submitted,


/s/ Miriam Berman
Miriam Berman
3600 Connecticut Ave., N.W., Apt. 307
Washington, DC 20008
Tel:  (703) 282-8384
mimsberman@yahoo.com
*Pro se Plaintiff*


/s/ Stephen P. Ollar
Stephen P. Ollar
D.C. Bar No.:  1617446
3600 Connecticut Ave., N.W., Apt. 307
Washington, DC 20008
Tel:  (907) 382-7675
stephenpollar@gmail.com
*Pro se Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 21st day of October, 2019, a copy of the foregoing

Plaintiffs' Opposition was hand filed with the Court and served via email[2] to:

Robert A. Deberardinis, Jr.
Aimee E. Saginaw
441 4th Street, N.W., Suite 630 South
Washington, DC 20001
robert.deberardinis@dc.gov
*Attorneys for Defendants the District of Columbia, Channelle Reddrick, Brooke Beander,
and Lynsey Nix*

and

Jodi V. Terranova
1500 K. Street, N.W., Suite 330
Washington, DC 20005
jodi.terranova@wilsonelser.com
*Attorney for Defendant Atkinson*

/s/ *Stephen P. Ollar*
Stephen P. Ollar

---

[2]  The District Court's adoption of the NextGen CM/ECF efiling system on October 7, 2019, has disabled Plaintiffs ability to electronically file with the Court.  Plaintiffs are in the process of resolving the issue with the Court.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**STEPHEN OLLAR, et al.**                    :
                                             :
            Plaintiffs,                       :
                                             :
      v.                                      :     **Case No.:  1:19-cv-01847-KBJ**
                                             :
**THE DISTRICT OF COLUMBIA, et al.**         :
                                             :
            Defendants.                       :
_____ :

### O R D E R

Upon consideration of Defendant Norrell Atkinson's Motion to Dismiss, and Plaintiffs'

Opposition to said motion; and the record herein, it is hereby

**ORDERED** that Defendant Norrell Atkinson's Motion is **DENIED**.

**SO ORDERED**.

Date: _____

                                    _____
                                    KETANJI BROWN JACKSON
                                    United States District Judge

cc:
Miriam Berman
Stephen P. Ollar
*Pro se Plaintiffs*

Robert A. Deberardinis, Jr.
Aimee E. Saginaw
*Attorney for Defendants District of Columbia, Channelle Reddrick, Brooke Beander, and Lynsey Nix*

Jodi V. Terranova
*Attorney for Defendant Atkinson*