## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **STEPHEN OLLAR, et al.** | : | |
| | : | |
| **Plaintiffs** | : | |
| | : | **Civil Action No.: 1:19-cv-01847 (KBJ)** |
| **v.** | : | |
| | : | |
| **THE DISTRICT OF COLUMBIA, et al.** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## DEFENDANT NORRELL K. ATKINSON, M.D.'S REPLY TO PLAINTIFFS' OPPOSITION TO DR. ATKINSON'S MOTION TO DISMISS

COMES NOW Defendant Norrell K. Atkinson, M.D. ("Dr. Atkinson"), by and through counsel WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, and pursuant to Federal Rule of Civil Procedure 12(b)(1), Federal Rule of Civil Procedure 12(b)(6), and Local Rule 7(d), respectfully replies to Plaintiffs' Opposition to Dr. Atkinson's Motion to Dismiss and moves this Honorable Court to dismiss all of Plaintiffs' claims against her because Plaintiffs' Opposition fails to effectively address the arguments raised in Dr. Atkinson's Motion to Dismiss. Rather, Plaintiffs offer little to no legal support for their baseless statements. Nothing in Plaintiffs' brief overcomes the Complaint's failure to plead sufficient facts to support Plaintiffs' 42 USC § 1983 and common law state tort claims. As grounds for her Reply, Dr. Atkinson respectfully refers the Court to the attached Memorandum of Points and Authorities, which is adopted and incorporated herein by reference.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esquire (Bar No.: 472225)
1500 K Street, NW, Suite 330
Washington, D.C.  20005
Tel. (202) 626-7660
Fax (202) 628-3606
Jodi.Terranova@wilsonelser.com


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 29th day of October, 2019, I served a true and correct copy

of **Defendant Norrell K. Atkinson, M.D.'s Reply to Plaintiffs' Opposition to Dr. Atkinson's**

**Motion to Dismiss** via the Court's CM/ECF system to:

Robert A. Deberardinis, Jr., Assistant Attorney General
Karl A. Racine, Attorney General for the District of Columbia
Chan Copeland, Deputy Attorney General, Civil Litigation Division
Alicia M. Cullen, Chief, Civil Litigation Division Section III
441 4th Street, NW, Suite 630 South
Washington, D.C. 20001
Phone: 202-724-6642
Fax: 202-741-8895
robert.deberardinis@dc.gov
*Counsel for Defendants District of Columbia and Chanelle Reddrick*

And via U.S. Mail, first class postage prepaid to:

Stephen P. Ollar
Miriam L. Berman
3600 Connecticut Ave., NW, Apt # 307
Washington, DC 20008
*Plaintiffs pro se*

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esq.

1053469v.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**STEPHEN OLLAR, et al.**          :
                                   :
          **Plaintiffs**           :
                                   :          **Civil Action No.: 1:19-cv-01847 (KBJ)**
          **v.**                   :
                                   :
**THE DISTRICT OF COLUMBIA, et al.** :
                                   :
          **Defendants.**          :
                                   :

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NORRELL K. ATKINSON, M.D.'S REPLY TO PLAINTIFFS' OPPOSITION TO DR. ATKINSON'S MOTION TO DISMISS

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esquire (Bar No.: 472225)
1500 K Street, NW, Suite 330
Washington, D.C.  20005
Tel. (202) 626-7660
Fax (202) 628-3606
Jodi.Terranova@wilsonelser.com

1053469v.1

**TABLE OF CONTENTS IN SUPPORT OF DEFENDANT NORRELL K. ATKINSON, M.D.'S REPLY TO PLAINTIFFS' OPPOSITION TO DR. ATKINSON'S MOTION TO DISMISS**

I.   Argument...………………………………………………………… 1

    A.   The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims As Plaintiffs Lack Standing, Regardless Of Whether Plaintiffs' Claims Are Brought On Behalf Of D.O. Or Themselves……………………… 1

        a.   Plaintiffs Have Not Sued "On Behalf Of" Or "As Next Friend" Of D.O.……………………………………………............1

        b.   Plaintiffs Have Not Suffered An Injury In Fact……………1

    B.   Plaintiffs' Claims Are Barred By Issue  Preclusion…………..….. 3

    C.   Plaintiffs Cannot Over The Statutory Immunity Protecting Dr. Atkinson From Liability For Her Alleged Actions In Furtherance Of Reporting And Investigating Suspected Child Abuse Of D.O……………………..4

    D.   Plaintiffs' 42 U.S.C. 1983 (Count I) Claim Must Be Dismissed As Dr. Atkinson Is Not A State Actor…………………………………….. 9

    E.   The Court Should Dismiss Plaintiffs' Common Law Claims…….. 11

        a.   Negligence and Gross Negligence (Count II)…………….... 11

        b.   Intentional Infliction of Emotion Distress (Count IV)…….. 12

        c.   Negligent Infliction of Emotional Distress (Count V)……. 13

        d.   Punitive Damages (Count VII)…………………………… 14

II.  Conclusion…………………………………………………………14

**TABLE OF AUTHORITIES IN SUPPORT OF DEFENDANT NORRELL K.
ATKINSON, M.D.'S REPLY TO PLAINTIFFS' OPPOSITION TO DR. ATKINSON'S
MOTION TO DISMISS**

**Cases**

*Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016)…………………………..8

*Harvey v. Mohammed*, 841 F. Supp. 2d 164 (D.D.C. 2012)……………………… 11

*Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789 (D.C. 2011)………………… 13-14

*In re D.O.*, No. 17-FS-444 (August 23, 2019)…………………………………….. 3, 3 (fn), 14

*Morton v. D.C. Hous. Auth.*, 720 F. Supp. 2d 1 (D.D.C. 2010)…………………… 13

*Santosky v. Kramer*, 455 U.S. 745 (1982)……………………………………… 1-2


**Rules**

Federal Rule of Civil Procedure 12(b)(1)………………………………………….. 1-3

Federal Rule of Civil Procedure 12(b)(6)…………………………………………… 11-14

Federal Rule of Civil Procedure 17(c)…………………………………………….... 1

Local Rule 7(d) of the United States District Court for the District of Columbia….1


**Statutes**

D.C. Code § 4–1301.51………………………………………………………… 7, 10

D.C. Code § 4-1301.08……………………………………………………………7 (fn), 8

D.C. Code § 4-1321.01…………………………………………………………… 5

D.C. Code § 4-1321.02……………………………………………………………4, 6

D.C. Code § 4-1321.03…………………………………………………………… 5

D.C. Code § 4-1321.04……………………………………………………………4, 5, 7, 10

D.C. Code § 16-2301(9)(A)……………………………………………………….2

D.C. Code § 16-2328(a)………………………………………………………… 2

D.C. Law 19-315, Child Sexual Abuse Reporting Amendment Act of 2012………6

## **Committee Reports**

D.C. Council Comm. on the Judiciary, Rep. on Bill 19-647, at 6 (Oct. 9, 2012)…..6

1053469v.1

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NORRELL K. ATKINSON, M.D.'S REPLY TO PLAINTIFFS' OPPOSITION TO DR. ATKINSON'S MOTION TO DISMISS**

COMES NOW Defendant Norrell K. Atkinson, M.D. ("Dr. Atkinson") by and through counsel WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP, and submits this memorandum in support of her Reply to Plaintiffs' Opposition to her Motion to Dismiss and states the following:

I.   ARGUMENT

    A.   **The Court Lacks Subject Matter Jurisdiction Over Plaintiffs' Claims As Plaintiffs Lack Standing, Regardless Of Whether Plaintiffs' Claims Are Brought On Behalf Of D.O. Or Themselves.**

        a.   **Plaintiffs' Have Not Sued "On Behalf Of" Or "As Next Friend" Of D.O.**

If Plaintiffs are bringing this matter on behalf of their daughter D.O., nothing in Plaintiffs' Opposition cures the fact that they have not brought this lawsuit "on behalf of" or "as next friend" of D.O. pursuant to the necessary requirement in Federal Rule of Civil Procedure 17(c). As noted in Dr. Atkinson's Motion to Dismiss, Plaintiffs do not indicate in what capacity they bring the Complaint. *See generally* Compl. If Plaintiffs are asserting claims on behalf of D.O., they have failed to do so properly and nothing in their Opposition remedies this failure.

        b.   **Plaintiffs Have Not Suffered An Injury In Fact**

If Plaintiffs' lawsuit is being brought on their own behalves, they have likewise failed because they have not sufficiently plead that they suffered an injury in fact. In Plaintiffs' Opposition, Plaintiffs indicate that "the physical and emotional harm inflicted onto parents when their child is taken from their care is so universally known that the Court's time should not be wasted disputing it." Opp. at 3. For support of this blanket proposition, Plaintiffs cite to the Fifth Amendment of the U.S. Constitution and *Santosky v. Kramer*, 455 U.S. 745 (1982). *Santosky* holds that natural parents have a right to due process under the Fourteenth Amendment and that the

burden of proof for states seeking to sever parental rights is at least clear and convincing evidence

of neglect. *See id*. While this case could be instructive in other areas of this lawsuit, this is the

beginning of Plaintiffs' repeated attempts to bolster their arguments with inapplicable case law.

Plaintiffs' Opposition suggests that the harm they suffered was having to endure Defendant

Atkinson's abuse and unlawful seizure of Plaintiffs' daughter. Opp. at 3. However, as articulated

in Defendants District of Columbia, Brooke Beander, Lynsey Nix, and Chanelle Reddrick's

Motion to Dismiss Plaintiffs' Complaint or, Alternatively, Motion for Partial Summary Judgment,

the D.C. Court of Appeals affirmed the decision of the Family Division in full that lies at the heart

of Plaintiffs' claims. Co-Defendants' Motion to Dismiss at 10. Co-Defendants' Motion to Dismiss

provides the entire context and background of that case and Plaintiffs' appeal:

> The Court of Appeals affirmed the decision of the Family Division in full. Ex. 1 at
> p. 2. The Court affirmed both bases on which the trial court had found neglect. The
> Court upheld the finding that [sic] "that D.O.'s injuries could not be satisfactorily
> explained by appellants' story that D.O. slipped and fell out of [Plaintiff Ollar's]
> arms," and the subsequent inference that D.O. was neglected under D.C. Code §
> 16-2301(9)(A)(i). Ex. 1 at pp. 8-9. The D.C. Court of Appeals also upheld the
> "findings and conclusion that appellants' failure to timely care of D.O.'s injuries
> rendered D.O. a neglected child under D.C. Code § 16-2301(9)(A)(ii). Ex. 1 at p.
> 9. More broadly, the Court sustained the factual findings underpinning the trial
> court's credibility determinations, including that Plaintiffs "stopped providing
> information or answering Dr. Atkinson's questions" during the investigation and
> "that neither of the parents demonstrated appropriate care for D.O. at the time the
> injuries occurred." *Id*. at pp. 7-8. The Court also determined that Plaintiffs'
> arguments challenging the propriety of the probable cause hearing "lack[ed] merit."
> *Id*. at p. 2 n.5. Plaintiffs, the Court noted, had the opportunity to take an immediate
> interloctury appeal of the probable cause finding, but failed to do so. Id. at p. 2 n.5
> (citing D.C. Code § 16-2328(a)).

Co-Defendants' Motion to Dismiss at 10-11. Therefore, Plaintiffs' argument that they have

endured an "unlawful" proceeding is utterly false in light of the Court of Appeals' decision. As

Co-Defendants note, "[t]he central conceit of Plaintiffs' Complaint—that Plaintiffs were forced

'to defend against a baseless child neglect allegation' for which 'no evidence ever existed,' Compl.

¶¶ 10-11—has already been conclusively rejected." Co-Defendants' Motion to Dismiss at 3. Accordingly, Plaintiffs have no good faith basis to argue that they have suffered a recognizable harm.

If Plaintiffs' reasoning is to be followed here, any parent that defends against a meritorious neglect proceeding has suffered an injury in fact and is entitled to sue the entities that were responsible for that meritorious neglect proceeding. That reasoning is illogical. Accordingly, in light of *In re D.O.*, No. 17-FS-444 (August 23, 2019), attached to Co-Defendants' Motion to Dismiss as Exhibit 1, Plaintiffs have not suffered an injury in fact and do not have standing. Thus, the Court lacks subject matter jurisdiction over Plaintiffs and all of the claims brought in the Complaint are properly dismissed.

### B. Plaintiffs' Claims Are Barred By Issue Preclusion.[1]

As noted in Co-Defendants' Reply to Plaintiffs' Opposition to Co-Defendants' Motion to Dismiss, "[t]he allegations of misconduct that Plaintiffs raise here were previously raised in the neglect proceeding." Co-Defendants' Reply at 7. The D.C. Court of Appeals' decision "necessarily rejected all the evidentiary arguments that undergird Plaintiffs' constitutional and common law claims here…" (citations omitted). *Id*. Here, issue preclusion is being used as a shield, rather than a sword. Specifically "[t]he doctrine of issue preclusion may be used defensively to prevent a plaintiff from relitigating issues which the plaintiff lost previously against another party" (citations omitted). *Id*. Plaintiffs' additional arguments regarding issue preclusion (e.g., that they lacked a "full and fair opportunity" to previously litigate the issues and because the appellate court's mandate has been stayed pending their petition for *en banc* review, *see* Co-Defendant's Reply at

---

[1] Dr. Atkinson, due to a lack of knowledge regarding the underlying procedural developments of *In re D.O.*, No. 17-FS-444 (August 23, 2019), failed to raise the issue preclusion argument in her initial Motion to Dismiss.

1053469v.1

8) also hold no water. Based on issue preclusion, the Court should dismiss all of Plaintiffs' claims against Dr. Atkinson.

### C. Plaintiffs Cannot Overcome The Statutory Immunity Protecting Dr. Atkinson From Liability For Her Alleged Actions In Furtherance Of Reporting And Investigating Suspected Child Abuse Of D.O.

Plaintiffs cannot dispute that Dr. Atkinson is a mandatory reporter of child abuse under D.C. Code § 4-1321.02. Here, Dr. Atkinson encountered obvious circumstances suspicious for child abuse when D.O. arrived at the hospital with significant skull fractures, which triggered her duty to report the suspicion of child abuse. Dr. Atkinson is accordingly provided statutory immunity from civil liability for her role in the reporting of suspected child abuse as the cause of D.O.'s skull fractures. D.C. Code § 4-1321.04. Plaintiffs attempt, without supporting authority, to limit the breadth of the statutory immunity that protects "any person, hospital, or institution" from civil immunity "with respect to the making of the report" of suspected child abuse. *Id*. Plaintiffs would have the Court read a limitation into this provision that the statutory immunity applies only to the initial person who physically makes the phone call to D.C. Government's Children and Family Services Agency ("CFSA"). Opp. at 5-6. They argue that because the suspicion that D.O. had been abused was first reported to CFSA by "a nurse at a different hospital…two days before Defendant Atkinson's involvement in this matter," Opp. at 6, Dr. Atkinson is not a "mandatory reporter" under the statute. Plaintiffs indicate that "Defendant Atkinson wholly fails to justify why she should be afforded statutory immunity for a report that she is disconnected from in both time and space." *Id*.

Plaintiffs' attempted "gotcha" argument premised on a gap in space and time between the initial report made by a nurse at Sibley Hospital that their child had injuries consistent with child abuse and Dr. Atkinson's involvement in additional reporting and investigating of D.O.'s

significant injuries—including skull fractures due to suspected abusive head trauma—is unavailing. There is no temporal limitation on the statutory immunity; it expressly applies to those who participated in making a report and is not limited to the first person to contact CFSA. Nor does it preclude immunity for supplementation of a report of suspected child abuse, such as with additional information that can be gained from diagnostic testing and imaging like what Dr. Atkinson allegedly performed on D.O. Here, all of Dr. Atkinson's alleged actions were in furtherance of the initial report of suspected child abuse. Plaintiffs' proposed reading of the D.C. Code and suggestions that Dr. Atkinson participated in a vigilante investigation are not only conclusory, but are contrary to the explicit purpose and strong public policy behind the statutory immunity.

The purpose of mandatory reporting of child abuse in D.C. has been expressed by the D.C. Council to include the identification of neglected children, to assure that a neglected child has protection from further abuse or neglect, as well as to prevent future abuse or neglect of the child. D.C. Code § 4-1321.01. Against that framework, the phrase "participating in good faith in the making of a report" must be construed broadly. Indeed, the nature and contents of a "report" of suspected child abuse are broadly defined to include an open-ended report of "[a]ll other information which the person making the report believes may be helpful in establishing the cause of the abuse or neglect." D.C. Code § 4-1321.03(b)(3). If Plaintiffs' reasoning is followed here, any individual that is involved in the making of a report of child neglect and/or abuse, including participating in the investigation into the suspected neglect and/or abuse, other than the very first person who makes the report, is not protected by D.C. Code § 4-1321.04. Not only is this reasoning illogical, it flies directly in the face of the very purpose of the statute. Plaintiffs' narrow reading of what is involved in "making a report" of child abuse is not supported by this jurisdiction's strong

5

public policy that favors the reporting, identification, and prevention of child abuse, in addition to protecting children like D.O. from further abuse.

Over time, the number and types of mandatory reporters in the District has increased, demonstrating this jurisdiction's commitment to identification of abused children to protect them from additional abuse. For example, in 2013, the D.C. Council expanded the definition of mandatory reporters beyond those like Dr. Atkinson, to require that <u>all individuals over 18 report known or suspected incidents of child sexual abuse</u>. D.C. Law 19-315, effective June 8, 2013. The Committee Report supporting this expansion of mandatory reporters highlights the "special duty to report" that physicians like Dr. Atkinson have under D.C. Code § 4-1321.02(b)—specifically, they "have an even greater duty than the average person given their interaction and involvement with children." D.C. Council Comm. on the Judiciary, Rep. on Bill 19-647, at 6 (Oct. 9, 2012), http://lims.dccouncil.us/Download/2597/B19-0647-COMMITTEEREPORT.pdf. The Committee Report also makes clear the breadth of the immunity provision that applies here: "The goal of the immunity provision is to encourage persons to report without fear that they will be prosecuted or sued if they are mistaken." *Id.* at 12.

Arbitrarily limiting the statutory immunity provided broadly under D.C. law to "any person, hospital or institution participating in good faith in the making of a report" to just the initial phone call by a nurse, as Plaintiffs suggest, would not serve the public policy behind mandatory reporting and statutory immunity enacted by the D.C. Council. As demonstrated by the statutory scheme and the legislative history set forth above, participating in making a report of child abuse encompasses multiple actions, including those performed by Dr. Atkinson as alleged by Plaintiffs. Plaintiffs' Opposition repeatedly concedes as much. In particular, they concede that Dr. Atkinson ordered diagnostic tests as a part of her investigation into the etiology of D.O.'s injuries. *See* Opp.

at 7, 12. They submit the purpose of Defendants' allegedly negligent actions was solely to gather "non-existent evidence of abuse." *Id.* at 12. Moreover, Plaintiffs concede that "CAPC and Defendant Atkinson are an indispensable part of the District's investigations (more on this statement below). *Id.* at 11.

Plaintiffs' argument that responsibility for investigations into child abuse is limited to the CFSA or MPD also enjoys no support from the statutory scheme enacted to protect helpless children like D.O. from child abuse. To the contrary, D.C. law specifically provides that a multidisciplinary investigation team is employed to investigate instances of child abuse and neglect. D.C. Code § 4-1301.51. Such a team includes, among other disciplines, "medical personnel" such as Dr. Atkinson. D.C. Code § 4-1301.51(a)(3). Accordingly, the D.C. Code provisions that permit "any person responsible for the investigation" to collect evidence of suspected child abuse can, and in fact in D.O.'s case did, apply to Dr. Atkinson.[2] Plaintiffs' assertion in their Opposition that "the 'person responsible for the investigation' as specifically limited by this 'part' of the code are CFSA or MPD investigators, and not doctors or state actors" is plainly false. Opp. at 7-8; D.C. Code § 4-1301.04(2) (providing CFSA investigate child abuse "directly *or through a contractor* or another appropriate District agency"); Code § 4-1301.51(a)(3) (identifying a number of possible members of the team to investigate child abuse to include numerous non-CFSA and non-MPD personnel, such as "medical personnel"). Their argument that Dr. Atkinson cannot be protected by statutory immunity because she is not part of the CFSA or MPD fails, as D.C. law permits medical personnel to participate in investigations of suspected

---

[2] The enumerated evidence an investigator of child abuse can collect under D.C. Code § 4-1301.08 specifically includes the "radiological examinations, including full skeletal x-rays" Dr. Atkinson allegedly performed here.

child abuse and Plaintiffs repeatedly allege that Dr. Atkinson's actions were part of an investigation of suspected child abuse.

Plaintiffs' final argument in regard to Dr. Atkinson's complete immunity defense is that D.C. Code § 4-1301.08 is per se unconstitutional under *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). Opp. at 8. Contrary to Plaintiffs' assertions, *Birchfield* stands for the proposition that a state statute may not criminalize an adult's refusal to submit to a blood test in the absence of a warrant. *See id*. Even though the Fourth Amendment allows for warrantless breath tests subsequent to an arrest for drunk driving, it does not allow warrantless blood tests incident to an arrest. *Id*. Inexplicitly, Plaintiffs try to connect that case and its holdings, with Dr. Atkinson's investigation into the suspected abuse and/or neglect of their six week old infant. Even with an open mind, it is hard to imagine how a criminal case –that examines what an adult's rights are, subsequent to failed sobriety and breath tests, in the face of a warrantless blood test – can apply to a civil case in which a physician investigated possible child abuse and/or neglect by ordering certain diagnostic tests on a six week old child. Above and beyond the obvious inapplicability of *Birchfield* to the case at hand, Plaintiffs try to convince this Court to overturn D.C. Code § 4-1301.08 with that case as their lone pillar of support. Even if *Birchfield* were to apply, which it clearly does not, Plaintiffs do not offer a single equitable argument for why the Court should outweigh the advantages of deciding D.C. Code § 4-1301.08 is unconstitutional against the significant benefit that the statute provides in the fight against suspected child abuse and/or neglect. Simply put, *Birchfield* does not apply to the case at hand, the benefits of D.C. Code § 4-1301.08 far outweigh any of its alleged harms, and Plaintiffs' argument that the statute should be ruled unconstitutional fails.

As shown in Dr. Atkinson's Motion to Dismiss and herein, Dr. Atkinson is protected from Plaintiffs' retaliatory lawsuit, which is fueled by their anger that Dr. Atkinson and the Co-

Defendants played a role in their daughter rightfully being removed from their custody for neglect. This jurisdiction is committed to the protection of children like D.O., who are suspected to be victims of child abuse and neglect, and therefore it has a broad immunity provision that protects those like Dr. Atkinson who "participate in good faith in the making of a report" from lawsuits like this one. As set forth in Dr. Atkinson's Motion to Dismiss and this Reply, the underlying motivation for all of Dr. Atkinson's acts was to fully and completely evaluate and care for D.O. Dr. Atkinson therefore respectfully request that the case be dismissed with prejudice.

**D. Plaintiffs' 42 U.S.C. 1983 (Count I) Claim Must Be Dismissed As Dr. Atkinson Is Not A State Actor.**

In Plaintiffs' Opposition, they repeatedly try and bolster their argument that Dr. Atkinson is a state actor with unsupported assertions. In fact, Plaintiffs' twice quote Dr. Atkinson's Motion to Dismiss in which she unequivocally stated that she <u>worked with CFSA, not for it</u>: "[CNMC], and specifically [CAPC], **works with** [CFSA] to *investigate, assess, and treat child abuse*." Opp. at 9, 10-11 (emphasis in original). Here, Plaintiffs emphasize the very point that Dr. Atkinson described in her Motion to Dismiss – the only interactions that she is alleged to have had with the District of Columbia are (1) making and/or furthering a report of suspected child abuse; and (2) examining and treating D.O. while Children and Family Services conducted its investigation. *See generally* Compl. Even assuming the truth of Plaintiffs' allegations that Dr. Atkinson provided information to the government and provided continuing care for the child during an investigation by D.C. Government's Children and Family Services Agency, Plaintiffs have not sufficiently alleged that Dr. Atkinson was a state actor. The role of Dr. Atkinson, as alleged, is insufficient to create the type of alignment between the state and private actors in order to impose Section 1983 liability – she was not employed by the D.C. Government, she did not receive funds from the D.C.

Government, and her operations and actions were not directed by the D.C. Government. Nothing in Plaintiffs' Opposition changes those facts.

Plaintiffs' Opposition seems to indicate that because (1) Dr. Atkinson's investigation was similar and parallel to the one that was being conducted by CFSA, and (2) Dr. Atkinson shared information with CFSA regarding her own investigation into the etiology of D.O.'s injuries, she transformed into a D.C. Government employee and a state actor. This is one additional example of Plaintiffs trying to stretch too far. However, there is one instance in Plaintiffs' brief where Dr. Atkinson is in agreement – when Plaintiffs note that CAPC and Dr. Atkinson "are an indispensable part of the District's investigations." Opp. at 11. Children's National Medical Center, and specifically the Freddie Mac Foundation Child and Adolescent Protection Center, proudly works with the Child and Family Services Agency (Child Protection Section) to investigate, assess, and treat child abuse. D.C. Code § 4–1301.04(2) also provides that Child and Family Services Agency "directly *or through a contractor* or another appropriate District agency . . . conduct . . . a thorough investigation." D.C. Code § 4–1301.04(2) (emphasis added). As noted above, D.C. law specifically provides that a multidisciplinary investigation team is employed to investigate instances of child abuse and neglect. D.C. Code § 4-1301.51. Such a team includes, among other disciplines, "medical personnel" such as Dr. Atkinson. D.C. Code § 4-1301.51(a)(3). The benefit of this alliance to children that need to be protected from abuse and/or neglect cannot be overstated. However, this alliance does not convert each member of CAPC into a state actor.

Here, if Plaintiffs' argument is to prevail, every private physician, including those employed by The Freddie Mac Foundation Child and Adolescent Protection Center, which provides information to police departments and other investigating agencies into suspected child abuse and/or neglect, automatically become state actors for potential Section 1983 liability. If this

10

were true, the three factor analysis in *Harvey v. Mohammed*, 841 F. Supp. 2d 164 (D.D.C. 2012) would be meaningless and an unnecessary exercise. However, that is not the case – this Court has determined that it must consider those three factors in determining whether a private actor should be considered a state actor for the purposes of Section 1983 liability. *Id*. at 185; *see* Motion to Dismiss at 10 for complete discussion of the *Harvey* decision. And when the Court examines the role of Dr. Atkinson as alleged, in light of the three *Harvey* factors, it will find that her involvement was insufficient to create the type of alignment between the state and private actors in order to impose Section 1983 liability. Therefore, Plaintiffs' Section 1983 claim against Dr. Atkinson must be dismissed.

### E.  The Court Should Dismiss Plaintiffs' Common Law Claims.

Dr. Atkinson, as previously noted, respectfully submits that the Court does not have subject matter jurisdiction over Plaintiffs' claims, issue preclusion prevents Plaintiffs from asserting wrongdoing by Dr. Atkinson, and she is immune from all of Plaintiffs' claims as set forth in her Motion to Dismiss and in Section C above. Accordingly, the Court should dismiss all common law claims related to Dr. Atkinson's alleged misconduct. Dismissal of Plaintiffs' common law claims is also proper as Plaintiffs' Complaint is absent any set of facts which, if proven true, would entitle them to relief under their enumerated counts.

### a.  Negligence And Gross Negligence (Count II)

Understanding that the Complaint is devoid of any allegation regarding Dr. Atkinson's alleged duty, Plaintiffs indicate that "Dr. Atkinson inherited a duty to perform [the] investigation with reasonable care and with due regard for the truth and established procedures." Opp. at 14. Again, Plaintiffs have set forth a duty that does not exist in the law. Additionally, they do not set forth any facts sufficient to create a duty. Aware of this, Plaintiffs quickly jump back to their

11

argument that Dr. Atkinson is a state actor and this definition of her role created a duty – "[h]ere, Plaintiffs and their daughter had this special relationship with the District, and by extension its agents, servants, employees, and state actors, such as Defendant Atkinson." *Id*. As argued above, there is no support in the Complaint, or the facts of this case, that Dr. Atkinson was a state actor. Aware of this problem as well, Plaintiffs conclude their argument on Dr. Atkinson's duty by grouping her in with the rest of the Co-Defendants in this case: "the Complaint alleges that these Defendants acted affirmatively towards the Plaintiffs, with these Defendants singling out Plaintiffs from the rest of the general public. Plaintiffs were placed into a special relationship with Defendants through the Defendants' own actions." *Id*. Grasping at straws, this general allegation is not directed at Dr. Atkinson and even if it were, could not cure the Complaint's failure in alleging that Dr. Atkinson owed a duty to the Plaintiffs.

Plaintiffs' proceed to note that the "Complaint is replete with examples of Defendant Atkinson's breach of the aforementioned duty of care." *Id*. As noted above, Plaintiffs do not indicate what duty Dr. Atkinson had towards the Plaintiffs nor do they comment on any facts to support such a duty. Even if they had, the activities that they mention, which they allege equate to breaches, were all activities performed pursuant to the statutory provisions in this jurisdiction mandating reporting to Children and Family Services by health care providers. Therefore, Plaintiffs have failed to plead a claim for negligence upon which relief can be granted.

### b.  Intentional Infliction Of Emotional Distress (Count IV)

It bears repeating that Plaintiffs' claim for intentional infliction of emotional distress ("IIED") merely recites the legal elements of the claim without any factual allegations sufficient to satisfy those legal elements. Compl., Count IV, at ¶¶94-95. In their Opposition, Plaintiffs simply reiterate Dr. Atkinson's actions – (1) she made and/or furthered a report of suspected child abuse;

and (2) she examined and treated D.O. while Children and Family Services conducted its investigation – and allege that this is again enough to support a claim for IIED. *See* Opp. at 16. As in the Complaint, there are no allegations in Plaintiffs' Opposition that Dr. Atkinson was acting outside of her role as a part of the Freddie Mac Foundation Child and Adolescent Protection Center or that the D.C. Court of Appeals actually ruled in Plaintiffs' favor when it reviewed the decision from the Family Division. If Plaintiffs' theory regarding IIED were to be true, any time any physician investigates potential child abuse and/or neglect, IIED must follow. The *Morton v. D.C. Hous. Auth.*, 720 F. Supp. 2d 1 (D.D.C. 2010) case, which was cited in Dr. Atkinson's Motion to Dismiss, flies directly in the face of that theory. Thus, Plaintiffs' Complaint cannot survive a motion to dismiss pursuant to Rule 12(b)(6) and their claim for Intentional Infliction of Emotion Distress (Count IV) is properly dismissed.

### c.  Negligent Infliction Of Emotional Distress (Count V)

Similarly to Plaintiffs' negligence and gross negligence claims, Plaintiffs again try to argue that Dr. Atkinson is a state actor for the foundation of establishing a relationship with the Plaintiffs – a requirement for the first element of a negligent infliction of emotional distress ("NIED") claim. Opp. at 16. As argued above twice, there is no support in the Complaint, or the facts of this case, that Dr. Atkinson was a state actor. If there is no special relationship or undertaking, as required by the first element of the claim, the relevant inquiry becomes the "zone of danger" test. *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-811 (D.C. 2011). In their Opposition, Plaintiffs failed to address Dr. Atkinson's argument that Plaintiffs' claim for NIED is barred because Plaintiffs failed to make a single allegation of physical injury or fear of physical injury. Compl. at ¶¶96-98. The Court should therefore treat Dr. Atkinson's "zone of danger" argument as conceded.

If Plaintiffs' argument regarding NIED were to be followed by the Court, no physician

would ever investigate potential child abuse and/or neglect because of the possibility of it resulting "in familial separation and extensive legal proceedings." This is the exact type of deterrent that the D.C. Government and organizations like CAPC are trying to avoid instilling in the minds of pediatric physicians. This is why the three factors, as articulated in *Hedgepeth*, exist to guide the Court. Therefore, Plaintiffs have failed to state a claim for Negligent Infliction of Emotional Distress and Count V should be dismissed.

### d.  Punitive Damages (Count VII)

Plaintiffs offer no additional arguments or facts for why the Court should permit their claim for punitive damages. Although punitive damages are separated as a different count in the Complaint, *see* Compl. Count VII, in Plaintiffs' Opposition, they group punitive damages together with their IIED claim. Opp. at 16-17. Nowhere in these two paragraphs do Plaintiffs argue why punitive damages are warranted in this case against Dr. Atkinson. Reading between the lines, Plaintiffs want the Court to award punitive damages against Dr. Atkinson because they allege that she ordered and undertook testing of their injured minor child to determine whether her head trauma could be from natural causes or from child abuse. *See generally* Compl.; Opp. at 16-17. In light of *In re D.O.*, No. 17-FS-444 (August 23, 2019), attached to Co-Defendants' Motion to Dismiss as Exhibit 1, all of Dr. Atkinson's actions were justified as the Family Division found neglect and the D.C. Court of Appeals affirmed that decision. Accordingly, Plaintiffs' claim for punitive damages must be dismissed.

## II.   CONCLUSION

WHEREFORE, for the reasons noted above, as well as those noted in Dr. Atkinson's Motion to Dismiss, Defendant Norrell K. Atkinson, M.D. respectfully requests that this Honorable

14

Court dismiss with prejudice all of Plaintiffs Stephen P. Ollar and Miriam L. Berman's claims against her.

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

*/s/ Jodi V. Terranova*
Jodi V. Terranova, Esquire (Bar No.: 472225)
1500 K Street, NW, Suite 330
Washington, D.C.  20005
Tel. (202) 626-7660
Fax (202) 628-3606
Jodi.Terranova@wilsonelser.com

15