**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **STEPHEN OLLAR, et al.** | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | **Case No.:  1:19-cv-01847-KBJ** |
| | : | |
| **THE DISTRICT OF COLUMBIA, et al.** | : | |
| | : | |
| Defendants. | : | |
| | : | |

<u>**AMENDED COMPLAINT**</u>

COME NOW Plaintiffs Stephen Ollar and Miriam Berman and represent as follows:

1.     Plaintiffs seek relief pursuant to 42 U.S.C. § 1983 and common law state tort claims, including, but not limited to, compensatory and punitive damages and litigation expenses, based on Defendants' unlawful, malicious, and willful physical abuse, seizure, and detention of Plaintiffs' six-week-old minor child and Defendants' subsequent conspiracy to conceal the unlawful conduct.   Defendants directed medical personnel to perform medically unnecessary, painful, and unlawful tests on the Plaintiffs' six-week-old breastfeeding daughter without seeking the necessary judicial authorization.   When Plaintiffs sought to protect their daughter from the Defendants' abuse, Defendants retaliated by seizing Plaintiffs' daughter, fabricating a legal justification for the seizure, forcing Plaintiffs to defend against a baseless neglect proceeding, and destroying and withholding evidence.   As a direct and proximate result of Defendants' malfeasance, Plaintiffs incurred substantial economic losses, as well as severe and irreparable emotional harm and special injuries, for which they deserve to be compensated.

## JURISDICTION

2.      The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1331, as the actions complained of herein arise under the Constitution and the laws of the United States.  The Court has supplemental jurisdiction over all remaining state law claims under 28 U.S.C. § 1367, as those claims form part of the same case or controversy.  The actions complained of herein occurred in the District of Columbia.

## PARTIES

3.      Plaintiff Stephen Ollar is a citizen of the United States of America and, at all times relevant to this action, was a resident of the District of Columbia.

4.      Plaintiff Miriam Berman is a citizen of the United States of America and, at all times relevant to this action, was a resident of the District of Columbia.

5.      Defendant District of Columbia (hereinafter "D.C. Government" or "the District") is the local government entity given responsibility for certain municipal activities in Washington, D.C., as set forth in the District of Columbia Home Rule Act passed by Congress in 1973.

6.      At all relevant times herein, Defendant Chanelle Reddrick was an actual and/or apparent agent, servant, and/or employee of the District, acting at all times (except on occasions as specifically set forth herein) within the course and scope of her employment and/or authority as a child protection social worker with the District's Child and Family Services Agency (hereinafter "CFSA"), under color of state law and pursuant to her official capacity.  Defendant Chanelle Reddrick is named in this lawsuit individually and in her official capacity for acts conducted within the scope of her employment.

7.      At all relevant times herein, Defendant Brooke Beander was an actual and/or apparent agent, servant, and/or employee of the District, acting at all times (except on occasions

as specifically set forth herein) within the course and scope of her employment and/or authority as a child protection supervisor with CFSA, under color of state law and pursuant to her official capacity.  Defendant Brooke Beander is named in this lawsuit individually and in her official capacity for acts conducted within the scope of her employment.

8.     At all relevant times herein, Defendant Lynsey Nix was an actual and/or apparent agent, servant, and/or employee of the District, acting at all times (except on occasions as specifically set forth herein) within the course and scope of her employment and/or authority as an Assistant Attorney General (hereinafter "AAG") in the District's Office of the Attorney General (hereinafter "OAG"), under color of state law and pursuant to her official capacity. Defendant Lynsey Nix is named in this lawsuit individually and in her official capacity for acts conducted within the scope of her employment.  All of her activities alleged herein involve investigative and administrative activities prior to any judicial proceeding, and absolute immunity is thus inapplicable.

9.     At all relevant times herein, Defendant Norrell Atkinson was an actual and/or apparent agent, servant, employee, and/or state actor of the District, acting at all times (except on occasions as specifically set forth herein) within the course and scope of her authority as a state actor, investigator, and/or willful participant with the District, under color of state law. Defendant Norrell Atkinson is named in this lawsuit individually and in her official capacity as an agent, servant, employee, and/or state actor of the District of Columbia.

## STATEMENT OF FACTS

10.     On June 25, 2016, Plaintiffs' six-week-old daughter, D.O., sustained an injury from an accidental fall in the home.  Although consolable and appearing uninjured, Plaintiffs took D.O. to Sibley Memorial Hospital (hereinafter "Sibley") for evaluation.  Dr. Woo Kim

performed a complete physical examination of D.O. and did not detect any abnormality in her appearance with the exception of an already detected bump on the back of her head from the fall. A CT scan, however, revealed that D.O. had fractured her skull.  It was decided that D.O. should be transferred to Children's National Medical Center (hereinafter "CNMC") for further care.

11.     A nurse at Sibley made a report to CFSA that a child presented with skull fractures.  CFSA assigned Defendant Chanelle Reddrick to investigate the matter.  According to Defendant Brooke Beander, she "assisted [Defendant Reddrick] in supervising the investigation, findings and the determination for a removal."  Notably, neither Defendants Reddrick or Beander ever contacted any of D.O.'s physicians at Sibley.

12.     Having arrived at CNMC, Dr. Xian Zhao examined D.O. and also found no abnormality in her appearance.  Shortly thereafter, Defendant Reddrick arrived at CNMC and interviewed Dr. Zhao.  Dr. Zhao informed her that in his opinion D.O.'s fractures "can be ruled as normal."  Despite his exam revealing no additional injuries, Dr. Zhao then ordered a complete skeletal x-ray survey of D.O. to look for "healing and occult fractures," i.e. old injuries.  The physical examination and twenty x-rays of unnecessary radiation definitively proved that D.O. did not suffer from any prior abuse.  Defendant Reddrick was notified of the absence of prior abuse.

13.     After the skeletal survey, D.O. was transferred to CNMC's Pediatric Intensive Care Unit (hereinafter "PICU") for observation.  Immediately upon their arrival, Defendant Reddrick surprised Plaintiffs and requested to interview each Plaintiff separately.  Plaintiffs fully cooperated with the interviews, consented to have the interviews audio recorded, gave entirely consistent accounts of the preceding events, agreed to permit the investigators to perform a home

visit, and provided a reenactment of the fall.  Defendant Reddrick then left and never followed up with either Plaintiff again.

14.     At all times mentioned herein, Plaintiffs had a legitimate and reasonable expectation of privacy within their private hospital room while in the PICU.  Within this private room, the family slept, changed their clothing, kept possessions, used exclusively the room's private bathroom, showered, and pumped breast milk.  Additionally, the door to the private hospital room was kept closed, a "do not disturb" note was affixed on the outside, and hospital staff knocked and sought permission prior to entering the room.

15.     During this initial period in the PICU, Plaintiff Berman was prohibited from breastfeeding her daughter.  The ostensible justification for depriving D.O. of nutrition was that, if testing had to be performed under sedation, D.O. could not have consumed any food for risk of aspirating.  Plaintiffs were uncomfortable depriving their daughter of nutrition but deferred to the orders of the medical providers.  The following day, an MRI was in fact ordered of D.O.'s brain.  However, due to mechanical issues the MRI could not be performed.  The MRI was rescheduled for the following day, and thus, D.O. was kept 48 hours without nutrition.

16.     On the same day as the canceled MRI, Defendant Reddrick made a "referral" to CNMC's Child and Adolescent Protection Center ("CAPC") to direct one of its child abuse pediatricians to conduct the District's investigation.  The District routinely utilizes CAPC's "medical information and medical findings to assist in CFSA's . . . determination and investigation."  It is CFSA's stated policy to take children to CNMC and CAPC for "medico-legal evaluations," rather than to the child's pediatrician or other qualified medical facility.  CAPC is CFSA's "preferred provider for investigations."  At the purposeful direction of the District, Defendant Norrell Atkinson, a child abuse pediatrician, became a willful participant in

joint action with the District, and, at all times mentioned herein, was exercising powers that were exclusively the prerogative of the State, namely the District's investigation.

17.     On Monday, June 27, 2016, Defendant Atkinson arrived at D.O.'s private hospital room.  Defendant Atkinson did not identify herself as a child abuse pediatrician or inform Plaintiffs she was performing the District's investigation.  Defendant Atkinson asked Plaintiffs questions regarding D.O.'s injuries, her presentment at the hospital, her medical history, and the Plaintiffs' medical histories and family histories.  Defendant Atkinson also requested to perform a physical examination of D.O.  Plaintiffs cooperated with Defendant Atkinson's requests.

18.     After Defendant Atkinson departed, several nurses arrived to perform a battery of blood tests on D.O.  These tests were extremely painful.  A large amount of blood cannot be drawn from a six-week-old infant's veins due to the veins' delicate nature.  The nurses lacerated D.O.'s foot and squeezed her blood out drop-by-drop for an hour until a sufficient quantity was obtained to fill all of the test tubes.  D.O. screamed and struggled throughout the procedure, and Plaintiffs were forced to watch this emotionally distressing abuse being inflected on their daughter.  Plaintiffs would later learn that Defendant Atkinson had ordered the medically unnecessary test solely to further the District's investigation.

19.     Following the blood tests, D.O. underwent the scheduled MRI of her brain. Unbeknownst to Plaintiffs, Defendant Atkinson expanded the MRI to include D.O.'s neck and spine.  Defendant Atkinson did so to look for non-existent evidence of shaken baby syndrome, a thoroughly debunked medical condition.  Notably, an ophthalmologist had examined D.O.'s eyes the previous day and detected no evidence of retinal hemorrhages, which are considered one of the primary indicators of shaken baby syndrome and traumatic head abuse.  Defendant Atkinson was aware of this fact when she needlessly expanded the MRI.

6

20.     Because the MRI was expanded, it now required considerably more time to perform and an even greater amount of dangerous general anesthetic to be administered to a six-week-old infant.  Plaintiffs were not informed of the additional time and risk involved and did not consent to the expanded MRI, which was undertaken solely for investigative purposes at the behest of the District.  Remarkably, during the procedure, the anesthetist determined that it was too dangerous to keep D.O. sedated and she terminated the MRI after only the brain and neck had been imaged.  Undeterred, Defendant Atkinson ordered a medically unnecessary second MRI to be performed the following day of the spine alone.

21.     While all of this transpired, Plaintiffs were continually misled as to the purpose of these tests.  In regards to the second MRI, Plaintiffs were informed that it was necessary to ensure that D.O. did not sustain injury to her neck, which had already been imaged, that would make feeding problematic.  D.O. was thus kept for an additional 24 hours without nutrition, in addition to the previous 48 hours.  Plaintiffs watched as their six-week-old daughter cried out in agony all night for food, having been deprived for nearly 72 hours without nutrition.  The second MRI was canceled the following day due to purported scheduling issues.  Unable to continue the deception and due to Plaintiffs' continued insistence, the PICU staff informed Plaintiffs that there was now miraculously no longer a concern with D.O.'s neck and she could be fed.  In actuality, a pediatric nutritionist had given explicit instruction that under no circumstances could D.O. be deprived of nutrition for longer than 72 hours.

22.     On the evening of June 27, the PICU staff accidently revealed that the previous blood tests had been done to further an "investigation."  This is the first time Plaintiffs were made aware that the tests being performed were not necessary for their daughter's treatment. After Plaintiffs raised the issue with the head of the PICU the following morning of the 28th,

7

Defendant Atkinson returned and conceded only that she had ordered the blood tests.  Plaintiffs informed Defendant Atkinson that her actions constituted a battery and that they wanted "communication" before she ordered further testing on their daughter.

23.     Defendant Atkinson immediately contacted Defendant Reddrick and informed her that Defendant Atkinson had been accused of committing a battery.  Despite Defendant Atkinson's investigation not revealing any evidence of abuse, Defendants Atkinson and Reddrick agreed to remove Plaintiffs from the hospital.  Defendant Beander has testified that she "assisted" Defendant Reddrick in making the "determination for a removal."  Defendants Reddrick and Beander—two stewards of child protection—had direct knowledge that Defendant Atkinson had committed a battery but failed to take any steps to safeguard D.O. from further abuse.

24.     On Wednesday, June 29, 2016, at approximately 3:00 p.m., Defendant Reddrick and armed hospital security arrived at D.O.'s private hospital room.  Acknowledging that Plaintiffs and their daughter had a reasonable expectation of privacy, these individuals waited outside of the private room until being given permission to enter.  Upon entry, Defendant Reddrick informed Plaintiffs that D.O. was being seized from Plaintiffs' care and that they were being removed from the hospital.

25.     Despite Plaintiffs' recorded complete cooperation, Defendants subsequently attempted to justify the seizure by fasley claiming that Plaintiffs were uncooperative with the District's investigation.  Defendant Reddrick would testify that the purpose of her visit was only to ask Plaintiffs "additional questions that had come up during the last few days of kind of working on the investigation" and that the removal decision was made only after Plaintiffs had purportedly declined to answer her questions.  Defendant Reddrick would later retreat from her

previous testimony and claim, "So technically what the conversation [with Defendant Reddrick's supervisors] was, was that if the parents had not agreed to the additional questions that yes, the removal was going to take place."  Even more troubling, Defendant Reddrick also testified that Plaintiffs had already provided answers to her list of purported "additional questions."

26.    Despite the *post hoc* attempts to justify the removal, it is demonstrable the removal was preordained.  Defendant Reddrick completed, prior to her arrival, the removal paperwork to provide to both Plaintiffs.  Defendant Reddrick first testified that armed security guards were called *after* Plaintiffs' purported refusal to cooperate, but later admitted that the guards were present from the outset *before* speaking with Plaintiffs.  Finally, D.O.'s medical records evidence that the PICU was alerted to the removal and was "preparing teams for safety" at 9:00 a.m., roughly 6 hours before the actual removal occurred.  The entire PICU was assembled to observe Plaintiffs' removal in a humiliating spectacle for Plaintiffs to unnecessarily endure.  Defendants Reddrick and Beander had 24 hours in which to obtain judicial authorization for the removal, but chose not to do so.

27.    At all times mentioned herein, the seizure of Plaintiffs' daughter lacked probable cause, exigent circumstances, and judicial authorization, in direct violation of the Plaintiffs' Fourth Amendment rights.  The seizure also violated D.C. Code §§ 4-1301.07, 4-1301.09, and 16-2309, which required "immediate danger" to a child that would make removal "necessary" to protect the child and which also required the District to make reasonable efforts "prior to the removal of a child . . . in order to prevent or eliminate the need for removing the child."

28.    In Plaintiffs' absence, Defendant Atkinson brazenly continued to perform abusive, unlawful, and medically unnecessary procedures on D.O.  On June 30, 2016, Defendant Atkinson subjected D.O. to a second MRI of her spine.  Without Plaintiffs' consent, CNMC

again deprived D.O. of nutrition, placed a needle in D.O.'s arm, and administered anesthetic that lowered her heart rate, rendered her unconscious, and exposed her to an inordinate amount of risk of significant bodily harm or death.  She was kept in this state while her entire spine was scanned to look for non-existent evidence of shaken baby syndrome.  Defendant Atkinson ordered this procedure knowing that Plaintiffs had demanded communication before any further tests were performed and that Plaintiffs' removal made it physically impossible for them to give consent.  However, Plaintiff Berman's signature was *forged* on the medical authorization for the anesthetic.  No evidence of shaking was found.

29.     Following D.O.'s removal, Defendant Reddrick, Defendant Beander, and/or a separate CFSA supervisor emailed the OAG "removal notification list."   According to the representations of Assistant Attorney General (hereinafter "AAG") Aisha Lewis to the Family Court of the District of Columbia Superior Court, "[A]ll of the attorney generals are part of that removal notification list."   Therefore, the list necessarily included the District of Columbia Attorney General.  It was further represented that additional communications from the attorneys general resulted from the initial removal notification.  As such, the Attorney General himself would have to have either authorized the unlawful seizure of D.O. or failed to act when faced with actual or constructive knowledge that the removal lacked probable cause, exigent circumstances, or judicial authorization.

30.     On June 30, 2016, the District assigned Defendant Lynsey Nix, an AAG, to perform an "inquiry into the facts," see D.C. Code § 16-2305(c)(1), and then, if that investigation revealed evidence of neglect or abuse, to draft a petition and represent the District at a probable cause hearing before the Family Court.  Defendant Nix's investigation evidently revealed no exigent circumstances or legal basis for the removal.  In its place, District now alleged that the

etiology of D.O.'s injuries was "not medically possible," otherwise known as the permissive inference of neglect, codified at D.C. Code § 16-2316(c).

31.     Defendant Nix drafted a Petition for the removal, which states, "[G]iven the fact that the parents' explanation of the cause of injuries was *not medically possible*, and they refused to provide any additional accidental account, *the cause of [D.O.'s] injuries is unknown*, and non-accidental trauma cannot be ruled out."   Defendant Nix then had Defendant Reddrick swear under oath that "the facts contained [in the Petition were] true to the best of [her] knowledge and belief."   Yet, the evidence in the District's possession flatly contradicted Defendants Nix and Reddrick's allegations.   Defendant Reddrick has testified that no medical provider ever informed her that D.O.'s injuries were "not medically possible."   While Dr. Zhao stated that D.O.'s injuries "can be ruled as normal," the Petition falsely claims that Dr. Zhao concluded that Plaintiffs' explanation "did not account for the severity of the injuries."   The Petition also cites Defendant Atkinson's medical note, but omits that the note stated that Defendant Atkinson was "unable to fully assess" D.O.'s injuries.   These were the only two physicians Defendant Reddrick interviewed over the course of her investigation and neither supported the District's allegation.

32.     On July 2, 2016, the Family Court held a hearing to determine, as Defendant Nix stated, "probable cause the allegations in the petition are true."   Undeterred by the truth, Defendant Nix made numerous false representations to support the Family Court's necessary finding of probable cause.   She *repeatedly* declared:

> The medical evidence *we have right now* from the [ER] doctor at Sibley, the [ER] doctor from Children's, Dr. Atkinson from her review of the medical records, from the neurology doctor, from the ophthalmology doctor said *this is not possible*.
>
> *            *            *
>
> Accidents happen, but the bottom line is, the medical evidence we have today, Sibley, Children's, multiple doctors at Children's, say a simple fall, a simple drop from chest height to the hardwood floor didn't cause these significant injuries.

33.     Defendant Nix then called Defendant Beander to testify in support of the allegations in the Petition.  Defendant Nix asked Defendant Beander:

> Q. And, from your review of any medical records that you have, who expressed concern that the report of the injury . . . could not have caused injuries as significant as those [D.O.] suffered?
>
> A. Every doctor that she seen from Sibley Hospital, the Children's ER, to ophthalmology to neurology to CAPC to PICU.
>
> *      *      *
>
> Q. And, where did you get the information that the consistent statement about the fall is not possibly the cause of these injuries.
>
> A. From every doctor from Sibley Hospital to the ER to the CAPC.

34.     Despite lacking any medical record to support these representations and despite speaking with only two physicians, neither of whom stated that D.O.'s injuries were "not medically possible" or that Plaintiffs' account did not satisfactorily explain D.O.'s injuries, the District deliberately and knowingly represented the opposite.  Moreover, the wording between Defendant Nix's statements and Defendant Beander's testimony is too strikingly inaccurate and identical to be mere coincidence, suggesting prior coordination.

35.     Defendants Nix and Beander's repeated false assertions and perjured testimony resulted in the court "reluctantly" finding probable cause.  The court recited "a*ll of the medical experts*, so far, who've been involved in this case . . . *have indicated that the injuries aren't consistent with the explanation of a fall*," and "*the medical community, apparently, from the evidence consistently believes* that something happened other than what's been told."

36.     As a result of the finding of probable cause, the Court ordered Plaintiffs' daughter into shelter care over an hour away from the Plaintiffs.  The Court permitted Plaintiffs to have daily visits with their daughter over Defendant Nix's objection.  Plaintiffs would make the hour-

long drive each day to bring breast milk to her still breast-feeding daughter.  The enormity of the pain, suffering, humiliation, inconvenience, emotional trauma, detrimental effect on D.O.'s health, and professional and financial drain on Plaintiffs cannot be understated.  Due solely to the intentionally false representations of Defendants, Plaintiffs would not regain custody of their child until one year later.   Moreover, Plaintiffs were forced to defend against a baseless allegation of neglect, incurring enormous legal expenses from retaining counsel and expert witnesses to refute those allegations.

37.     Based on the aforementioned, it is evident that Defendants conspired to fabricate evidence of "not medically possible" injuries.  Even weeks after D.O.'s removal, Defendant Atkinson desperately sought to support Defendants' claim by fabricating a second injury in D.O.'s shoulder.  The claim of a second injury being discovered weeks after all of the evaluations that took place in the hospital was truly outlandish given that no physician has ever detected symptomology in D.O.'s shoulder, the skeletal survey of D.O. in the emergency room detected no evidence of additional injuries or prior abuse, and a Children's radiologist, who reviewed a follow up skeletal survey, not only affirmatively found no evidence of injury, but was "not comfortable" when asked to amend her report to include the allegation of an additional injury, ultimately refusing to amend her report.

38.     Prior to August 26, 2016, when the District had to produce Defendant Reddrick's investigation summary, Plaintiffs did not know, nor could have known, that no doctor or medical record had informed Defendants that D.O.'s injuries were "not medically possible."  Plaintiffs had to piece together what information the District possessed while simultaneously assembling a defense to the District's allegations of neglect.  Plaintiffs' ability to discover Defendants'

misconduct was hindered by Defendants' false representations to the Family Court and by Defendants withholding and destruction of evidence.

39.     Even though it was requested in discovery, the District withheld all email communications related to its investigation and the removal.  Defendant Reddrick also destroyed her handwritten notes after she twice testified as to having reviewed the notes in preparation for her testimony and after Plaintiffs requested production of the notes in discovery and even issued a subpoena for their production.  Plaintiffs continually fought to obtain access to this evidence throughout the entire neglect proceeding and thereafter.  In each instance, the District would represent that it did "not have any further responsive information," only to be repeatedly repudiated by the Court for failing to produce responsive documents and communications.  Of the limited number of emails that were produced, many emails within email threads were entirely removed.  The District failed to disclose that it had made redactions and that additional emails existed, in violation of the Family Court's rules of discovery and the Court's orders.

40.     Plaintiffs ongoing attempts to discover what information the District possessed prior to the probable cause hearing and the District's efforts to conceal production of said evidence indicates that the District knew of the previous misconduct.  The District possessed a duty to investigate the allegations of misconduct and take reasonable remedial actions to avoid or mitigate the consequences of the misconduct.  Instead, the District attempted to coerce Plaintiffs to stipulate to neglect.  This would have given Plaintiffs' their daughter back in exchange for foregoing the possibility of future redress for the District's misconduct.

41.     At the neglect trial, the District failed to produce one expert who would opine that either D.O.'s injuries were "not medically possible" or that Plaintiffs' account did not satisfactorily explain D.O.'s injuries.  Defendant Atkinson and Dr. Zhao both testified that

D.O.'s injuries were possible from a single impact to the back of the head, as had been described. Dr. Louis Vezina, a Children's radiologist, testified that he sees children with similar injuries "almost every day" and D.O.'s injuries were pretty typical with blunt force trauma like accidental falls. Dr. Vezina and Dr. Woo Kim also testified that D.O.'s injuries were only "mild" to "moderate" in severity. Defendant Atkinson's testimony was the crux of the District's case. She was twice asked what determination she was able to make "to a reasonable degree of medical certainty." Her first response was, "The fractures to [D.O.'s] skull are the result of significant impact trauma to the head." Her second response was that D.O.'s head injuries "are the result of blunt force impact to her head." Defendant Atkinson clarified that skull fractures are always "the result of some type of blunt force trauma to the skull" and that "any type of impact to the head is blunt force." When directly asked whether she believed that D.O.'s skull fractures were "explained or unexplained," Defendant Atkinson was unable to support the previous fabrication and equivocated, "I have concerns about the degree of injury that I'm seeing with the fall as described." Notably, the District's case also benefited from the absence of the evidence that it withheld and destroyed.

42.     Conversely, Plaintiffs' called five highly accomplished experts:   two biomechanical engineers, two pediatric radiologists, and one pediatric neurosurgeon. Each of whom opined, to reasonable degrees of professional certainty, that D.O.'s injuries were consistent with Plaintiffs' account. These opinions were further supported with numerous peer-reviewed articles and case studies, demonstrating identical injuries from similar falls of infants from an even lower height. In total, nine experts, including four of the District's own, offered testimony and opinions favorable to the Plaintiffs.

43. At the conclusion of the evidence, the District submitted proposed findings of fact and conclusions of law that falsely claimed that Defendant Atkinson testified that D.O.'s injuries were unexplained.  The magistrate judge adopted the District's submission nearly verbatim and found against Plaintiffs.  Plaintiffs' loss, however, had the unforeseen consequence of highlighting the District's previous misconduct.  While preparing their appeal, Plaintiffs undertook a comprehensive review of the record to include reading the transcript from the probable cause hearing.  Defendants' previous misrepresentations were now unmistakable after the close of the District's case, where it had failed to produce evidence of the previously professed medical opinions.

44. Plaintiffs were cautious not to immediately accuse the District and its employees of misconduct.  Plaintiffs filed Freedom of Information Act requests with CFSA and OAG in an effort to obtain the missing documents and communications.  CFSA simply disregarded Plaintiffs request.  OAG produced some additional responsive communications but later informed Plaintiffs it was refusing to produce any additional documents or communications.  Plaintiffs also moved the Family Court to compel production.  The Court granted Plaintiffs' motion and ordered the District to both preserve and produce the withheld discovery.  The District refused to comply with the Court's orders.  The Court went so far as to reopen the neglect proceeding to compel production.  While acknowledging that it had withheld discovery, the District still refused to comply with the Court's orders.  Ultimately, the Presiding Judge of the Family Court ruled that procedurally the Court lacked jurisdiction to reopen the neglect proceeding.  This fact does not diminish that the Family Court found that the District had withheld and destroyed evidence in the underlying neglect proceeding.

45.     After thoroughly investigating the issue for nine months, Plaintiffs filed their appellate brief and submitted that, *inter alia*, the Defendants use of fabricated evidence and perjured testimony encroached on several due process issues, including notice, standing, jurisdiction, and fairness/prejudice.   The District's response, however, deliberately avoided addressing, denying, or refuting the misconduct.

46.     The highest levels of D.C. Government have been placed on notice of the unlawful conduct of the District's agents, servants, and employees.   From the moment the first email to the "removal notification list" was sent, every attorney within OAG, including the Attorney General, has known that Plaintiffs' constitutional rights were violated.   The issue was publicly argued before the D.C. Court of Appeals with many AAGs present.   Plaintiffs have also placed the District's Office of the Inspector General, the Board of Ethics and Government Accountability, the Office of the Mayor, and the MPD on notice of this misconduct.   Yet, the District has never refuted the allegations of misconduct with evidence to the contrary or taken any action to correct the previous unlawful conduct.   At every turn, the District has authorized the unlawful conduct, knowingly failed to stop subordinates from furthering the unlawful conduct, or demonstrated a deliberate indifference to address the misconduct of its agents, servants, and employees.

47.     As a result, Plaintiffs have incurred substantial expense and economic losses and have suffered, and will continue to suffer, from mental and emotional damages, all of which were directly and proximately caused by the grossly negligent, wanton, reckless, and intentional acts of these Defendants, as described above, for which Plaintiffs deserve to be fairly compensated.

## CAUSES OF ACTION

### COUNT I

(Constitutional and Civil Rights Violations – Under 42 U.S.C. § 1983)

Plaintiffs replead and incorporate by reference herein, each and every allegation set forth above, and further state as follows:

48.     At all relevant times mentioned herein, Plaintiffs Stephen Ollar and Miriam Berman had clearly established rights under the Fourth and Fifth Amendments to the Constitution of the United States, including, but not limited to, the right to the care, custody, and management of their child; the right to be free from unreasonable searches and seizures; the right to assert on their child's behalf her bodily integrity interests; the right to have life, liberty, and the sanctity of the family protected by due process of law; and the right to the meaningful disclosure of evidence.

49.     At all relevant times herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, including, but not limited to, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, acting under color of state law as conferred on them by the District of Columbia and/or the Federal Government, owed a continuing duty to reasonably ensure that the clearly-established federal constitutional and civil rights of the Plaintiffs were not violated, to reasonably ensure that the Plaintiffs' rights in this regard were adequately protected, to act responsibly when provided notice that the Plaintiffs' rights were violated, and to adequately supervise and train employees to avoid constitutional violations.

50.     By the activities described above, Defendants violated these duties by knowingly, intentionally, maliciously, and/or with reckless disregard depriving Plaintiffs of their federal constitutional rights, including, but not limited to:

a.     Defendants Chanelle Reddrick, Brooke Beander, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, violated the Plaintiffs' right to the care, custody, and management of their child; right to be free from unreasonable searches; and right to assert on their child's behalf her bodily integrity interests; by ordering and undertaking painful and medically unnecessary procedures, including, but not limited to, x-ray and MRI examinations, blood tests, and the administration of anesthetic, solely for investigative purposes; without Plaintiffs' consent or judicial authorization after reasonable notice or opportunity to be heard.

b.     Defendants Chanelle Reddrick, Brooke Beander, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, violated the Plaintiffs' right to the care, custody, and management of their child and the right to be free from unreasonable seizures, by unlawfully seizing the Plaintiffs' daughter from their care, custody, and management, without exigent circumstance, probable cause, or judicial authorization, and by unlawfully barring the Plaintiffs' access to the hospital in which their daughter was being illegally detained.

c.     Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, violated the Plaintiffs' right to have life,

liberty, and the sanctity of the family protected by due process of law, by fabricating evidence, and conspiring to fabricate evidence, that D.O.'s injuries were "not medically possible" and that Plaintiffs' account of an accidental fall did not satisfactorily explain D.O.'s injuries.

d.      Defendants Chanelle Reddrick and Lynsey Nix, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, violated the Plaintiffs' right to have life, liberty, and the sanctity of family protected by due process of law, by including fabricated evidence in a child neglect Petition and falsely swearing under oath that the facts and allegations contained within the Petition were true to the best of their knowledge and belief.

e.      Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, Defendants Lynsey Nix and Brooke Beander, violated the Plaintiffs' right to have life, liberty, and the sanctity of family protected by due process of law, by presenting fabricated evidence and by suborning and offering perjured testimony at a probable cause hearing intended to protect children from the unconstitutional separation from their parents.

f.      Defendant Chanelle Reddrick, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, violated the Plaintiffs' right to have life, liberty, and the sanctity of family protected by due process of law and the right to the meaningful disclosure of evidence, by destroying and withholding evidence in a proceeding where governmental action caused serious injury to Plaintiffs.

20

51.     The aforementioned acts, omissions, and systemic deficiencies are the policies and customs of Defendant D.C. Government and its agents, servants, and employees, which have improperly been permitted and sanctioned, and as such, have resulted in a pattern and practice of improper conduct, consisting of, *inter alia*:

a.      The implementation of explicit statutes, policies, and/or formal rules or understandings that establish a fixed plan of action, wherein the District's agents, servants, and employees routinely perform "medico-legal evaluations" of children, subjecting children to unnecessary physical harm, starvation, radiation, and anesthesia, without parental knowledge or consent, and under the guise of actual medical care, so as to further the District's investigations of child abuse and neglect; as well as the failure to stop this custom practice of subordinates and the deliberate indifference that failing to adequately train and supervise employees with regard to the rights of parents in making all medical determinations pertaining to their children, absent judicial authorization, would probably result in violations of constitutional rights.

b.      Actions of policymakers to authorize and/or knowingly fail to act when children are unlawfully seized without probable cause, exigent circumstance, or judicial authorization, and the failure to train or supervise employees adequately in the constitutional limits governing when a child may be removed from his/her parents' care.

c.      Deprivations of due process so routine and widespread that, despite actual or constructive knowledge that its agents, servants, and employees had violated Plaintiffs' constitutional rights, fabricated evidence, gave perjured testimony, and destroyed and withheld evidence, the District failed to take adequate and reasonable

actions to stop the consistent constitutional violations of subordinates, and indeed, furthered the previous misconduct.

52.     The acts alleged herein were committed either at the instruction of Defendant D.C. Government, with the knowledge and consent of Defendant D.C. Government, or were thereafter ratified and/or approved by Defendant D.C. Government and its various policymakers.

53.     The acts alleged herein violated clearly established Federal Constitutional rights, criminal statutes, court rules, and attorney rules of professional conduct, were not objectively reasonable, and were done under circumstances in which no reasonable official in the aforementioned positions would fail to realize that his or her conduct was a violation of Plaintiffs' constitutional rights.  The ubiquity of the violations illustrates the negligent and deliberate indifference manifested by systemic and grossly inadequate instruction, training, supervision, control, discipline, and policies on the part of Defendant D.C. Government.

54.     As a direct and proximate result of Defendants' aforesaid individual and concurrent acts and omissions, acting in their respective capacities under color of state law, and as a direct and proximate result of the deficiencies of Defendant D.C. Government's policies and customs, Plaintiffs suffered and may continue to suffer injuries and damages, including, but not limited to: substantial financial losses and legal expenses; lost wages and diminution of earning capacity; and have suffered and will in the future suffer from severe emotional distress, mental anguish, embarrassment, and humiliation, all of which may be permanent in nature.

WHEREFORE, Plaintiffs Stephen Ollar and Miriam Berman demand judgment of and against Defendant D.C. Government and Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, acting in their individual capacities, jointly and severally, in the full amount of Five Million Dollars ($5,000,000.00), plus pre-judgment interest and costs.

## COUNT II
(Negligence)

Plaintiffs replead and incorporate by reference herein, each and every allegation set forth above, and further state as follows:

55.    At all relevant times herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, including, but not limited to, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, acted affirmatively towards Plaintiffs Stephen Ollar and Miriam Berman, singling out Plaintiffs from the general public in the course of conducting activities both within and beyond the scope of their assigned work activities, thereby placing Plaintiffs in a special relationship with Defendants and creating a form of privity between the District and the Plaintiffs.   At all relevant times herein, there existed direct and continuing contact between the parties.

56.    At all relevant times herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, owed a continuing duty, *inter alia*, 1) to reasonably ensure that child neglect investigations are performed with due care for the rights of families, in accordance with all applicable statutes, policies, and procedures, and without animus or bias towards the parents; 2) to reasonably ensure that investigations are performed completely; 3) to refrain from directing physicians to conduct investigations on behalf of the District under the guise of actual and necessary medical care; 4) to obtain the knowing consent of parents or judicial authorization before "medico-legal evaluations" and medically unnecessary testing is performed on children; 5) to make determinations that are consistent with

23

the medical record; 6) to fully and accurately record, report, and rely on facts discovered during the course of the investigation; 7) to refrain from fabricating evidence and acting with a willful and reckless disregard towards the truth; 8) to refrain from unnecessarily and unreasonably seizing children from the care and custody of their parents; and 9) to adequately preserve and produce investigation documents and notes, particularly after being requested and subpoenaed.

57.     At all relevant times herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, also had a duty to comply with the statutes and regulations of the District of Columbia enacted to protect and/or promote public safety, such as D.C. Code §§ 4-1301.07, 4-1301.09, and 16-2309, which required "immediate danger" to the child that would make removal "necessary" to protect the child and which also required the District to make reasonable efforts "prior to the removal of a child . . . in order to prevent or eliminate the need for removing the child."

58.     At all relevant times herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, negligently, willfully, wantonly, and recklessly, breached the duties owed to the Plaintiffs by, *inter alia*:

1) With respect to Defendants D.C. Government, Reddrick, Beander, Nix, and Atkinson:

    a.     Failing to conduct a child neglect investigation consistent with applicable statutes, policies, and procedures;

    b.     Failing to perform a full and complete investigation;

    c.     Failing to obtain Plaintiffs' consent or judicial authorization prior to performing "medico-legal evaluations" and medically unnecessary testing on D.O.;

24

d.      Wrongfully depriving Plaintiffs of the care and custody of their daughter, without probable cause, exigent circumstances, or judicial authorization;

e.      Failing to fully and accurately record, report, and rely on countervailing facts discovered during the course of the investigation;

f.      Fabricating evidence, acting with a willful and reckless disregard towards the truth, and continually relying on fabricated evidence after it became, or should have become, readily apparent to any objective observer that the information was false;

g.      Depriving Plaintiffs' exercise of their civil, statutory, and constitutional rights; and otherwise showed a reckless disregard for Plaintiffs' attempts to exercise such legal rights to which they were entitled;

h.      Fabricating claims of additional injuries to Plaintiffs' daughter despite the absence of symptomology and the bulk of opposing medical opinions of highly qualified and independent medical professionals;

i.      Participating in a wrongful conspiracy;

2) With respect to Defendants D.C. Government, Reddrick, Beander, and Nix:

j.      Delegating responsibility for performing the District's investigation on to an unqualified physician;

k.      Failing to obtain unbiased medical opinions when notified that the District's expert physician had been accused of committing a battery on the subject child of the District's investigation;

l.      Failing to conduct a statutorily required safety plan with Plaintiffs prior to the removal of their child;

    m.    Failing to seasonably preserve and produce documents and communications that were requested and subpoenaed during discovery, compelled by the Family Court, and requested pursuant to the District's FOIA legislation, without just cause and in violation of various statutes and rules of procedure;

    n.    Unduly prolonged a deprivation by failing to reasonably and actively perform, advance, and/or complete their investigations, safety planning, family meetings, neglect proceedings, discovery obligations, reunification efforts, and other activities in a timely manner; and

    o.    Recklessly pursued a neglect proceeding, even after being placed on notice that the original probable cause determination was obtained through fraud, deceit, and perjury, and without any supporting opinions or medical records.

59.    At all times mentioned herein, Plaintiffs were free of negligence and/or contributory negligence.

60.    Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, are also negligent *per se* by virtue of their violation of D.C. Code §§ 4-1301.07, 4-1301.09, and 16-2309.

61.    As a direct and proximate result of the Defendants' aforesaid individual and concurrent negligence, and their willful, wanton, and reckless conduct, Plaintiffs suffered and may continue to suffer injuries and damages, including, but not limited to: substantial financial losses and legal expenses; lost wages and diminution of earning capacity; and have suffered and will in the future suffer from severe emotional distress, mental anguish, embarrassment, and humiliation, all of which may be permanent in nature.

WHEREFORE, Plaintiffs Stephen Ollar and Miriam Berman demand judgment of and against Defendant D.C. Government and Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually and as the agent, servant, and/or employee of the District of Columbia acting in their official capacity, jointly and severally, in the full amount of Five Million Dollars ($5,000,000.00), plus pre-judgment interest and costs.

## COUNT III
(Abuse of Process)

Plaintiffs replead and incorporate by reference herein, each and every allegation set forth above, and further state as follows:

62.     At all relevant times mentioned herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, including, but not limited to, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, owed a duty to Plaintiffs Stephen Ollar and Miriam Berman not to abuse the District of Columbia's civil neglect proceedings for a purpose other than that for which these processes were designed and intended.

63.     Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, breached this duty to Plaintiffs, *inter alia*:

1) With respect to Defendants D.C. Government, Reddrick, Beander, Nix, and Atkinson:

a.     By failing to have a legal basis for the premeditated removal of Plaintiffs'
six-week-old breastfeeding infant, which forced Plaintiffs to appear and defend against
the removal at a probable cause hearing before the Family Court;

b.     By using the District of Columbia's civil child neglect proceedings to
avoid liability for the reported abuses of medical personnel at the purposeful direction
and behest of the District, to continue to perform abusive and medically unnecessary
testing on the Plaintiffs' daughter without Plaintiffs' interference, and to force Plaintiffs'
to stipulate to neglecting their daughter thereby foreclosing the possibility of future
redress.

2) With respect to Defendants D.C. Government, Reddrick, Beanders, and Nix:

c.     By drafting and filing a civil neglect Petition with the Family Court that
contained fabricated evidence and material omissions and that lacked a legitimate legal
basis for the unlawful removal of Plaintiffs' daughter;

d.     By presenting fabricated evidence and by suborning and offering perjured
testimony at a probable cause hearing intended to protect children from the
unconstitutional and detrimental separation from their parents in order to obtain a finding
of probable cause from the Court;

e.     By continuing on the flawed Petition into a factfinding proceeding without
evidence to support the knowingly false allegations contained within, forcing Plaintiffs to
bear all of the anxiety and costs of defending against the action; and

64.     As a direct and proximate result of the Defendants' aforesaid individual and
concurrent negligence, and their willful, wanton, and reckless conduct, Plaintiffs suffered and
may continue to suffer injuries and damages, including, but not limited to: substantial financial

losses and legal expenses; lost wages and diminution of earning capacity; and have suffered and will in the future suffer from severe emotional distress, mental anguish, embarrassment, and humiliation, all of which may be permanent in nature.

WHEREFORE, Plaintiffs Stephen Ollar and Miriam Berman demand judgment of and against Defendant D.C. Government and Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually and as the agent, servant, and/or employee of the District of Columbia acting in their official capacity, jointly and severally, in the full amount of Five Million Dollars ($5,000,000.00), plus pre-judgment interest and costs.


### COUNT IV
(Intentional Infliction of Emotional Distress)

Plaintiffs replead and incorporate by reference herein, each and every allegation set forth above, and further state as follows:

65.     At all relevant times mentioned herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, including, but not limited to, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, did by extreme, outrageous, intentional, willful, malicious, and/or reckless conduct intentionally humiliate, embarrass, shock, scar, and frighten Plaintiffs, including, but not limited to:

1) With respect to Defendants D.C. Government, Reddrick, Beander, Nix, and Atkinson:

a.      Forcing Plaintiffs to watch as their daughter was abused by medical personnel, to include subjecting their daughter to prolonged starvation, painful lacerations and blood draws, and exposure to deadly radiation and anesthetic;

b.      Fabricating evidence of a medically impossible injury to avoid liability for the abuses committed on Plaintiffs' daughter;

c.      Unlawfully seizing Plaintiffs' daughter without a legitimate legal justification;

d.      Parading Plaintiffs from their daughter's hospital room, the PICU, and CNMC by armed security guards in a publicly humiliating spectacle;

e.      Subjecting Plaintiffs' daughter to additional dangerous medically unnecessary testing, knowing that Plaintiffs could not consent due to their removal but, nevertheless, forging Plaintiffs' signature on the consent forms for the procedure;

f.      Subjecting Plaintiffs and their daughter to foster care for nine-months and the prolonged fear and uncertainty of never being able to regain custody;

g.      Forcing Plaintiffs to undertake a daily hour-long drive to see their daughter and bring her breastmilk;

h.      Forcing Plaintiffs to defend against a baseless child neglect proceeding;

i.      Forcing Plaintiffs to incur nearly one million dollars in legal fees and ancillary costs to defend against the District's baseless allegations and reunite with their daughter;

j.      Furthering the Defendants' misconduct despite being notified of the illegality of said misconduct;

k.      Fabricating additional injuries in the absence of any symptomology;

30

l.      Withholding and destroying evidence;

m.      Making false representations and offering perjured testimony to the Family Court;

n.      Demonstrating at all times herein a callous disregard for the gravity of Defendants' actions, the societal importance of their positions, the rights of Plaintiffs, the harm that they were inflicting on Plaintiffs and their daughter, and the damage they were inflicting on the reputations of the District of Columbia, the justice system, and the Bar

2) With respect to Defendants D.C. Government, Reddrick, Beander, and Nix:

o.      Knowingly violating rules of professional conduct and Defendants' ethical obligation to represent D.O.'s best interests;

p.      Resisting every effort Plaintiffs made to reunite with their daughter prior to the fact-finding hearing, including agreeing to any limitation the District wished to impose;

q.      Intentionally delaying Plaintiffs' reunification with their daughter and imposing superfluous obstacles for Plaintiffs to meet before reunification would be permitted after the fact-finding hearing; and

r.      Refusing to address, refute, defend, or acknowledge the criminal misconduct of Defendants on appeal, despite being fully aware of and having an obligation to correct the misconduct, so as to avoid being held accountable for said misconduct.

66.      As a direct and proximate result of the aforementioned extreme, outrageous, intentional, willful, malicious, and reckless conduct of Defendants and their agents, servants, and

employees, Plaintiffs suffered, and will continue to suffer, *inter alia*, severe emotional distress, mental anguish, embarrassment, and humiliation, all of which are permanent in nature.

WHEREFORE, Plaintiffs Stephen Ollar and Miriam Berman demand judgment of and against Defendant D.C. Government and Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually and as the agent, servant, and/or employee of the District of Columbia acting in their official capacity, jointly and severally, in the full amount of Five Million Dollars ($5,000,000.00), plus pre-judgment interest and costs.

## COUNT V
(Negligent Infliction of Emotional Distress)

Plaintiffs replead and incorporate by reference herein, each and every allegation set forth above, and further state as follows:

67.     At all relevant times herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, including, but not limited to, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, acted affirmatively towards Plaintiffs Stephen Ollar and Miriam Berman, singling out Plaintiffs from the general public, thereby creating a special relationship between the parties, while undertaking a child neglect investigation and family separation that necessarily implicated the Plaintiffs' emotional well-being.

68.     At all relevant times mentioned herein, Defendants owed a continuing duty to conduct themselves reasonably in a manner so as not to humiliate, embarrass, shock, scar, or

frighten Plaintiffs, and to avoid any unreasonable or unnecessary infliction of emotional distress upon the Plaintiffs.

69.     At all relevant times mentioned herein, Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually, and Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees, negligently, willfully, wantonly, and recklessly, breached the duties owed to the Plaintiffs, as set forth above in paragraph 65.

70.     As a direct and proximate result of the aforementioned extreme, outrageous, intentional, willful, malicious, and reckless conduct of Defendants and their agents, servants, and employees, Plaintiffs suffered, and will continue to suffer, *inter alia*, severe emotional distress, mental anguish, embarrassment, and humiliation, all of which are permanent in nature.

WHEREFORE, Plaintiffs Stephen Ollar and Miriam Berman demand judgment of and against Defendant D.C. Government and Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually and/or as the agent, servant, and/or employee of the District of Columbia acting in their official capacity, jointly and severally, in the full amount of Five Million Dollars ($5,000,000.00), plus pre-judgment interest and costs.

## COUNT VI
(Negligent Training, Supervision, and Retention)

Plaintiffs replead and incorporate by reference herein, each and every allegation set forth above, and further state as follows:

71.     At all relevant times mentioned herein, Defendant D.C. Government, acting by and through the agents, servants, and/or employees, had a continuing duty to reasonably,

carefully, and conscientiously secure the services of qualified and well-trained employees, agents, and/or servants, and to reasonably train, supervise, and retain their employees, agents and/or servants so as to reasonably assure, *inter alia*, that they were trained in reasonable methods of investigation; that they would not remove babies from their natural parents without just cause; that they would seek judicial approval for premeditated removals; that they would appropriately refrain from seeking to place unreasonable restrictions on parents' access to their own children or unreasonably delay the return of such children when the return is warranted; that they would recognize that the proper role of the D.C. Government is to represent the best interests of children; that they would not engage in unprofessional and/or criminal conduct; that they would respect the rights of citizens; that they would refrain from retaliation based on challenges to official conduct or personal dislikes; and generally that they would at all times act with a sufficient minimum level of professionalism, as required by the duties of their respective office.

72.     At all relevant times mentioned herein, Defendant D.C. Government, acting by and through their agents, servants and/or employees, breached their duties owed to Plaintiffs and those similarly situated.   The ubiquity of the violations illustrates deliberate indifference manifested by systemic and grossly inadequate instruction, training, and lack of adequate supervision, control, discipline, and/or policies on the part of Defendant D.C. Government and its agencies.

73.     As a direct and proximate result of the Defendants' aforesaid individual and concurrent negligence, and their willful, wanton, and reckless conduct, Plaintiffs suffered and may continue to suffer injuries and damages, including, but not limited to: substantial financial losses and legal expenses; lost wages and diminution of earning capacity; and have suffered and

will in the future suffer from severe emotional distress, mental anguish, embarrassment, and humiliation, all of which may be permanent in nature.

WHEREFORE, Plaintiffs Stephen Ollar and Miriam Berman demand judgment against Defendant D.C. Government in the full amount of Five Million Dollars ($5,000,000.00), plus pre-judgment interest and costs.

## COUNT VII
(Punitive Damages)

Plaintiffs replead and incorporate by reference herein, each and every allegation set forth above, and further state as follows:

74.   Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, acting individually and as the agent, servant, and/or employee of the District of Columbia in their respective official capacities, acted with actual malice toward Plaintiffs by engaging in conscious and deliberate wrongdoing with an evil or wrongful motive, with an intent to injure, with ill will, and with a callous indifference to the federally protected rights of Plaintiffs, as set forth above in the preceding counts.

WHEREFORE, Plaintiffs Stephen Ollar and Miriam Berman demand judgment of and against Defendants Chanelle Reddrick, Brooke Beander, Lynsey Nix, and Norrell Atkinson, individually and as the agent, servant, and/or employee of the District of Columbia acting in their official capacity, jointly and severally, in the full amount of Five Million Dollars ($5,000,000.00) in punitive damages.

## **JURY DEMAND**

Plaintiffs hereby request a trial by jury as to all issues triable herein.


Respectfully submitted,

*/s/ Miriam Berman*
Miriam Berman
8401 Farrell Drive
Chevy Chase, MD 20815
Tel: (703) 282-8384
mimsberman@yahoo.com
*Pro se Plaintiff*


*/s/ Stephen P. Ollar*
Stephen P. Ollar
D.C. Bar No.:  1617446
8401 Farrell Drive
Chevy Chase, MD 20815
Tel: (907) 382-7675
stephenpollar@gmail.com
*Pro se Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 28th day of November, 2020, a copy of the foregoing

Amended Complaint will be filed electronically with the Clerk of the Court using the CM/ECF

system, which will then send a notification of such filing (NEF) to:

> Robert A. Deberardinis, Jr.
> Matthew R. Blecher
> Assistant Attorneys Generals
> *Attorneys for Defendants the District of Columbia, Channelle Reddrick, Brooke Beander, and Lynsey Nix*

and

> Jodi V. Terranova
> *Attorney for Defendant Atkinson*

> */s/ Stephen P. Ollar*
> Stephen P. Ollar