## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STEPHEN OLLAR, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:19-cv-01847-KBJ |

## DEFENDANTS DISTRICT OF COLUMBIA, BROOKE BEANDER, LYNSEY NIX, AND CHANELLE REDDRICK'S REPLY IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT OR, ALTERNATIVELY, MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

**INTRODUCTION**……………………………………………………………………1

**ARGUMENT**……………………………………………………………………………1

      **I. The Court Should Dismiss Plaintiffs' 1983 Claims**………………………………1

          **A. Defendants Beander, Nix, and Reddrick are Entitled to Absolute
            Immunity For the Allegations Related to the Probable Cause Hearing**………1

          **B. Issue Preclusion Defeats Plaintiffs' Claims**........................................................5

          **C. Defendants Beander Nix, and Reddrick are Entitled to Qualified
            Immunity**…………………………………………………………………9

             **1. Defendants' Beander and Reddrick's Commencement of an
                Investigation which Ultimately Resulted in Dr. Atkinson Ordering
                Medical Tests**……………………………………………………9

             **2. The Seizure of Plaintiffs' Daughter**……………………………14

             **3. The Alleged Fabrication of Evidence and Conspiracy to Fabricate
                Evidence**……………………………………………………16

             **4. The District Defendants Alleged Inclusion of Fabricated Evidence
                in the Neglect Proceeding**…………………………………………17

             **5. Alleged Destruction of Evidence**……………………………………18

          **D. Plaintiffs' Section 1983 Claims Against the District Fail**…………………...18

             **1. The District's Custom and Policy to Violate Parents' Rights to
                Make Medical Decisions Regarding their Children**………………...19

             **2. The District's Alleged Custom and Policy to Violate Parents'
                Rights To the Care, Custody, and Control of their Children**……...19

             **3. The District's Alleged Custom and Policy to Violate Parents'
                Due Process Rights**…………………………………………………21

    **II, The Court Should Dismiss Plaintiffs' Common Law Claims**

          **A. Sovereign Immunity**…………………………………………………22

**B.**   **Public Duty Doctrine**………………………………………………**23**

**C.**   **Negligence**………………………………………………………**24**

**D.**   **Abuse of Process**………………………………………………...**25**

**E.**   **Negligent and Intentional Infliction of Emotional Distress**………………...**25**

**F.**   **Negligent Training Supervision and Retention**……………………………..**27**

**III.**   **Alternatively, the Court Should Enter Judgment for the District on Plaintiff's Common Law Claims**………………………………………………………..**28**

**CONCLUSION**………………………………………………………….…...**31**

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662, (2009) ............................................................................................... 5

*Baker v. District of Columbia,*
    326 F.3d 1302 (D.C. Cir. 2003) ............................................................................ 18

*Bank of Nova Scotia v. United States,*
    487 U.S. 250 (1988) .............................................................................................. 16

*Barnhardt v. District of Columbia,*
    8 A.3d 1206 (D.C. 2010) ................................................................................. 29, 30

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) .............................................................................................. 21

*Birchfield v. North Dakota,*
    136 S. Ct. 2160 (2016) ......................................................................................... 19

*Blair v. District of Columbia,*
    190 A.3d 212 (D.C. 2018) .................................................................................... 27

*Brown v. District of Columbia,*
    853 A.2d 733 ......................................................................................................... 30

*Browning v. Clinton,*
    292 F.3d 235 (D.C. Cir. 2002) ............................................................................ 24

*Buckley v. Fitzsimmons,*
    509 U.S. 259 (1993) ........................................................................................ 2, 3, 4

*Caldwell v. LeFaver,*
    928 F.2d 331 (9th Cir. 1991) .............................................................................. 14

*Campbell v. District of Columbia,*
    568 A.2d 1076 (D.C. 1990) ............................................................................ 29, 30

*Chayo v. Kaladijian,*
    844 F. Supp. 163 (S.D.N.Y. 1994) ............................................................. 10, 11, 12

*Civic v. Signature Collision Cent.,*
    221 A.3d 528 (D.C. 2019) .................................................................................... 25

*DeKine v. District of Columbia,*
    422 A.2d 981 (D.C. 1980) .................................................................................... 29

*District of Columbia v. Arnold & Porter,*
    756 A.2d 427 (D.C. 2000) .................................................................................... 30

*District of Columbia v. Dunmore,*
    662 A.2d 1356 (1995) ........................................................................................... 29

*District of Columbia v. Ross,*
    697 A.2d 14 (D.C.1997) ....................................................................................... 30

*District of Columbia v. Wesby,*
    138 S.Ct. 577 (2018) ............................................................................. 12, 13, 15, 18

*Doe v. District of Columbia,*
    796 F.3d 96 (D.C. Cir. 2015) ......................................................................... Passim

*Donald v. Polk County,*
   836 F.2d 376 (7th Cir. 1988) ......................................................................... 8

*Dory v. Ryan,*
   25 F.3d 81 (2d Cir. 1994) .............................................................................. 3

*Franks v. Delaware,*
   438 U.S. 154 (1978) ..................................................................................... 17

*Franz v. Lytle,*
   997 F.2d 784 (10th Cir. 1993) ................................................................. 13, 19

*Gomes v. Wood,*
   451 F.3d 1122 (10th Cir. 2006) .................................................................. 15

*Gray v. Poole,*
   275 F.3d 1113 (D.C. Cir. 2002) ................................................................... 2

*Greene v. McElroy,*
   360 U.S. 474 (1959) ..................................................................................... 18

*Hardwick v. County of Orange,*
   844 F.3d 1112 (9th Cir. 2017) ...................................................................... 2

*Hatch v. Dep't for Children, Youth, and Their Families,*
   274 F.3d 12 (1st Cir. 2001) ......................................................................... 14

*Hedgepeth v. Whitman Walker Clinic,*
   22 A.3d 789 (D.C. 2011) ............................................................................. 26

*Hill v. District of Columbia,*
   345 A.2d 867 (D.C. 1975) ............................................................................ 30

*Hopkins v. Price Waterhouse,*
   920 F.2d 967 (D.C. Cir. 1990) ...................................................................... 2

*Hurd v. District of Columbia,*
   864 F.3d 671 (D.C. Cir. 2017) .................................................................. 6, 7

*In re Jam.J.,*
   825 A.2d 902 (D.C. 2003) ........................................................................... 24

*J.C. v. District of Columbia,*
   199 A.3d 192 ........................................................................................ 12, 16

*Jackson v. District of Columbia,*
   412 A.2d 948 (D.C. 1980) ............................................................................. 8

*Jeffries v. District of Columbia,*
   917 F. Supp. 2d 10 (D.D.C. 2013) ............................................................... 24

*Joeckel v. Disabled Am. Veterans v.,*
   793 A.2d 1279 (D.C. 2002) .......................................................................... 26

*Jones v. Horne,*
   634 F.3d 588 (D.C. Cir 2011) ...................................................................... 22

*Katz v. United States,*
   389 U.S. 347 (1967) ..................................................................................... 14

*Kottmyer v. Maas,*
   436 F.3d 684 (6th Cir. 2006) ....................................................................... 12

*Lisker v. City of Los Angeles,*
   780 F.3d 1237 (9th Cir. 2015) ...................................................................... 3

*Mabe v. San Bernardino Cnty, Dep't of Public Social Serv.,*
   237 F.3d 1101 (9th Cir. 2001) ..................................................................... 15

*Mann v. City of San Diego,*
    907 F.3d 1154 (9th Cir. 2018) ........................................................................... 13

*Manning v. Miller,*
    355 F.3d 1028 (7th Cir. 2004) ............................................................................. 3

*McClam v. Barry,*
    697 F.2d 366 (D.C. Cir. 1983) ............................................................................ 8

*McCormick v. Board of County Com'rs of Shawnee County,*
    35 P.3d (Kan. 2001) .......................................................................................... 23

*Monell v. New York City Dep't of Soc. Servs.,*
    436 U.S. 658 (1978) .......................................................................................... 21

*Napoleon v. Heard,*
    455 A.2d 901 (D.C. 1983) ................................................................................... 8

*New Hampshire v. Maine,*
    532 U.S. 742, (2001) .......................................................................................... 5

*Page v. Mancuso,*
    999 F. Supp. 2d 269 (D.D.C. 2013) .................................................................. 22

*Parham v. J.R.,*
    422 U.S. (1979) ................................................................................................... 9

*Parklane Hosiery Co., Inc. v. Shore,*
    439 U.S. 322 (1979) ............................................................................................ 8

*Patrick v. District of Columbia,*
    126 F. Supp. 3d 132 (D.D.C. 2015) .................................................................. 30

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ...................................................................................... 9, 16

*Plumhoff v. Rickard,*
    134 S. Ct. 2012 (2014) ...................................................................................... 14

*Rehberg v. Paulk,*
    566 U.S. 356 (2012) ........................................................................................ 1, 2

*Rogers v. Johnson-Norman,*
    466 F. Supp. 2d 162 (D.D.C. 2006) .................................................................. 26

*Scahill v. District of Columbia,*
    271 F. Supp. 3d 216 (D.D.C. 2017) .................................................................... 9

*Schwimmer v. Kaladijian,*
    988 F. Supp. 631 (S.D.N.Y. 1997) ........................................................ 10, 11, 12

*Scott v. District of Columbia,*
    101 F.3d 748 (D.C. Cir 1996) ........................................................................... 25

*Smith v. District of Columbia,*
    674 F. Supp. 2d 209 (D.D.C. 2009) .............................................................. 27, 28

*Taylor v. Sturgell,*
    553 U.S. 880 (2008) ........................................................................................ 5, 6

*Turner v. District of Columbia,*
    532 A.2d 662 (D.C. 1987) ................................................................................. 23

*United States v. Gamory,*
    635 F.3d 480 (11th Cir. 2011) .......................................................................... 17

*United States v. Reilly,*
    224 F.3d 986 (9th Cir. 2000) ............................................................................. 14

*Van Emrik v. Chemung County Dep't of Social Serv,*
    911 F.2d 863 (2nd Cir. 1990) ................................................................ 10, 12, 13, 15
*White by White v. Chambliss,*
    112 F.3d 731 (4th Cir. 1997) ................................................................................ 23
*Whitlock v. Brueggemann,*
    682 F.3d 567 (7th Cir. 2012) .............................................................................. 4, 16

Statutes

*D.C. Code § 4-1301.08* ..................................................................................................... 12
D.C. Code § 12-309 ............................................................................................... 29, 30, 31
D.C. Code § 16-2328(a) ........................................................................................................ 7
D.C. Code § 16-2316(c) ........................................................................................................ 7
D.C. Code § 16–2316(b) ..................................................................................................... 24
D.C. Code § 16-2301(9)(A)(i) ............................................................................................... 6
D.C. Code § 16-2301(9)(A)(ii) .............................................................................................. 6
D.C. Code §§ 4-1301.07, 4-1301.09, and §16-2309 ........................................................... 24

Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 24
Fed. R. Civ. P. 56(c) ........................................................................................................... 28

Other Authorities

*Judicial Enforcement of Lifesaving Treatment for Unwilling Patients,*
    39 Creighton L. Rev. 849 (2006) .......................................................................... 9

## INDEX OF EXHIBITS

| Exhibit No. | Description |
|:-----------:|:------------|
| 1 | *In re D.O.*, No. 17-FS-444 (August 23, 2019) |
| 2 | Excerpt From CFSA Manual |
| 3 | Investigative Summary |

Exhibit 2 was previously filed under seal as an exhibit attached to Defendants' Reply in support of their original motion to dismiss [25].

## INTRODUCTION

Plaintiffs' Opposition fails to address adequately the arguments raised in Defendants' Motion to Dismiss the Amended Complaint.  Much of the Opposition consists of emotionally charged rhetoric lacking legal analysis.  For example, nearly six pages of the brief consists of an unfortunate tirade against the Superior Court and the District of Columbia Court of Appeals attacking these tribunals for what Plaintiffs' ill perceive as bias and unfair treatment.  The remainder of the Opposition consists mostly of broad propositions of law unsupported by authority or where authority is cited, Plaintiffs overstate the reach of the case.  As demonstrated below, the Court should reject Plaintiffs' arguments and grant the Defendants' Motion to Dismiss the Amended Complaint

## ARGUMENT

## II.    The Court Should Dismiss Plaintiffs' 1983 Claims.

### A.    Defendants Beander, Nix, and Reddrick are Entitled to Absolute Immunity For the Allegations Related to the Probable Cause Hearing.

Plaintiffs concede that that Defendants Beander, Nix, and Reddrick are not liable for alleged misconduct occurring at the probable cause hearing itself.  Opp'n [41] at 14; *see Rehberg v. Paulk*, 566 U.S. 356 (2012) (absolute immunity under §1983 applies to witnesses who testify before grand juries, just the same as trial witnesses).  Nevertheless, they assert that absolute immunity does not apply to these three individual defendants for their conduct related to the probable cause hearing because the Amended Complaint alleges "non prosecutorial" and "non-testimonial" acts as well as conspiracy to perform these acts.  Opp'n [41] at 14.  Thus, according to Plaintiffs, these three individual defendants should be denied absolute immunity for their conduct related to their conduct before the probable cause hearing and involving the "fabrication" of evidence.  *Id.*

1

In their opposition, Plaintiffs coyly speak in general terms and do not detail the form of the alleged fabrications.  But reviewing Plaintiffs' Amended Complaint, it is clear that the form of the alleged fabrications are testimonial in nature.  Am. Compl. [33] at ¶ 31.  According to Plaintiffs, Defendant Nix, as prosecutor, drafted the Petition for Removal which contained falsehoods and then "had" Defendant Reddrick swear to it.  *Id.*  In other words, Plaintiffs allege that Nix suborned the perjury found in the Reddrick affidavit, and Reddrick, in turn, agreed (*i.e.* conspired) with Nix to file the false affidavit.  These allegations do not remove the cloak of absolute immunity from Nix and Reddrick for related to the probable cause hearing.

First, Plaintiffs assert that absolute immunity cannot apply to Reddrick because she is a social worker and not a prosecutor.  This assertion simply ignores the law of this Circuit as cited in Defendants' Motion to Dismiss.  *See Gray v. Poole*, 275 F.3d 1113, 1117 (D.C. Cir. 2002) (*Gray II*) (social workers are entitled to absolute immunity as to their testimony in a neglect proceeding).  Contrary to Plaintiffs' argument, it does not matter, for purposes of Reddrick's entitlement to absolute immunity, that her testimony was in the form of sworn affidavit as opposed to live testimony.  *Id.*[1]

Second, contrary to Plaintiffs' argument, Defendant Nix's immunity—as a prosecutor— is not limited to what she said and did during the hearing itself.  *See Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (rejecting the "extreme position" that prosecutorial immunity "extends only to the act of initiation itself and to conduct occurring in the courtroom").  Instead, it extends to anything she does in her "role as advocate for the State."  *Id.*  The Supreme Court has "noted in

---

[1]  Plaintiffs rely on *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017) for the proposition that a perjured affidavit by a social worker cannot be protected by absolute immunity.  Unfortunately for Plaintiffs, that case is the law of a circuit other than the D.C Circuit and cannot be followed by this Court because it is in conflict with *Gray II*, a D.C. Circuit case.  *See Hopkins v. Price Waterhouse*, 920 F.2d 967, 975 (D.C. Cir. 1990) ("trial court is bound by the law of the circuit").

particular that an out-of-court effort to control the presentation of a witness' testimony [is] entitled to absolute immunity because it [is] fairly within the prosecutor's function as an advocate." *Id.* at 272-73 (internal quotation marks and alterations omitted).  This squarely covers allegations regarding a prosecutor's subornation of perjury, as many courts have held.  *See, e.g.*, *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (immunity protects prosecutor for "allegedly conspiring to present false evidence at a criminal trial"); *Manning v. Miller*, 355 F.3d 1028, 1032 (7th Cir. 2004) ("[B]oth a witness and a prosecutor are immune from civil liability when they 'conspire' together to commit perjury—that is, when the prosecutor knows a witness will lie on the stand.").

Moreover, Plaintiffs argue that Nix undertook a pre-hearing investigation and that, during that investigation, she "fabricated" certain "claims."  Opp'n [41] at 16 ("Plaintiffs contend it was during this investigation that Defendant Nix conspired with the Defendants to fabricate evidence.").  What Plaintiffs do *not* allege is that Defendant Nix fabricated *evidence* other than testimonial evidence.  Thus, what they are really attacking is Defendant Nix's representations in the affidavit submitted to the Court.  That distinguishes this case from *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), upon which Plaintiffs rely.  In *Buckley*, the prosecutors caused the creation of false evidence by soliciting a forensic report from an "expert" who they allegedly knew was a total fraud.  *Id.* at 262-63.  Plaintiffs here do not allege that Nix caused the creation of any false evidence—just that she "fabricated" the "claims" that were asserted at the hearing.  *See also Lisker v. City of Los Angeles*, 780 F.3d 1237, 1242 (9th Cir. 2015) (Court distinguishes conspiracies to testify falsely from "non-testimonial" acts, such as "tampering with documentary or physical evidence or preventing witnesses from coming forward").

Another way Plaintiffs' immunity theory fails is to suppose that Defendant Nix *did* decide during the investigatory phase that she was going to misrepresent the facts in the affidavit submitted to the Court.  Even if we assume that there is no absolute immunity for this decision, it did not in any way violate Plaintiffs' constitutional rights, such that they are entitled to damages.  Nix's mere *decision* to make misrepresentations *in the future* did not harm Plaintiffs in any way.  *Cf. Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) ("[I]f an officer (or investigating prosecutor) fabricates evidence and puts that fabricated evidence in a drawer, making no further use of it, then the officer has not violated due process; the action did not cause an infringement of anyone's liberty interest.").  The only thing that could have *harmed* Plaintiffs was what Defendant Nix said or did at the hearing and she unequivocally has immunity for that. As Justice Scalia's concurrence in *Buckley* stated:

> [M]any claims directed at prosecutors, of the sort that are based on acts not plainly covered by the conventional malicious-prosecution and defamation privileges, are probably not actionable under § 1983, and so may be dismissed at the pleading stage without regard to immunity . . .  I think petitioner's false evidence claims in the present case illustrate this point. Insofar as they are based on respondents' supposed knowing *use* of fabricated evidence before the grand jury and at trial—acts which might state a claim for denial of due process—the traditional defamation immunity provides complete protection from suit under § 1983. If reframed to attack the preparation of that evidence, the claims are unlikely to be cognizable under § 1983, since petitioner cites, and I am aware of, no authority for the proposition that the mere preparation of false evidence, as opposed to its use in a fashion that deprives someone of a fair trial or otherwise harms him, violates the Constitution.

509 U.S. at 281 (alterations and citations omitted).  Similarly, Defendant Nix's alleged decision during her investigation to subsequently misrepresent the facts in court:  even assuming it is not covered by immunity, simply did not violate the Constitution.  Only the actual in-court misrepresentation could have violated the Constitution, and that is covered by absolute immunity.

4

Finally, Plaintiffs' opposition, like their Amended Complaint, fails to identify any specific acts by Defendant Beander that could be deemed non-prosecutorial or non-testimonial other than the conclusory statement that she fabricated evidence and conspired to fabricate evidence.  Opp'n [41] at 14.  Given that Plaintiffs fail to allege any facts that link her to an alleged fabrication of evidence, Defendant Beander is entitled to dismissal of any claim related to the probable cause hearing on that basis alone.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) ("[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks and citation omitted).[2]

### B.    Issue Preclusion Defeats Plaintiffs' Claims.

Plaintiffs make three arguments as to why issue preclusion is inapplicable in this case: (1) the issues before this Court have never been litigated in any prior proceeding, (2) none of the Defendants were parties to the neglect proceeding, and (3) Plaintiffs never possessed a full and fair opportunity to litigate the issues before the Family Court.  Opp'n [41] at 10-12.  These arguments all fail.

In arguing that the issues before the Court have never been litigated in any prior proceeding, Plaintiffs conflate the principles of claims preclusion and issue preclusion.  Claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'"  *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine,* 532 U.S. 742, 748, (2001)).  In contrast, issue preclusion which was "once known as 'collateral estoppel' and 'direct estoppel,' " bars "successive

---

[2]    Even if Defendants Nix and Reddrick's conduct in preparing the affidavit submitted to the court could be imputed to Defendant Beander, she, of course, would also be entitled to absolute immunity under the same analysis applicable to her two co-defendants.

5

litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Id.* at 892, n.5 (internal citations and quotation marks omitted); *see also Hurd v. District of Columbia*, 864 F.3d 671, 680 (D.C. Cir. 2017).

Here, as Plaintiffs note, "[t]he Amended Complaint raises seven *claims* against Defendants: 1) deprivations of constitutional rights, 2) negligence, 3) abuse of process, 4) intentional infliction of emotional distress, 5) negligent infliction of emotional distress, 6) negligent training, supervision, and retention, and 7) a claim for punitive damages." Opp'n [41] at 10 (emphasis added). In the Superior Court proceeding, the District brought a claim that Plaintiffs' child was neglected. In resolving that claim, the trial court was required to resolve the following issues which were upheld by the D.C. Court of Appeals. The Court upheld the finding that "that D.O.'s injuries could not be satisfactorily explained by appellants' story that D.O. slipped and fell out of [Plaintiff Ollar's] arms," and the subsequent inference that D.O. was neglected under D.C. Code § 16-2301(9)(A)(i). Ex. 1 at pp. 8-9.[3] The D.C. Court of Appeals also upheld the "findings and conclusion that appellants' failure to timely care for D.O.'s injuries rendered D.O. a neglected child under D.C. Code § 16-2301(9)(A)(ii)." Ex. 1 at p. 9. More broadly, the Court sustained the factual findings underpinning the trial court's credibility determinations, including that Plaintiffs "stopped providing information or answering Dr. Atkinson's questions" during the investigation and "that neither of the parents demonstrated appropriate care for D.O. at the time the injuries occurred." *Id*. at 7-8. The Court also determined that Plaintiffs' arguments challenging the propriety of the probable cause hearing "lack[ed] merit." *Id.* at 2 n.5. Plaintiffs, the Court noted, had the opportunity to take an

---

[3]     Exhibit 1 was previously provided to the Court at [13-2].

immediate interlocutory appeal of the probable cause finding, but failed to do so.  *Id.* (citing D.C. Code § 16-2328(a)).

Thus, except for Plaintiffs' claims that portions of the District's Abuse and Neglect statute are unconstitutional, the linchpin of Plaintiffs' claims involve the determination of issues raised by Plaintiffs that have previously litigated and lost in the Superior Court and the D.C. Court of Appeals.  Examples of issues raised in the Amended Complaint that were previously litigated include:

> 25.  Despite Plaintiffs' recorded complete cooperation, Defendants subsequently attempted to justify the seizure by falsely claiming that Plaintiffs were uncooperative with the District's investigation.

> 27.  At all times mentioned herein, the seizure of Plaintiffs' daughter lacked probable cause, exigent circumstances, and judicial authorization . . .

> 30.  In its place, District now alleged that the etiology of D.O.'s injuries was "not medically possible," otherwise known as the permissive inference of neglect, codified at D.C. Code § 16-2316(c).

> 31.  Defendant Nix drafted a Petition for the removal, which states, "[G]iven the fact that the parents' explanation of the cause of injuries was *not medically possible*, and they refused to provide any additional accidental account, *the cause of [D.O.'s] injuries is unknown*, and nonaccidental trauma cannot be ruled out."

> 34.  Despite lacking any medical record to support these representations and despite speaking with only two physicians, neither of whom stated that D.O.'s injuries were "not medically possible" or that Plaintiffs' account did not satisfactorily explain D.O.'s injuries, the District deliberately and knowingly represented the opposite.

> 37.  Based on the aforementioned, it is evident that Defendants conspired to fabricate evidence of "not medically possible" injuries.

> 43.  At the conclusion of the evidence, the District submitted proposed findings of fact and conclusions of law that falsely claimed that Defendant Atkinson testified that D.O.'s injuries were unexplained.

> 45.  After thoroughly investigating the issue for nine months, Plaintiffs filed their appellate brief and submitted that, *inter alia*, the Defendants use of fabricated evidence

and perjured testimony encroached on several due process issues, including notice, standing, jurisdiction, and fairness/prejudice.[4]

In short, the gravamen of the claims in Plaintiffs' Amended Complaint are based on the notion that the District Defendants (1) lacked sufficient grounds to suspect the neglect of their child; (2) lacked exigent circumstances to seize D.O. from their custody; (3) submitted false information at the probable cause hearing; (4) violated their due process rights during the trial; and (5) produced insufficient evidence at trial to establish neglect. The evidentiary arguments undergirding these claims have all been rejected by the Superior Court and D.C. Court of Appeals either expressly or implicitly, and principles of issue preclusion prevent Plaintiffs from relitigating them here. *See Donald v. Polk County,* 836 F.2d 376, 381-82 (7th Cir. 1988); *Cf. McClam v. Barry,* 697 F.2d 366, 370 (D.C. Cir. 1983), *overruled on other grounds, Brown v. U.S.,* 742 F.2d 1498 (D.C. Cir. 1984) (as to common law and constitutional law false arrest claims, "subsequent conviction establishes as a matter of law that the arrest was justified.").

Although Plaintiffs argue otherwise, the fact that the District Defendants were not parties to the prior action is irrelevant. The doctrine of issue preclusion may be used defensively to prevent a plaintiff from relitigating issues which the plaintiff lost previously against another party. *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 329 (1979); *Napoleon v. Heard,* 455 A.2d 901, 903 (D.C. 1983) (holding that a "conviction of second-degree murder triggered the application of collateral estoppel and prevent re-litigation of whether plaintiff committed a felonious homicide in his claim for life insurance proceeds); *Jackson v. District of Columbia*,

---

[4] Plaintiffs conceded in their original complaint that, before the trial, they filed a Motion to Dismiss the Petition in the neglect proceeding on the grounds that "Defendant Nix had omitted critical information regarding Defendant Atkinson's inconclusive findings regarding D.O.'s injuries. Plaintiffs argued that the Petition was incomplete, inaccurate, and misleading, and that D.C. Government deliberately, or with reckless disregard for the truth, omitted critical information from the Petition that would have likely resulted in a finding of no probable cause. Compl. ¶ 57. The motion was denied by the trial court and the decision was affirmed by the D.C. Court of Appeals. This determination further prevents Plaintiffs from claiming that their constitutional rights were violated during the probable cause hearing.

412 A.2d 948, 952-53 (D.C. 1980); *Scahill v. District of Columbia*, 271 F. Supp. 3d 216, 231 n.11 (D.D.C. 2017).

Plaintiffs claim that they lacked a "full and fair opportunity" to litigate the issues also misses the mark.  As noted above, Plaintiffs had the opportunity and full incentive to raise the issues related to the District Defendants' alleged misconduct and certainly did so.  Indeed, they raised the issues before the magistrate judge, associate judge, and the appellate court—and their arguments were rejected.

## C.   Defendants Beander, Nix, and Reddrick are Entitled to Qualified Immunity.

It bears repeating that the qualified immunity analysis has two prongs: (1) "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and (2) if so, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  The District Defendants submit that an application of these prongs to Plaintiffs' constitutional claims results in the conclusion that they are entitled to qualified immunity.

### 1.   Defendants' Beander and Reddrick's Commencement of an Investigation which Ultimately Resulted in Dr. Atkinson Ordering Medical Tests.

Plaintiffs argue that Defendants Beander and Reddrick violated their Fifth Amendment rights when they "ordered" investigatory testing of D.O. Opp'n [41], at 17, n.7.  Initially, it is important to note that the law has long recognized that "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *Parham v. J.R.*, 422 U.S. 584, 584-601 (1979).  As Justice Brennan noted in *Parham,* "[t]his principle is reflected in the variety of statutes and cases that authorize state intervention on behalf of neglected or abused children."  *Id.* at 631 (Brennan J. concurring in part and dissenting in part); *see also* John Alan Cohan, *Judicial Enforcement of Lifesaving Treatment for Unwilling Patients*, 39

9

Creighton L. Rev. 849, 864 (2006) (collecting cases where state overrides parental objection to medical treatment for minor children).

Here, to support liability against the District Defendants, Plaintiffs cite *Van Emrik v. Chemung County Dep't of Social Serv,* 911 F.2d 863 (2nd Cir. 1990) as being "particularly informative." However, this reliance is misplaced. *Van Emrik,* and its progeny recognize that x-rays may be taken without judicial approval or parental consent if medically indicated. *See id.* at 867; *Schwimmer v. Kaladijian*, 988 F. Supp. 631, 641 (S.D.N.Y. 1997); *Chayo v. Kaladijian*, 844 F. Supp. 163, 169 (S.D.N.Y. 1994). This line of cases correctly acknowledges that medical procedures can happen concurrent with a government investigation, while not being carried out *by* the government.

The facts in this matter are also unlike *Van Emrik,* where the *caseworker*, not a doctor, requested x-rays of a child's treated leg injury for the express purpose of identifying "other fractures that had gone undetected and had healed" and the child was about to be released to its parents' custody. *See Van Emrik*, 911 F.2d at 865. *Van Emrik* is dissimilar in the severity of injuries the children displayed, the profession of the individuals ordering the x-rays, and the purpose for ordering the x-rays.

A case that is more analogous comes from the same circuit as *Van Emrik* and explains why the court's holding is more limited than Plaintiffs insinuate. In *Chayo v. Kaladijian*, the court found warrantless x-rays constitutional where they were conducted by a doctor, following the warrantless seizure of children by social workers and without parental consent. *See Chayo v. Kaladijian*, 844 F. Supp. 163, 169 (S.D.N.Y. 1994). The court found the social workers acted reasonably because "two independent bases" existed for them to believe their actions were justified: the suspected child abuse report and the fact that the mother's explanation was inconsistent with the report. *Id.* at 166-68.

10

The parents argued there was no imminent danger to justify removal and examination of their children, however, the court reasoned that caseworkers need not believe the abuse is "ongoing," they "need only have been "presented with evidence" of abuse and have "reason to fear that danger is imminent." *Id*. at 169.  The court emphasized that "particularly the skull fracture, suggested that the children were in serious physical danger if the injuries were in fact the product of child abuse." *Id*. at 168.  Like in *Chayo*, the caseworkers here were presented with a child with serious skull injuries that conflicted with the explanation given by the parents. It was indeed reasonable for caseworkers to investigate and rule out child abuse without the consent of the parents.  While the D.C. Circuit has not established its own formula for whether exigent circumstances exist for testing, *see Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015), the *Chayo* decision indicates that the unexplained skull fractures sustained by D.O., coupled with plaintiff's refusal to cooperate, are sufficient for case workers to believe they acted reasonably.  *See Chayo*, 844 F. Supp. at 169.

The *Chayo* court also refused to find the medical exams were done at the behest of caseworkers, despite the social workers bringing the children to the hospital during an investigation and for the purpose of having a physician examine the child.  *Id*. at 167; *see also Schwimmer v. Kaladijian*, 988 F. Supp. at 641 (S.D.N.Y. 1997).  The court correctly recognized that not all medical tests ordered during an investigation, or as a result of caseworkers' actions, are for investigative purposes.  This is relevant because, in the case at hand, caseworkers played a far more diminutive role and can hardly be said to have acted unreasonably.  The District Defendants commenced an investigation into whether D.O had been neglected.  It was then within the discretion of Dr. Atkinson to order medical examinations.  Under this scenario, Defendants Beander and Reddrick could not have violated Plaintiffs' constitutional rights.  *See*

11

*Chayo*, 844 F. Supp. at 169; *Schwimmer v. Kaladijian*, 988 F. Supp. at 641; *Kottmyer v. Maas*, 436 F.3d 684, 691-92 (6th Cir. 2006); *J.C. v. District of Columbia*, 199 A.3d 192, 202, n. 9 (D.C. 2018) ("we see no constitutional concerns with the tests given to Jo.C. in light of Jo.C.'s age and concerns that her twin N.C. had just been diagnosed with shaken baby syndrome"); *see also D*.C. Code § 4-1301.08 (2012 Repl.) (CFSA investigator may conduct medical tests, such as radiological examinations and x-rays performed on child as part of investigation into child abuse and neglect).

Given the above discussion, Defendants Bender and Reddrick submit that they did not violate Plaintiffs' Fifth Amendment rights when they commenced an investigation that ultimately led to Dr. Atkinson's ordering of medical tests. But even if the Court holds the contrary, the District Defendants are nevertheless entitled to qualified immunity because it is not clearly established in the D.C. Circuit that they were required to obtain judicial authority before investigative tests could be commenced. To overcome the District Defendants' entitlement to qualified immunity, Plaintiffs are required to identify a controlling precedent or robust consensus of cases finding a constitutional violation under similar circumstances. *See District of Columbia v. Wesby*, 138 S.Ct. 577, 589-91 (2018). And they have not done so.

Plaintiffs overstate the reach of *Van Emrik* and conveniently fail to note that the defendant social workers were granted qualified immunity. *Id*. at 868. The Court initially observed the difficult situation social workers are put in: "If they err in interrupting parental custody, they may be accused of infringing the parents' constitutional rights. If they err in not removing the child, they risk injury to the child and may be accused of infringing the child's rights." *Id*. at 866. The Court went on to find that "the case law decided at the time these caseworkers acted to request the investigative x-rays had not clearly established a constitutional

right to the intervention of a judicial officer in the context of medical procedures in aid of child abuse investigations." *Id*. at 868.  For that reason, the Court concluded the social workers "did not take action of the sort that reasonable officials would have known at the time was unconstitutional." *Id*.  Consequently, the social workers were granted qualified immunity.

Plaintiffs greatly exaggerate as to their representation that "identical holdings exist in *many* circuits." Opp'n [41] at 10.  *Cf. Mann v. City of San Diego*, 907 F.3d 1154 (9th Cir. 2018);*Franz v. Lytle*, 997 F.2d 784 (10th Cir. 1993)."  *Mann,* however, was decided in 2018 and therefore could not have served to place the District Defendants in 2016—the time of the acts in this case—on notice of any proposition of law.  And, *Franz*, although decided in 1993, is inapposite to the issues here.  In *Franz*, a police officer inspected a child's vaginal area, conducted a warrantless search of the home, and requested warrantless medical examinations. *Franz*, 997 F.2d 784, 785-86.  The police officer in *Franz* argued he should be given the same "latitude to search" afforded to social workers under the "special needs" exception to the warrant requirement.  *Id.* at 787.  The Court held, however, that the special needs doctrine applies only to warrantless searches conducted for purposes other than traditional law enforcement.  *Id.*  The court emphasized that the police officer's primary focus was "the potential criminal culpability of [the child's] parents" while "a social worker's principal focus is the welfare of the child" even though "a criminal prosecution may emanate from the social worker's activity." *Id*. at 791. Consequently, the officer was denied qualified immunity.  *Franz*, therefore, is inapposite to the issues here related to whether the social workers violated Plaintiffs' constitutional rights and, if so, whether the District Defendants nonetheless are entitled to qualified immunity.

Ultimately, Defendants Beander and Reddrick are entitled to qualified immunity based on both prongs of the qualified immunity test.  They did not violate Plaintiffs' constitutional rights

when they initiated an investigation that led to testing by Dr. Atkinson.  And they were not on notice in 2016 that their commencement of an investigation, which ultimately resulted in a physician ordering medical tests, required parental consent or court approval.  Accordingly, they are entitled to qualified immunity as to the claims against them.

### 2.     The Seizure of Plaintiffs' Daughter.

Plaintiffs claim that Defendants Beander and Reddrick violated their Fourth Amendment rights when they seized their daughter without exigent circumstances or probable cause.  Opp'n [41] at 19-22.  Plaintiffs posit that "[t]he Fourth Amendment has long required exigent circumstance for the warrantless removal of a child from a location where there is a reasonable expectation of privacy like the home or a private hospital room.  *See Katz v. United States*, 389 U.S. 347, 351 (1967); *Doe v. District of Columbia*, 796 F.3d 96, 103 (D.C. Cir. 2015) . . ."  The District Defendants do not dispute that broad proposition of law.  Nevertheless, the Supreme Court has repeatedly admonished lower courts against defining clearly established law "at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff v. Rickard* 134 S. Ct. 2012, 2023 (2014) (quotations and citation omitted).

The determination of exigent circumstances is a mixed question of law and fact*.  See United States v. Reilly*, 224 F.3d 986, 991 (9th Cir. 2000).  The action is generally deemed reasonable when taken in reliance on a state statute and there was no violation of any clearly established constitutional or statutory right.  *See Caldwell v. LeFaver*, 928 F.2d 331, 334 (9th Cir. 1991).  Even if caseworkers act on a suspicion later proved to be unfounded, they enjoy qualified immunity if there was a reasonable basis for suspecting child abuse.  *See Hatch v. Dep't for Children, Youth, and Their Families*, 274 F.3d 12, 24 (1st Cir. 2001).

14

The D.C. Circuit has recognized that social workers may not seize children absent a pre-deprivation hearing or exigent circumstances.  *See Doe v. District of Columbia*, 796 F.3d 96, 104 (D.C. Cir. 2015).  Nevertheless, circuits disagree as to the formula used to decide whether exigent circumstances exist.  *See id*.; *Mabe v. San Bernardino Cnty, Dep't of Public Social Serv.,* 237 F.3d 1101, 1107-09 (9th Cir. 2001) (interpreting exigent circumstances as requiring imminent danger or future harm); *Gomes v. Wood*, 451 F.3d 1122, 1136-38 (10th Cir. 2006) (finding no liability when caseworker removed infant child without notice, hearing, or suspicion of imminent danger because "officers of reasonable competence could disagree" as to whether exigent circumstances existed).  The circuits' formulas vary from a showing of a reasonable suspicion of past abuse to a reasonable suspicion of imminent abuse, to a narrow requirement of emergency circumstances.  *See Doe*, 796 F.3d at 104 ("decisions of several circuits have used various formulations to determine whether exigent circumstances existed to justify such a seizure.")  The D.C. Circuit, however, has not established its own standard.  *Id*. at 105 ("We have not enunciated our own formulation and do not do so here because we do not reach the question whether exigent circumstances existed in this case.").

Plaintiffs rely on *Van Emrik v. Chemung County Dep't of Social Serv.,* 911 F.2d 863 (2nd Cir. 1990), in support of their argument that the District Defendants are not entitled to qualified immunity because exigent circumstances did not exist to support the seizure of the child.  But, *Van Emrik,* is from another circuit and is not controlling precedent.  Plaintiffs have the burden of identifying a *controlling precedent* or *robust consensus of cases* finding a constitutional violation under similar circumstances.  *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589-91 (2018).  Given the split of authority and lack of guidance from the D.C. Circuit in 2016, when this case arose, there was not established law in place that would have made it clear to Defendants

Beander and Reddrick that the child's serious injuries in tandem with the parents' failure to

cooperate in the neglect investigation, did not provide exigent circumstances for the removal.

Accordingly, Defendants Beander and Reddrick are entitled to qualified immunity. *See Doe*, 796

F.3d at 104 (granting qualified immunity to social worker who seized child suspected to be abuse

victim, because of uncertainty in law regarding exactly when an exigency exists); *see also J.C. v.*

*District of Columbia,* 199 A.3d 192, 201(D.C. 2018) (probable cause existed to place medical

hold on infant and place her in temporary shelter care given the serious allegations of child abuse

and unexplained injuries made by child abuse expert).

### 3.      The Alleged Fabrication of Evidence and Conspiracy to Fabricate Evidence.

Plaintiffs incorrectly posit that allegations involving the fabrication of testimonial

evidence before the hearing is actionable.  Opp'n [41] at 22-24.  But as the District Defendants

previously explained, the *decision* to make misrepresentations *in the future* did not harm

Plaintiffs in any way.  *Cf. Whitlock v. Brueggemann*, 682 F.3d 567, 582 (7th Cir. 2012) ("[I]f an

officer (or investigating prosecutor) fabricates evidence and puts that fabricated

evidence in a drawer, making no further use of it, then the officer has not violated due process;

the action did not cause an infringement of anyone's liberty interest.").  Plaintiffs implicitly do

not challenge this argument given their statement that "the Fifth Amended has long been

interpreted to prohibit the government's *use of fabricated evidence in proceedings* where the

constitutional rights of individuals are at stake."  *See, e.g.*, *Bank of Nova Scotia v. United States*,

487 U.S. 250 (1988)" (emphasis supplied).  Thus, Defendants Beander, Nix, and Reddrick are

entitled to qualified immunity as to this claim because the facts alleged do not establish a

constitutional violation.  *See Pearson*, 555 U.S. at 232.  (plaintiff must show that he was

deprived of a constitutional right).

**4.    The District Defendants Alleged Inclusion of Fabricated Evidence in the Neglect Proceeding.**

In their Motion to Dismiss Plaintiffs' Amended Complaint, the District Defendants posit that Dr. Atkinson's findings that the infant had sustained severe injuries (*i.e.*, bilateral skull fractures), the cause of which was not satisfactorily explained by the parents, provided ample evidence to establish probable cause to believe that D.O. had been neglected. Mot. to Dism. at 18-20.  Thus, given that Dr. Atkinson's findings alone support probable cause, the alleged tainted additional evidence cannot be found to have proximately caused the deprivation of a constitutional right.  *Cf. Franks v. Delaware,* 438 U.S. 154, 155-56 (1978) ("when material that is the subject of the alleged falsity is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause," the warrant will be deemed to have been properly issued); *see also United States v. Gamory*, 635 F.3d 480, 491 (11th Cir. 2011) (same).

It is noteworthy that Plaintiffs essentially ignore this argument.  Plaintiffs, without more, pejoratively label Defendants' argument as an "illogical" attempt to validate perjured testimony. Opp'n [41] at 9.  Rhetorical flourishes, however, unaccompanied by legal analysis do not advance Plaintiffs' Opposition.  Plaintiffs neither refute the argument that Dr. Atkinson's findings alone establish probable cause, nor do they address why the Court should not apply *Franks* to its analysis as to whether the alleged misrepresentations proximately caused injury to Plaintiffs.  In other words, Plaintiffs have not provided the Court, nor could they, with any reason to reject the Defendants' *Franks* argument. Thus, even should the Court deny the Defendants absolute immunity, in the alternative, Defendants Beander, Nix, and Reddrick are entitled to qualified immunity as to Plaintiffs' fabricated evidence claim.

### 5. Alleged Destruction of Evidence

Plaintiffs only claim against any of the individual defendants related to the destruction of evidence concerns the claim that Defendant Reddrick "destroyed her handwritten notes after she twice testified as to having reviewed the notes in preparation for her testimony." Amend. Compl. [33] ¶ 39. In attempting to point to "clearly established precedent" that would have placed Defendant Reddrick on notice that the destruction of her notes violated Plaintiffs' Fifth Amendment rights, Plaintiffs rely on *Greene v. McElroy*, 360 U.S. 474 (1959). In *Greene,* the Court held that a federal agency, without explicit authorization from either the President or Congress, was not empowered to deprive an employee of a government contractor of his position, in a proceeding in which he was not afforded safeguards of confrontation and cross-examination. *Id.* at 496. In other words, the employee was deprived of his position without any due process. Defendant Reddrick submits that this case in no way placed her on notice that the destruction of her notes violated Plaintiffs' Fifth Amendment rights in the present matter, especially in pursuing a neglect petition where Plaintiffs would not otherwise be authorized to view her notes. *See District of Columbia v. Wesby*, 138 S.Ct. 577, 589-91 (2018) (plaintiff has burden of identifying a controlling precedent or robust consensus of cases finding a constitutional violation under similar circumstances). As a result, Plaintiffs' opposition does not overcome Defendant Reddrick's entitlement to qualified immunity.

### D. Plaintiffs' Section 1983 Claims Against the District Fail.

In their Opposition, Plaintiffs submit that they have successfully pled three claims of municipal liability against the District. Although Plaintiffs pay short shrift to the requirements of *Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003), to establish their constitutional claim against the District, they simply ignore or misinterpret its dictates as demonstrated below.

18

1.    **The District's Custom and Policy to Violate Parents' Rights to Make**
Medical Decisions Regarding their Children.

Plaintiffs allege that that the District maintained an unconstitutional policy by its reliance

on the Child and Adolescent Protection Center ("CAPC") of Children's National Medical Center

(CNMC) to investigate medical issues involving child abuse without the consent of parents or a

judicial order.  Opp'n [41] at 28-29.  This is not an unconstitutional policy as demonstrated in the

previous discussion related to the first prong of qualified immunity for Defendants Beander and

Reddrick.  *See supra*  Section I.C.1.  The cases upon which Plaintiffs rely for an explicit

unconstitutional policy are treated in that section and need not be discussed again here with one

exception.

Plaintiffs contend that *Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016) held that it was

an unconstitutional intrusion for the state to have blood drawn without a warrant and thus further

placed the District and its employees on notice that intrusion into a child's person without a

warrant was unconstitutional.  This assertion is incorrect.  *Birchfield* involved a constitutional

violation during a criminal investigation dealing with drunk driving.  *Id*. at 2184.  Here, in

contrast, a social worker's principal focus is the welfare of the child, which provides the social

worker with greater latitude to undertake measures for the protection of the child.  *See Franz v.

Lytle*, 997 F.2d at 791.

2.    **The District's Alleged Custom and Policy to Violate Parents' Rights to
the Care, Custody, and Control of their Children.**

Plaintiffs argue that their Amended Complaint pleads sufficient facts to plausibly

establish that the District maintained a custom and policy to violate parents' rights to the care,

custody, and control of their children.  In so arguing, Plaintiffs rely upon the "acts of a

policymaker" prong of *Baker*.  Opp'n [41] at 12 ("This custom and policy is evident from the

19

actions of policy makers within CFSA and the District's Office of the Attorney General (hereinafter "OAG") to take unlawful action . . .").  In seeking to establish policymaker liability, Plaintiffs engage in a convoluted and speculative journey from the actions of Defendant Reddrick to an unsupportable conclusion that Attorney General Karl A. Racine violated their constitutional rights.

Plaintiffs' ill-fated attempt to link the Attorney General with a violation of their constitutional rights is as follows.

1.  Defendant Reddrick had a conversation with her superiors at CFSA regarding the removal of Plaintiffs' daughter.

2.  The justification provided by the superiors to Reddrick must have been legally insufficient.

3.  Given that the instruction from the superiors to Reddrick was legally insufficient it is "evident" that the superiors were operating pursuant to a custom and policy.

4.  "All" attorneys within OAG were provided a "removal notification" list by email.

5.  If "all" attorneys within OAG received the notification list, it follows that Attorney General Racine received the notification list and reviewed it.

6.  There were additional email communications between OAG and CFSA regarding D.O.s removal.

7.  This additional email communication must have related to whether the seizure of Plaintiffs' daughter was legal.

8.  Therefore, OAG attorneys must have provided guidance to CFSA that the continued seizure of D.O. did not deprive Plaintiffs of their constitutional rights.

9.  Therefore, Attorney General Racine must have received and reviewed copies of the guidance emails.

10  Therefore, Attorney General Racine either authorized the continued seizure of D.O. or failed to act when faced with actual or constructive knowledge that the continued seizure lacked a legally sufficient justification.

*See* Opp'n [41] at 30-32

The District submits that a more speculative and fanciful body of allegations and irrational conclusions can hardly be imagined.  As a result, Plaintiffs have failed to "raise a right to relief above the speculative level" to "nudge their claims across the line from conceivable to plausible[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007) (internal quotation marks and citation omitted).  The Court should therefore dismiss this claim against the District.

> **3.     The District's Alleged Custom and Policy to Violate Parents' Due Process Rights.**

To support this theory of municipal liability**,** Plaintiffs rely on their allegations of "fabrication of evidence, false swearing of the petition, perjury and the subornation of perjury at the probable cause hearing, and the destruction and withholding of evidence."  Opp'n [41] at 32-33.  Plaintiffs submit that the factual allegations related to this claim provides sufficient factual basis "to demonstrate that it was the custom and policy of the District to violate the Plaintiffs' Due Process rights."  This misconduct was committed allegedly by Defendants Beander, Nix, and Reddrick, except for the withholding of evidence, which apparently was allegedly committed by some unnamed person within OAG.  Thus, in essence, Plaintiffs improperly seek to hold the District liable for constitutional violations based upon respondeat superior liability.  *See* Amend. Compl. ¶¶ 50(a)-50(f) ("Defendant D.C. Government, acting by and through its actual and/or apparent agents, servants, and employees violated the Plaintiffs' right to. . .").  But it is black letter law that municipalities are not vicariously liable through *respondeat superior* for the constitutional torts of their employees.  *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691-95 (1978).

What is missing from the Amended Complaint are factual allegations that *prior* to the removal of D.O. from Plaintiffs' custody, the District was on notice of a series of constitutional violations by employees of CFSA or OAG that placed it on notice that further constitutional

violations were likely to occur and that remedial training was necessary.  This, of course, is the linchpin to a finding of municipal constitutional liability based upon a theory of deliberate indifference.  *See e.g.*, *Jones v. Horne*, 634 F.3d 588, 601 (D.C. Cir 2011).  Plaintiffs' argument that they have fulfilled their pleading obligations by pleading "concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists" as stated in *Page v. Mancuso*, 999 F. Supp. 2d 269, 284 (D.D.C. 2013) misses the mark.  Plaintiffs only allege constitutional violations as to themselves.  They fail to make the necessary factual allegations that could be deemed evidence of a "widespread" practice related to other individuals which, in turn, would demonstrate a custom or policy of deliberate indifference.  *See id.*  Consequently, Plaintiffs' municipal liability claim related to allegations of fabrication of evidence, false swearing of the petition, perjury and the subornation of perjury at the probable cause hearing, and the destruction and withholding of evidence should be dismissed.

## III.    The Court Should Dismiss Plaintiffs' Common Law Claims.

Plaintiffs initially address what they term the District Defendants' five "general arguments" related to the common law claims.[5]  As to issue preclusion and absolute immunity, Plaintiffs rely on arguments previously made related to their Section 1983 claims.  Plaintiffs then move on to address the sufficiency of their pleadings related to their common law claims.  None of the arguments advanced by Plaintiffs serve to defeat dismissal of their common law claims.

### A.    Sovereign Immunity

Plaintiffs, relying on language taken out of context in a CFSA manual, posit that placing a hold on D.O. was not discretionary because CFSA deems holds unlawful.  Opp'n [41] at 35.  The language of the page of the manual which Plaintiffs reference, taken as a whole,

---

[5]     Plaintiffs did not address the District Defendants' arguments that the Court should retain supplemental jurisdiction if the federal claims are dismissed.  This argument should, therefore, be treated as conceded.

demonstrates that the hold must be followed up by a petition to the Court for approval of the hold.  See attached manual excerpt, attached as Exhibit 2.

Plaintiffs argument that the statutory regulations related to removal of a child from the custody of its parents renders the act of seizure ministerial is also unavailing.  The District Defendants submit that the decision whether to remove a child from the custody of its parents is a quintessential discretionary act.  As the Fourth Circuit has noted in a related concept of qualified immunity:

> The discretionary judgment which was made in removing the . . . children was obviously not an easy one. It involved weighing professional opinions of child abuse against the obvious interests in maintaining the integrity of a household. Here the tug and pull of competing concerns is evident. Premature action by a social worker can disrupt the legitimate interest parents possess in raising and disciplining their children. On the other hand, a failure to act can leave a child defenseless in the face of physical abuse and brutality.

*White by White v. Chambliss* 112 F.3d 731, 736 (4th Cir. 1997).

Moreover, Defendant Nix's decisions about what evidence to present and how to present it at the probable cause hearing certainly are discretionary acts which are protected by sovereign immunity in addition to absolute immunity.  *See McCormick v. Board of County Com'rs of Shawnee County*, 35 P.3d 315, 828-29 (Kan. 2001) (prosecutor entitled to discretionary function immunity).

**B.     Public Duty Doctrine**

Plaintiffs correctly state that *Turner v. District of Columbia*, 532 A.2d 662, 667 (D.C. 1987) holds that the Prevention of Child Abuse and Neglect Act creates a special relationship between CFSA and children, after a report of child abuse or neglect is filed.  But that is precisely the point here.  The special relationship is between CFSA and the child, not the parent(s).  As a

23

result, the public duty doctrine bars Plaintiffs' common law claims for lack of a special

relationship with the District.[6]

### C.   <u>Negligence</u>

The District Defendants' motion mounted multiple legal arguments favoring dismissal of

the Amended Complaint, which addressed each of the multiple negligence claims asserted by

Plaintiffs.  Plaintiffs incorrectly appear to believe that because they pled the elements of

negligence—namely duty, breach of duty, and proximate cause—they need not address the legal

arguments advanced by Defendants for dismissal.  Opp'n [41] at 39-40.  Plaintiffs go so far as to

take the implausible position that "[e]ven if some of the Defendants' arguments bear merit,

Plaintiffs have alleged sufficient facts to support each element of a negligence count."  *Id.* at 40.

No case involving Rule 12(b)(6) jurisprudence supports such a radical position.  *See Browning v.*

*Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002) (A motion to dismiss under Fed. R. Civ. P. 12(b)(6)

"tests the legal sufficiency of a complaint.").  As a result, Plaintiffs simply failed to address the

District Defendants' arguments about their negligence claim.

Plaintiffs attempt to address Defendants' assertion that Plaintiffs' negligence per se claim

should be dismissed.  However, Plaintiffs' reliance on *In re Jam.J.*, 825 A.2d 902 (D.C. 2003) is

misplaced.  The case simply stands for the proposition that D.C. Code § 16–2316(b) provides for

certain due process protections for parents which must be observed.  *Id*. at 915.  It does not speak

to any of the three statutory provisions relied on by Plaintiffs for their negligence per se claim,

namely D.C. Code §§ 4-1301.07, 4-1301.09, and §16-2309.  Consequently, Plaintiffs have failed

---

[6]      Citing *Jeffries v. District of Columbia*, 917 F. Supp. 2d 10, 32 (D.D.C. 2013), Plaintiffs submit that the
public duty argument is inapplicable because Defendants were acting in their individual capacities.  The citation
provided by Plaintiff is a general discussion of the law related to the public duty doctrine and contains nothing
related to the notion that the public duty doctrine is inapplicable where government officials act in their individual
capacities.

to demonstrate that they are members of the class of individuals that the statutes upon which they rely seek to protect.  Thus, their negligence per se claim fails.  *See Civic v. Signature Collision Cent.* 221 A.3d 528, 530-31 (D.C. 2019) (negligence per-se inapplicable where plaintiff not member of class to be protected by statute).

      **D.**    **Abuse of Process**

Plaintiffs assert that their abuse of process claim should not be dismissed because the District Defendants sought to remove D.O. from Plaintiffs' care so that they could "continue to perform abusive and medically unnecessary testing on the Plaintiffs' daughter without Plaintiffs' interference," and "to force Plaintiffs' to stipulate to neglecting their daughter thereby foreclosing the possibility of future redress."  Opp'n [41] at 41.  Removing a child from a parents' custody to perform medical examinations and seeking to terminate a proceeding by requesting that the parent stipulate to neglect are all legitimate procedures within the statutory scheme.  "The fact that the [prosecutor] expected to realize some benefit by covering up her alleged wrongdoing simply points to an ulterior motive, not the kind of perversion of the judicial process that gives rise to a cause of action for abuse of process."  *Scott v. District of Columbia*, 101 F.3d 748, 755-56 (D.C. Cir 1996).  The Court should therefore dismiss Plaintiffs' abuse of process claim.

      **E.**    **Negligent and Intentional Infliction of Emotional Distress**

Plaintiffs' opposition states in conclusory terms that "Plaintiffs have alleged an independent action for negligent and intentional infliction of emotional distress, not intertwined with any of the causes of action for which a one-year period of limitations is specifically provided for in section 12-301."  Opp'n [41] at 41.  Plaintiffs, however, utterly fail to explain how their NIED or IIED claims are independent or not intertwined with torts having a one-year

statute of limitations.  The basis of Plaintiffs' NIED and IIED claims is that (1) the District wrongfully removed their child from their custody; and (2) neglect proceedings were wrongfully instituted and prosecuted.  These claims are intertwined with the torts of false imprisonment and/or malicious prosecution.  *See Rogers v. Johnson-Norman*, 466 F. Supp. 2d 162, 173 (D.D.C. 2006).  Plaintiffs also misapprehend the notion that a claim for malicious prosecution begins to run when the action terminates in Plaintiffs' favor.  It is not favorable termination in the instant case; it is favorable termination in the underlying neglect proceeding that triggers a malicious prosecution claim and Plaintiffs certainly cannot claim favorable termination of the neglect proceeding.  *See Joeckel v. Disabled Am. Veterans* v. 793 A.2d 1279, 1282 (D.C. 2002) (in a claim for malicious prosecution the lawsuit giving rise to the claim for malicious prosecution must have terminated in plaintiff's favor).

Further, Plaintiffs assert that the necessary relationship for purposes of intentional infliction of emotional distress was created when the District Defendants "singled out Plaintiffs from the general public when they undertook an investigation into the etiology of Plaintiffs' daughter's injuries."  Opp'n [41] at 43.  The District Defendants submit that the purpose of the neglect proceeding was to protect the well-being of D.O., who is not a plaintiff in this case.  If there was any "relationship" sufficient for purposes of negligent infliction of emotional distress, it was the relationship between the District Defendants and the infant, not any alleged "relationship" between the District Defendants and the parents.  When D.O. was removed from the custody of her parents, no relationship was created between Plaintiffs and the District Defendants that would rise to the level required by *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810-11 (D.C. 2011) (doctor/patient, therapist/patient and guardians/wards cited as

examples of type of "relationship" that could trigger a duty to avoid the negligent infliction of emotional distress).

Finally, Plaintiffs incorrectly contend that the harm they suffered can be distinguished from the harm that did not rise to the level of intentional infliction of emotional distress in *Doe v. District of Columbia*. 796 F.3d 96 (D.C. Cir 2015).  To not belabor the point, the District Defendants assert that the facts of the instant case cannot be significantly distinguished from the facts of Doe and therefore the intentional infliction of emotional distress claims should be dismissed.

     **F.**     **Negligent Training, Supervision, and Retention.**

As to negligent training, Plaintiffs essentially assert that because the three individual defendants allegedly committed breaches of various policies and guidelines, they must have been improperly trained.  Am. Compl. [33] ¶¶ 71-72.  Plaintiffs submit that "the Amended Complaint has denoted that, despite having direct knowledge of Defendants' misconduct, the District failed to provide any supervision of Defendants and its other employees, many of whom have either furthered Defendants' misconduct or engaged in new misconduct.  *Id*. at ¶¶ 38-40, 44, 46." Opp'n [41] at 44.  Moreover, Plaintiff asserts that the "the District has retained individuals whom it is aware engaged in malicious criminal behavior or violated the Bar's Rules of Professional Conduct.  *Id.*

What is missing from Plaintiffs' Amended Complaint, however, are factual allegations about the type of training or supervision that was required.  Nor do they allege any specific allegations to support a causal connection between the lack of training, supervision, or retention, and Plaintiffs' resulting injury.  *See Blair v. District of Columbia*, 190 A.3d 212, 229 (D.C. 2018); s*ee also Smith v. District of Columbia*, 674 F. Supp. 2d 209, 213 (D.D.C. 2009)

(dismissing claims where plaintiff failed to allege factual allegations supporting entitlement to relief).  As a result, the Court should dismiss Plaintiffs' negligent training, supervision, and retention claims against the District.

**IV.**    **Alternatively, the Court Should Enter Judgment for the District on Plaintiff's Common Law Claims.**

While Plaintiffs did not comply with the requirements of Fed. R. Civ. P. 56(c) (requiring a non-moving party to properly address another party's assertion of fact), it is important to note that Plaintiffs concede that the District received their 12-309 notice letter on January 24, 2017, and therefore "common law claims against the District for the unlawful removal and misconduct at the probable cause hearing (are) outside the six-month window."  Opp'n at 37.  However, Plaintiffs claim that "fact only places Plaintiffs' common law claims against the District for the unlawful removal and misconduct at the probable cause hearing outside the six-month window."  Opp'n [41] at 37.  They claim it does not include the District's liability for conduct occurring after July 24, 2016."  *Id.*  Plaintiffs' argument ignores the essence of their Amended Complaint:

> As a result of the finding of probable cause, the Court ordered Plaintiffs' Daughter into shelter care over an hour away from the Plaintiffs. The Court permitted Plaintiffs to have daily visits with their daughter over Defendant Nix's objection. Plaintiffs would make the hour- long drive each day to bring breast milk to her still breast-feeding daughter. The enormity of the pain, suffering, humiliation, inconvenience, emotional trauma, detrimental effect on D.O.'s health, and professional and financial drain on Plaintiffs cannot be understated. Due solely to the intentionally false representations of Defendants, Plaintiffs would not regain custody of their child until one year later. Moreover, Plaintiffs were forced to defend against a baseless allegation of neglect, incurring enormous legal expenses from retaining counsel and expert witnesses to refute those allegations.

Amend. Compl. ¶ 36.

In other words, through a continuing course of misconduct by the District and its employees that began on June 29, 2016, when D.O. was removed from their custody, Plaintiffs sustained damages resulting from separation from their child.  But the continuing tort theory does not apply to section 12-309 notice, because the six-month clock begins to run from the moment the plaintiff sustains the injury.  *See District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (1995) (citing *DeKine v. District of Columbia*, 422 A.2d 981, 985 (D.C. 1980)).

Although Plaintiffs claim the District Defendants pursued a course of conduct that caused that separation to continue, the injury (*i.e.* removal of the child from their custody) commenced on June 29, 2016.  All of Plaintiffs' alleged damages result from that injury and therefore the District is entitled to summary judgment as to all of Plaintiffs' common law claims for failure to satisfy the notice requirements of D.C. Code § 12-309.  *See Barnhardt v. District of Columbia*, 8 A.3d 1206, 1212 (D.C. 2010) ("six-month period [is] triggered upon the claimant's knowledge of the injury or damage itself, not its legal cause or consequence.").

Further, to excuse their non-compliance with their notice obligation, Plaintiffs assert that Defendant Reddrick's Investigation Summary, which they claim resulted from investigatory efforts by both CFSA and Metropolitan Police Department (MPD) employees, satisfied the "police report" exception to the notice requirement.  Opp'n [41] at 38.  This argument lacks merit.  For one, it is clear from the face of the document that it is a report of CFSA, not MPD, and thus cannot be relied upon for alternative notice under the statute.  *See* Investigation Summary, attached hereto as Ex. 3 (filed under seal)[7]; *see Campbell v. District of Columbia,* 568 A.2d 1076, 1078 (D.C. 1990) ("statutory exception to formal notice [within section 12–309] . . . is limited to police reports.").  Plaintiffs cite to no authority supporting their claim that the CFSA Investigation

---

[7] This exhibit has previously been provided to the Court.as an exhibit filed under seal to Defendants Reply in support of its Motion to Dismiss [25].

29

Summary may be deemed a police report for purposes of Section 12-309. It is important to recall that the notice requirements must be construed narrowly against claimants, even where a harsh result may occur, *Hill v. District of Columbia*, 345 A.2d 867, 869 (D.C. 1975); *see also District of Columbia v. Arnold & Porter*, 756 A.2d 427, 436 (D.C. 2000); *Campbell v. District of Columbia*, 568 A.2d 1076, 1078 (D.C. 1990) (§ 12-309 must be construed in favor of the sovereign, *i.e.* against the waiver of immunity). Thus, the Court lacks the discretion to construe the statute in the manner Plaintiffs suggest.

Alternatively, even if the report qualifies as an MPD report, it remains insufficient notice. The report details evidence of child neglect and that further action was appropriate. Nowhere does the report provide details that set forth a reasonable basis for anticipating legal action against the District for claims involving negligence, abuse of process, negligent training, or intentional infliction of emotional distress. Thus, Plaintiffs cannot use it as a substitute for formal notice of their claims to satisfy D.C. Code § 12-309. *See Patrick v. District of Columbia*, 126 F. Supp. 3d 132, 137-38 (D.D.C. 2015).

Finally, relying on *Barnhardt v. District of Columbia,* 8 A.3d 1206 (D.C. 2010), Plaintiffs argue that Section 12-309 does not bar their claims because they failed to furnish timely notice due to concealment and misrepresentations by District employees. Opp'n [41] at 38. Plaintiffs misconstrue *Barnhardt.* As the court noted, the concealment or misrepresentation must be such that the party was totally unaware that they had been injured as opposed to unawareness to the cause of the injury. *Id.* at 1210-11. Here, Plaintiffs clearly were aware that they were injured when their child was removed from their custody. Their claimed unawareness of the cause of their injury (*i.e.* alleged tortious conduct of District employees) is of no moment. *See id.*; *District of Columbia v. Ross*, 697 A.2d 14 (D.C.1997); *Cf. Brown v. District of Columbia,* 853

A.2d 733 2004 (*passim*) (holding that six-month period for medical malpractice claim runs from day that patient begins to suffer symptoms resulting from malpractice, not date of discovery of doctor's malpractice.).  In short, *Barnhardt* is not helpful to Plaintiffs' attempt to excuse their failure to comply with the mandatory notice requirements of D.C. Code § 12-309.

## CONCLUSION

For these reasons, the Court should grant the District Defendants' Motion to Dismiss. Alternatively, the Court should grant the District's Motion for Partial Summary Judgment and enter judgment in favor of the District on all of Plaintiffs' common law claims.

Date:  March 3, 2021                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

CHAD COPELAND
Deputy Attorney General
Civil Litigation Division

*/s/ Alicia M. Cullen*
ALICIA M. CULLEN [1015227]
Chief, Civil Litigation Division, Section III

*/s/ Robert A. DeBerardinis, Jr.*
ROBERT A. DEBERARDINIS, JR. [335976]
Senior Assistant Attorney General
MATTHEW R. BLECHER [1012957]
Assistant Attorney General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
Phone:  (202) 724-6642; (202) 442-9774
Email:  robert.deberardinis@dc.gov;
matthew.blecher@dc.gov
*Counsel for Defendants District of Columbia,
Brooke Beander, Lynsey Nix, and Chanelle
Reddrick*

31