UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

STEPHEN OLLAR, *et al.*,

    *Plaintiffs*,

  **v.**            Civil Action No. 19-1847 (FYP)

DISTRICT OF COLUMBIA, *et al.*,

    *Defendants*.

<u>**MEMORANDUM OPINION**</u>

On June 24, 2016, Plaintiffs Stephen Ollar and Miriam Berman brought their six-week-old daughter, D.O., to the emergency room of Sibley Memorial Hospital with serious head injuries.  The District of Columbia thereafter investigated Plaintiffs for child abuse, and ultimately removed D.O. from Plaintiffs' care, based on a finding of neglect by a D.C. Superior Court magistrate judge.  That finding was affirmed by an associate judge of the Superior Court and by the District of Columbia Court of Appeals.  Plaintiffs have nonetheless sued the District, as well as four individuals involved in the child-abuse investigation and the neglect proceeding, on the ground that the allegations of abuse and neglect were baseless.  Plaintiffs' Complaint, alleging myriad constitutional violations and common-law tort claims, accuses Defendants of fabricating a legal justification for the seizure of D.O., forcing Plaintiffs to defend against "a baseless neglect proceeding," and destroying and withholding evidence during the neglect proceeding.  *See generally* ECF No. 33 (Amended Complaint).  Before this Court are Defendants' Motions to Dismiss.  *See* ECF No. 36 (Atkinson Motion to Dismiss); ECF No. 39

1

(District Defendants' Motion to Dismiss).  Defendants argue, *inter alia*, that Plaintiffs' claims are barred by issue preclusion, absolute immunity, and statutory immunity.  For the reasons explained below, the Court agrees and will grant both Motions to Dismiss.

## BACKGROUND[1]

On June 24, 2016, Plaintiffs took their six-week-old daughter, D.O., to the emergency room at Sibley Memorial Hospital, after what they claimed was "an accidental fall in the home." *See* Am. Compl., ¶ 10.[2]  The emergency room physician determined that Plaintiffs' explanation of the injuries "did not line up with the significant injuries sustained by D.O.," and the hospital therefore reported the injuries to the District of Columbia Child and Family Services Agency ("CFSA").  *See* Am. Compl., ¶ 11; DCCA Op. at 3–4.  D.O. had "complex multiple skull fractures, sustained multifocal areas of hemorrhage, or bleeding to the brain, and . . . there were some suspected areas of contusions or bruising to the brain."  *See* DCCA Op. at 3; Am. Compl., ¶ 10.  D.O. also had a healing classical metaphyseal lesion (CML), or fracture, in her left arm. *See* DCCA Op. at 3.  D.O. was subsequently transferred to Children's National Medical Center ("CNMC") for treatment.  *See* Am. Compl., ¶ 10.  There, three physicians examined D.O.:  Dr. Xian Zhao, an emergency room physician; Dr. Eglal Shalaby-Rabin, a pediatric radiologist; and

---

[1]     In this matter, the Court takes judicial notice of the D.C. Court of Appeals decision affirming the Superior Court's judgment of neglect.  *See* ECF No. 13-2 (*In re D.O.*, No. 17-FS-444 (D.C. Court of Appeals, August 23, 2019) ("DCCA Op.")).  "In determining whether a complaint [may be dismissed pursuant to Rule 12(b)(6)], the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice."  *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).  A court may take judicial notice of public records from other proceedings.  *Covad Comms. Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005).
[2]     According to Plaintiffs, Ollar picked up D.O. from her bed after she started crying in the night.  *See* DCCA Op. at 2.  Ollar claimed that D.O. put her arms up and tilted her head back, which caused him to lose his grip.  *Id.* D.O. landed headfirst on the hardwood floor and started screaming.  Ollar did not look for injury, but instead laid D.O. down with Berman.  *Id.*  Several hours later, D.O. woke up crying, at which point Plaintiffs took her to the hospital.  *Id.*

Dr. Norell Atkinson, a physician from CNMC's Child and Adolescent Protection Clinic.  *Id.*,

¶¶ 12, 16–17; DCCA Op. at 3.  Each doctor observed significant injury, and Dr. Zhao concluded

that "there was a concern for non-accidental trauma."  *See* DCCA Op. at 3.

On June 25, 2016, CFSA assigned social worker Chanelle Reddrick to investigate

Plaintiffs for possible child abuse.  *See* Am. Compl., ¶ 11.  Child protection supervisor Brooke

Beander supervised Reddrick.  *Id.*, ¶¶ 7, 11.  Plaintiffs allege that Dr. Zhao told Reddrick that

D.O.'s fractures "can be ruled as normal," but Zhao nevertheless ordered a complete skeletal x-

ray survey of D.O. to look for "old injuries."  Am. Compl. ¶ 12.  According to Plaintiffs, the x-

rays proved that D.O. did not suffer from prior abuse, and Reddrick was notified of this.  *Id.*

Reddrick nevertheless referred the case for investigation by Dr. Atkinson, "a child abuse

pediatrician."  *Id.*, ¶ 16.  Plaintiffs contend that Dr. Atkinson did not identify herself as a child

abuse pediatrician when she interviewed them about D.O.'s condition, examined D.O., and

ordered a battery of painful tests for D.O. that Plaintiffs claim were "medically unnecessary."

*Id.*, ¶¶ 17–19.  When Plaintiffs learned that some of the tests were performed to further an

"investigation," they accused Dr. Atkinson of committing "a battery."  *Id.*, ¶ 22.  Dr. Atkinson,

Reddrick, and Beander then made the collective decision to "seize[]" D.O. from Plaintiffs' care

and to remove Plaintiffs from the hospital.  *Id.*, ¶¶ 24, 28.  Plaintiffs claim that in their absence,

Dr. Atkinson "continued to perform abusive, unlawful, and medically unnecessary procedures on

D.O.;" and that someone forged Berman's signature on a medical authorization for the

administration of an anesthetic.  *Id.*, ¶ 28.

On July 1, 2016, the District of Columbia filed a neglect petition on behalf of D.O.,

alleging that D.O. had been abused by her parents and that she had been "without proper parental

3

care." *Id.*, ¶ 31.[3]  The neglect petition was drafted by Assistant Attorney General ("AAG")

Linsey Nix, who was tasked with performing an "inquiry into the facts" and representing the

government in further proceedings. *Id.*, ¶¶ 30–31.  The petition stated, "[G]iven the fact that the

parents' explanation of the cause of injuries was *not medically possible*, and they refused to

provide any additional accidental account, *the cause of [D.O.'s] injuries is unknown*, and non-

accidental trauma cannot be ruled out." *Id.*, ¶ 31 (alterations and emphasis in original).  The next

day, a D.C. Superior Court judge held an initial hearing and found that there was probable cause

to believe that the allegations in the petition were true. *Id.*, ¶¶ 32, 35.  Plaintiffs allege that AAG

Nix made numerous false representations to support the court's finding of probable cause, and

that Beander testified falsely at the hearing. *Id.*, ¶¶ 32–34.  D.O. was discharged from the

hospital and placed in shelter care with a family friend pending trial. *Id.*, ¶ 36; DCCA Op. at 3.

Plaintiffs had to travel over an hour away for daily visits with D.O., which the court allowed

despite the District's objection. *See* Am. Compl., ¶ 36.  Plaintiffs allege that, due to the

"intentionally false representations of Defendants," Plaintiffs were "forced to defend against a

baseless allegation of neglect." *Id.*  Plaintiffs further contend that Defendants "conspired to

fabricate evidence" of injuries to D.O., *id.*, ¶ 37, and obstructed Plaintiffs' attempts to access

relevant evidence throughout the neglect proceeding, *id.*, ¶ 39.

On October 4, 2016, a magistrate judge commenced a fifteen-day trial on the District's

---

[3]        The neglect petition was filed under D.C. Code §§ 16-2301(9)(A)(i) and (ii).  D.C. Code § 16-
2301(9)(A)(i) provides that "[t]he term 'neglected child' means a child who has been abandoned or abused by his or
her parent, guardian, or custodian, or whose parent, guardian, or custodian has failed to make reasonable efforts to
prevent the infliction of abuse upon the child."  D.C. Code § 16-2301(9)(A)(i).  An inference of neglect may be
justified where a child sustains an injury while in the custody of his or her parent and no satisfactory explanation is
provided. *Id.* § 16-2316(c).  D.C. Code § 16-2301(9)(A)(ii) provides that "[t]he term 'neglected child' means a child
who is without proper parental care . . . necessary for his or her physical, mental, or emotional health, and the
deprivation is not due to lack of financial means of his or her parent, guardian, or custodian."  D.C. Code § 16-
2301(9)(A)(ii).

neglect petition.  *See* DCCA Op. at 4.[4]  The three doctors who had examined D.O. at CNMC testified as medical experts; each testified that D.O.'s injuries were inconsistent with Plaintiffs' explanation of what had happened to her.  *See* Am. Compl., ¶ 41; DCCA Op. at 4.  Dr. Zhao and Dr. Shalaby-Rana testified that "there was a concern for non-accidental trauma, and that [the injury to D.O.'s arm] was 'not believed to be due to [a] simple [] linear fall,'" as Plaintiffs claimed.  *See* DCCA Op. at 4.  Dr. Atkinson "testified to a reasonable degree of medical certainty that the fractures to D.O.'s skull were the result of significant blunt force trauma to the head." *Id.*[5]  Plaintiffs attempted to rebut the District's evidence with five expert witnesses of their own.  *See* Am. Compl., ¶ 42.  None of Plaintiffs' experts had examined D.O., but each of them testified that D.O.'s injuries matched Plaintiffs' description of what had occurred.  *Id.*; DCCA Op. at 4.

After weighing all the evidence, the magistrate judge found that D.O. was a neglected child because she had been abused, under D.C. Code § 16-2301(9)(A)(i), and because she had not been properly cared for, under D.C. Code § 16-2301(9)(A)(ii).  *See* DCCA Op. at 5.  The magistrate judge explained that her ruling "rose and fell on whether [Plaintiffs'] explanation was credited; however, she discredited [Plaintiffs'] testimony."  DCCA Op. at 5. The magistrate

---

[4]      Neither the magistrate judge's ruling, nor its subsequent affirmance by an associate judge of the D.C. Superior Court, are in the record.  The Court therefore relies on the summary of those proceedings set forth in the opinion of the D.C. Court of Appeals.
[5]      She further explained in her notes that:

> [D.O.] has widespread injury to her brain and skull that are out of proportion to the injuries that are observed in infants who free fall from short or moderate heights.  [D.O.] sustained significant impact trauma to her head . . . . Complicated falls can certainly introduce a greater component of force to the head, resulting in greater injury severity, however, this scenario has not been described.  The severity of [D.O.]'s head injuries make her presentation most concerning for non-accidental trauma.

*See* DCCA Op. at 4 (alterations in original).

judge determined that she could not believe any of Plaintiffs' experts because their testimony
relied solely on Ollar's account of what had happened.  *Id.*  She further noted that none of
Plaintiffs' experts were credentialed in child-abuse pediatrics; and that she found their opinions
"contradictory," "riddled with issues regarding each parent's credibility," and "scatter[ed], at
best."  DCCA Op. at 5 (alterations in original).  Accordingly, the magistrate judge found that
D.O.'s injuries were not "satisfactorily explained," which permitted the inference that D.O. had
been neglected by reason of abuse.  *See* D.C. Code § 16-2316(c) ("Where the petition alleges a
child is neglected by reason of abuse, evidence of illness or injury to a child who was in the
custody of his or her parent . . . for which the parent . . . can give no satisfactory explanation
shall be sufficient to justify an inference of neglect.").  The magistrate judge also made an
alternative finding of neglect due to improper care, based on evidence that D.O. had suffered
multiple severe injuries while in Plaintiffs' care, but Plaintiffs did not immediately seek medical
attention and could not provide a plausible explanation for their actions.  *See* DCCA Op. at 5.

     Plaintiffs appealed the judgment of neglect to an associate judge of the D.C. Superior
Court.  *See* D.C. R. FAM. DIV. Rule D(e) (describing the process for appealing a magistrate
judge's finding of neglect to an associate judge).  The associate judge affirmed the magistrate
judge's ruling, concluding that Plaintiffs did not provide a satisfactory explanation for D.O.'s
injuries, and that the magistrate judge did not abuse her discretion in discrediting Plaintiffs'
testimony.  *See* DCCA Op. at 5–6.  Plaintiffs then appealed to the D.C. Court of Appeals.  *See*
D.C. R. FAM. DIV. Rule D(f) ("An appeal to the District of Columbia Court of Appeals may be
made only after an associate judge of the Superior Court has reviewed the magistrate judge's
order or judgment pursuant to paragraph (e) of this rule.").  In their appellate brief, Plaintiffs

included claims that "the Defendants['] use of fabricated evidence and perjured testimony encroached on several due process issues, including notice, standing, jurisdiction, and fairness/prejudice." Am. Compl., ¶ 45. Plaintiffs "publicly argued before the D.C. Court of Appeals" that their constitutional rights were violated. *Id.*, ¶ 46.

On August 23, 2019, the D.C. Court of Appeals issued a memorandum opinion "affirm[ing] the magistrate judge's conclusions that D.O. was a neglected child under both D.C. Code §§ 16-2301(9)(A)(i) & (ii)." *See* DCCA Op. at 10. The court rejected all of Plaintiffs' claims on appeal, including their contentions that the magistrate judge had erred by (1) finding that D.O.'s injuries were unexplained; (2) discrediting Plaintiffs' testimony, as well as the testimony of their expert witnesses; and (3) finding D.O. neglected as a result of improper parental care. *Id.*

The Court of Appeals reviewed the magistrate judge's credibility findings for abuse of discretion and clear lack of evidentiary support. *See* DCCA Op. at 7 (citing *In re S.L.G.*, 110 A.3d 1275, 1285 (D.C. 2015)). In discrediting the testimony of Plaintiffs, the magistrate judge found the following evidence problematic or "questionable:" (1) "[Ollar] misrepresented himself as a criminal attorney twice during the initial investigation before explaining that he was actually a recent law school graduate who had not yet taken the bar exam[;]" (2) "[Ollar] testified that he could not bring himself to inform [Berman] of the fall that night, despite his first aid trauma training in the military, which included tending to the head injuries of others[;]" (3) "[Berman] did not ask [Ollar] any questions after learning about the fall" and "did not initially share with the daycare that D.O. hurt her head when they enrolled D.O. two months after the fall[;]" and (4) [Ollar and Berman] stopped providing information or answering Dr. Atkinson's questions, and

audio recorded an appointment with Dr. Atkinson without her knowledge or consent." *Id.* at 7.[6] Importantly, the magistrate judge also found that Dr. Atkinson's expert testimony refuted Plaintiffs' version of events:  Dr. Atkinson testified that D.O.'s injuries "were the result of significant blunt force trauma to the head," which was corroborated by her own post-examination notes. *Id.* at 8.  Moreover, Dr. Atkinson testified that "given the significant amount of injury to D.O.'s brain, the fact that [Berman] did not hear D.O.'s cry was concerning." *Id.*  The Court of Appeals upheld the magistrate judge's credibility determinations, which were "supported by the evidence and based on [the magistrate judge's] assessment of the witnesses' demeanor as they testified before her." *Id.* at 7.[7]

The Court of Appeals also determined that the magistrate judge's findings of neglect were supported by the evidence. *Id.* at 8–9.  The court held that "[t]he medical evidence and testimony of Dr. Atkinson provided sufficient evidence in the record for the magistrate judge to find that D.O.'s injuries could not be satisfactorily explained by [Plaintiffs'] story." *Id.* at 8.  Specifically,

> Dr. Atkinson testified that D.O.'s skull fractures were the result of blunt force trauma impact to the head, and that a simple household fall should not have resulted in the degree of injury sustained by D.O.  Dr. Zhao likewise testified that D.O.'s injuries presented a concern for non-accidental trauma.  Dr. Atkinson further testified, to a reasonable degree of medical certainty, that D.O.'s [arm injury] was the result of some type of "shearing" or "tractional force" applied to the limb, and that [Plaintiffs]

---

[6]    The foregoing facts also supported the magistrate judge's conclusion that neither parent appropriately cared for D.O. when she was injured, as they "seemed to put their needs ahead of D.O.'s."  DCCA Op. at 7–8 (cleaned up).

[7]    The court also rejected Plaintiffs' contention that "the trial court erroneously found that [Plaintiffs'] lack of credibility tainted all of their expert witnesses' testimony."  DCCA Op. at 8.  In her written findings, the magistrate judge explained that Plaintiffs' evidence did not sufficiently rebut the District's evidence in part because Plaintiffs' "experts' testimony contradicted each other."  *Id.*  The magistrate judge provided several examples, and the Court of Appeals concluded that she had "heard both sides' experts and credited the District's expert," which was a "well-reasoned" choice that the court would not "second guess."  *Id.* (citing *Joyner v. Estate of Johnson*, 36 A.3d 851, 859 (D.C. 2012)).

> did not provide an explanation for this injury.  Dr. Shalaby-Rana similarly
> testified that [the arm injury] could not result from a simple linear fall as
> described by [Plaintiffs].

*Id.* at 8–9.  Based on its review of the evidence, the Court of Appeals upheld the magistrate

judge's finding that Plaintiffs "provided no satisfactory explanation for D.O.'s injuries," which

supported the permissible inference that D.O. was a neglected child under D.C. Code § 16-

2301(9)(A)(i).  *Id.* at 9.

      The Court of Appeals also affirmed the magistrate judge's alternative ruling that

Plaintiffs' "failure to timely care for D.O.'s injuries rendered D.O. a neglected child under D.C.

Code § 16-2301(9)(A)(ii)."  *Id.*  The magistrate judge found that Plaintiffs did not provide

"appropriate care" for D.O. when she was injured, "noting, *inter alia,* that medical attention was

not sought immediately by [Ollar] who received medical training in the military, [Berman] 'was

not really concerned' after learning about the fall, and both parents stopped providing

information to Dr. Atkinson and recorded an appointment without her knowledge, which

'seemed to put their needs ahead of D.O.'s.'"  *Id.* at 9 (cleaned up).  The Court of Appeals

determined that those findings supported the magistrate judge's conclusion that "D.O. was

without proper care at the time of her injury."  *Id.*  The Court of Appeals therefore upheld the

alternative finding of neglect and rejected Plaintiffs' arguments that "there [was] no evidence in

the record that D.O. suffered any detriment" as a result of delayed medical care and that "D.O.

suffered no lasting impacts from the fall."  *Id.*

## PROCEDURAL HISTORY

      On June 22, 2017, Plaintiffs filed a complaint in the Civil Division of the D.C. Superior

Court against the CNMC and Drs. Zhao, Shalaby-Rana, and Atkinson.[8]  The complaint included

claims of medical battery/lack of informed consent and negligence against the doctors, and a

claim of vicarious liability against CNMC.  *See generally* Complaint Civil Case No. 17-4304.

All the claims were based on allegations that the doctors ordered or performed painful and

unnecessary medical tests on D.O. without informing Plaintiffs; and that they compromised the

privacy of D.O.'s medical records in violation of the Health Insurance Portability and

Accountability Act, 42 U.S.C. § 1320d-6.  *Id.* at 3–6.  Plaintiffs voluntarily dismissed the

Superior Court civil complaint on January 4, 2018.

On June 24, 2019, Plaintiffs filed the instant lawsuit against the District of Columbia,

CFSA social workers Reddrick and Beander, AAG Nix, and Dr. Atkinson.[9]  The Amended

Complaint alleges that Defendants violated Plaintiffs' Fourth and Fifth Amendment rights under

42 U.S.C. § 1983, *see* Am. Compl., ¶¶ 48–54; and that Defendants are liable for negligence, *id.*,

¶¶ 55–61; abuse of process, *id.*, ¶¶ 62–64; intentional and negligent infliction of emotional

distress, *id.*, ¶¶ 65–70; negligent training, supervision, and retention, *id.*, ¶¶ 71–73; and punitive

damages, *id.*, ¶ 74

Defendant Atkinson moved to dismiss Plaintiffs' Amended Complaint under both Rule

12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure on January 11, 2021.  *See*

Atkinson Mot.  The District of Columbia and its employees ("District Defendants") separately

moved for dismissal under Rule 12(b)(6) on January 25, 2021.  *See* Defs. Mot.  All the

---

[8]      The Court takes judicial notice of the complaint filed in the Superior Court case.  *See* ECF No. 36-4
(Complaint in Civil Case No. 17-4304, filed on June 22, 2017).  "In determining whether a complaint [may be
dismissed pursuant to Rule 12(b)(6)], the court may consider . . . matters of which it may take judicial
notice."  *Stewart*, 471 F.3d at 173.  A court may take judicial notice of public records from other proceedings.
*Covad Comms. Co.*, 407 F.3d at 1222.
[9]      Plaintiffs filed an Amended Complaint on November 28, 2020.

Defendants argue that Plaintiffs' claims are barred by the doctrine of issue preclusion. *See* Atkinson Mot. at 7–10; Defs. Mot. at 15–18, 29–31. The individual District Defendants also contend that they have absolute immunity from liability based on common-law immunity principles, *see* Defs. Mot at 12–14; while Dr. Atkinson asserts that she may claim statutory immunity as a mandatory reporter of child abuse, *see* Atkinson Mot. at 10–13.[10]

## LEGAL STANDARD

### I.    Subject-Matter Jurisdiction

Issue preclusion is jurisdictional and properly analyzed under Federal Rule of Civil Procedure 12(b)(1). *See Stanton v. Dist. of Columbia Ct. of Appeals,* 127 F.3d 72, 77 (D.C. Cir. 1997).[11] When a defendant brings a motion to dismiss under Rule 12(b)(1), the plaintiff must demonstrate by a preponderance of the evidence that the court has subject-matter jurisdiction to hear his claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *U.S. Ecology, Inc. v. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000). "Because subject-matter jurisdiction focuses on the court's power to hear the plaintiff's claim, a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (citation omitted). As a result, "the plaintiff's factual allegations in the complaint will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13–14 (cleaned up).

---

[10]    Defendants also assert that Plaintiffs fail to state claims of negligence, abuse of process, intentional and negligent infliction of emotional distress, and punitive damages. *See* Atkinson Mot. at 22–31; Defs. Mot. at 35–43, 46–50. Because Plaintiffs' suit is clearly barred under the doctrines of issue preclusion, absolute immunity, and statutory immunity, the Court need not address those alternative arguments.

[11]    District Defendants bring all claims in their Motion to Dismiss under Rule 12(b)(6). *See* Defs. Mot. at 10. Because issue preclusion is jurisdictional, *see Stanton,* 127 F.3d at 77, and properly falls under Rule 12(b)(1), this Court will analyze all issue preclusion claims under Rule 12(b)(1).

In policing its jurisdictional bounds, the court must scrutinize the complaint, treating its factual allegations as true and granting the plaintiff the benefit of all reasonable inferences that can be derived from the alleged facts. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). The court, however, need not rely "on the complaint standing alone," as it may also look to undisputed facts in the record or resolve disputed ones. *Herbert v. Nat'l Acad. of Sci.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (citations omitted). By considering documents outside the pleadings on a Rule 12(b)(1) motion, a court does not convert the motion into one for summary judgment, as "the plain language of Rule 12(b) permits *only* a 12(b)(6) motion to be converted into a motion for summary judgment" when a court considers documents extraneous to the pleadings. *Haase v. Sessions*, 835 F.2d 902, 905 (D.C. Cir. 1987) (emphasis in original).

## II.     Failure to State a Claim

Immunity defenses, on the other hand, are evaluated under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Stoddard v. Wynn*, 168 F. Supp. 3d 124, 129 (D.D.C. 2016), *aff'd*, No. 16-cv-5182, 2017 WL 2332601 (D.C. Cir. Feb. 21, 2017); *Banneker Ventures, LLC v. Graham*, 225 F. Supp. 3d 1, 10 (D.D.C. 2016). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 552 (2007). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *id.* at 555, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*,

550 U.S. at 555–56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## ANALYSIS

The underlying premise of the instant lawsuit is Plaintiffs' contention that the child-abuse investigation and the petition for neglect related to D.O.'s injuries were baseless and malicious. Plaintiffs bring the instant case to "seek relief pursuant to 42 U.S.C. § 1983 and common law state tort claims . . . based on Defendants' unlawful, malicious, and willful physical abuse, seizure, and detention of Plaintiffs' six-week-old minor child and Defendants' subsequent conspiracy to conceal the unlawful conduct."  Am. Compl., ¶ 1.  According to Plaintiffs,

> Defendants directed medical personnel to perform medically unnecessary, painful, and unlawful tests on the Plaintiffs' six-week-old breastfeeding daughter without seeking the necessary judicial authorization.  When Plaintiffs sought to protect their daughter from the Defendants' abuse, Defendants retaliated by seizing Plaintiffs' daughter, fabricating a legal justification for the seizure, forcing Plaintiffs to defend against *a baseless neglect proceeding*, and destroying and withholding evidence.  As a direct and proximate result of Defendants' malfeasance, Plaintiffs incurred substantial economic losses, as well as severe and irreparable emotional harm and special injuries, for which they deserve to be compensated.

*Id.* (emphasis added); *see also id.*, ¶ 36 ("Plaintiffs were forced to defend against a baseless allegation of neglect.").  Plaintiffs assert that the conduct of Dr. Atkinson and the District Defendants in investigating and prosecuting D.O.'s child-neglect case violated Plaintiffs' Fourth and Fifth Amendment rights, *id.*, ¶¶ 48–54; and that Defendants' improper actions make them liable for negligence, *id.*, ¶¶ 55–61; abuse of process, *id.*, ¶¶ 62–64; intentional and negligent infliction of emotional distress, *id.*, ¶¶ 65–70; negligent training, supervision, and retention, *id.*, ¶¶ 71–73; and punitive damages, *id.*, ¶ 74.

Defendants launch a barrage of arguments attacking the viability of Plaintiffs' claims. *See generally* Defs. Mot.; Atkinson Mot.  At bottom, however, the problem with Plaintiffs'

13

theories of liability is their failure to account for the context in which Defendants operated: Defendants played their assigned roles within a statutorily authorized system that is designed to protect children by identifying and addressing abuse and neglect.  *See Stanley v. Illinois,* 405 U.S. 645, 650 (1972) ("[The government] [has a] right — indeed, duty — to protect minor children through a judicial determination of their interests in a neglect proceeding."); *In re A.H.*, 842 A.2d 674, 685 n.14 (D.C. 2004) ("[The government] has the right and duty to protect minor children through judicial determinations of their interest."); *Melton v. District of Columbia*, 85 F. Supp. 3d 183, 192 (D.D.C. 2015), *aff'd*, No. 15-7043, 2015 WL 9012019 (D.C. Cir. 2015) (explaining that, in a neglect proceeding, the government's "urgent interest in the welfare of the child" may overcome a parent's interest in the child's care (citing *Santosky v. Kramer*, 455 U.S. 745, 766 (1982))).[12]  Because the well-established procedures of the child-neglect system were followed here, with the active participation of Plaintiffs, and because that lawful process yielded judicial findings and rulings that clearly contradict Plaintiffs' present allegations, Plaintiffs' myriad claims are barred — both by the doctrine of issue preclusion, which forecloses relitigation of issues already determined by courts of competent jurisdiction; and by the absolute and statutory immunity enjoyed by government employees and professionals who take part in neglect proceedings.

## I.    Issue Preclusion

Plaintiffs' claims of governmental misconduct are predicated on allegations that the

---

[12]    Government intrusion into parent-child relationships is, presumptively, a last resort.  Parents have a strong due process right "to make decisions concerning the care, custody, and control of their children."  *Troxel v. Granville,* 530 U.S. 57, 66 (2000).  "[T]he constitutional presumption against state intervention exists," however, "only 'so long as a parent adequately cares for his or her children.'"  *Newby v. United States,* 797 A.2d 1233, 1244 (D.C. 2002) (quoting *Troxel,* 530 U.S. at 68); *see also Prince v. Massachusetts*, 321 U.S. 158, 167 (1944) ("[T]he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare.").

child-abuse investigation and the neglect proceeding were baseless, *see generally* Am. Compl.; but the charges of abuse and neglect were conclusively resolved in favor of the District in the proceedings before the Superior Court and the D.C. Court of Appeals, *see generally* DCCA Op. Plaintiffs may not relitigate the neglect action here.

Issue preclusion, also known as collateral estoppel, "generally confines plaintiffs to one bite at the litigation apple." *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 794 (D.C. Cir. 2019) (citing *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015)). The doctrine bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation and internal quotation marks omitted); *see also B&B Hardware, Inc.*, 575 U.S. at 147 (explaining that issue preclusion makes "the determination of a question directly involved in one action . . . conclusive as to that question in a second suit" (citation omitted)).

Specifically, issue preclusion bars successive litigation of an issue of fact or law when "(1) the issue is actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; and (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Capitol Servs. Mgmt., Inc.*, 933 F.3d at 794 (quoting *Walker v. FedEx Office & Print Servs., Inc.*, 123 A.3d 160, 164 (D.C. 2015)). Also precluded are arguments and issues that could have been raised in the prior proceeding. *Drake v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) ("[A] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were *or could have been* raised in that action." (quoting *Allen v. McCurry,* 449 U.S. 90, 94

(1980)) (emphasis in original)).

Here, the issue of whether Plaintiffs neglected D.O. unquestionably was litigated on the merits and resolved by a valid, final judgment of the Superior Court.  *See* Am. Compl., ¶¶ 41–43, 45–46; DCCA Op. at 5–6, 10.  As discussed, *supra*, the magistrate judge found that Plaintiffs neglected D.O. by reason of abuse and by failing to provide proper care, after conducting a fifteen-day trial on those issues.  *See* DCCA Op. at 4–5.  Plaintiffs had a full and fair opportunity to challenge the District's allegations of neglect before the magistrate judge; and they also twice appealed the findings of neglect — first to an associate judge of the Superior Court, and then to the D.C. Court of Appeals.  *See* DCCA Op. at 5–6; Am. Compl., ¶ 45.[13]  Thus, Plaintiffs may not attempt to prove in the instant action that the neglect charges were "baseless" because the issue has been "actually litigated" and a contrary determination was made.

Because all the claims enumerated in the Amended Complaint rely on the assumption that the child-abuse investigation and the neglect case were unfounded, the Amended Complaint must be dismissed.  Specifically, in Count I Plaintiffs allege violations of their Fourth and Fifth Amendment rights "to the care, custody and management of their child; . . . to be free from unreasonable searches and seizures; . . . to assert on their child's behalf her bodily integrity interests; . . . to have life, liberty, and the sanctity of the family protected by due process of law; . . . to the meaningful disclosure of evidence."  Am. Compl., ¶ 48.  Count II alleges that Defendants were negligent in the way that they conducted the child-neglect investigation.  *Id.*, ¶¶ 56, 58.  Count III alleges that Defendants "abuse[d] the District of Columbia's civil neglect

---

[13]     Plaintiffs' contention that they "never possessed a 'full and fair opportunity' to litigate the issues," *see* ECF No. 41 (Plaintiffs' Opposition), at 11–12, lacks merit.  Plaintiffs vigorously contested the government's allegations at every stage of the proceedings, from the probable cause hearing through the final appeal.  *See* Am. Compl., ¶¶ 32–35 (probable cause hearing); ¶¶ 41–42 (neglect trial); ¶¶ 45–46 (final appeal).

proceedings for a purpose other than that for which these processes were intended," including by filing a neglect petition "that lacked a legitimate legal basis for the . . . removal of [D.O.]." *Id.*, ¶¶ 62–63. Count IV alleges intentional infliction of emotional distress based on, *inter alia*, the "[u]nlawful[] seiz[ure] of Plaintiffs' daughter without a legitimate legal justification" and "[f]orcing Plaintiffs to defend against a baseless child neglect proceeding." *Id.*, ¶ 65. Count V alleges that Defendants, in investigating and prosecuting the neglect case, breached a duty to conduct themselves "reasonably[,] in a manner so as not to humiliate, embarrass, shock, scar, or frighten Plaintiffs, and to avoid any unreasonable or unnecessary infliction of emotional distress upon the Plaintiffs." *Id.*, ¶ 68. Count VI alleges that the District is liable for negligent training, supervision, and retention of the individual Defendants, based on allegations that the individual Defendants acted inappropriately during the child-neglect proceedings. *Id.*, ¶ 71. Finally, Count VII requests punitive damages based on the allegation that Defendants acted with "actual malice" in investigating and prosecuting the child-neglect case. *Id.*, ¶ 74. All the conduct underlying these claims was undertaken by Defendants in furtherance of the child-abuse investigation and the prosecution of the neglect petition.

Establishing Defendants' liability for each of Plaintiffs' claims would require re-litigation of the neglect case, which is plainly precluded. The Superior Court determined that the neglect charges were legitimate by finding that they were proved by a preponderance of the evidence. *See Matter of A.S.*, 643 A.2d 345, 347 (D.C. 1994) ("[I]n a child neglect proceeding, the government is required to prove its case by a preponderance of the evidence." (citations omitted)). Moreover, although the full record of the proceedings in the Superior Court and in the D.C. Court of Appeals is not before this Court, it appears that Plaintiffs raised their claims of

17

government misconduct and malice before both of those courts.  *See* Am. Compl., ¶ 44 (asserting that the Family Court reopened the neglect proceeding to compel production of documents requested by Plaintiffs to support their claims, but that the court subsequently ruled that it lacked jurisdiction to reopen the case); *id.*, ¶ 45 ("After thoroughly investigating the issue for nine months, Plaintiffs filed their appellate brief and submitted that, *inter alia*, the Defendants use of fabricated evidence and perjured testimony encroached on several due process issues, including notice, standing, jurisdiction, and fairness/prejudice."); *id.*, ¶ 46 (asserting that the Office of the Attorney General knew that "Plaintiffs' constitutional rights were violated," and that "[t]he issue was publicly argued before the D.C. Court of Appeals . . . .").  The judgment of neglect was nevertheless affirmed on appeal.[14]  Plaintiffs, therefore, had their chance to litigate the instant allegations and they may not do so again.[15]

Plaintiffs' arguments to the contrary are unavailing.  Plaintiffs first argue that the seven claims raised in their Amended Complaint have never been litigated.  *See* Pl. Opp. at 10–12.  In Plaintiffs' view, because "Defendants cannot cite any judicial determination" that Defendants did not commit the precise violations that Plaintiffs allege, "Defendants' issue preclusion argument simply fails on its face."  *Id.* at 11.  This argument reflects a misapprehension of the law of issue

---

[14]     This Court takes seriously the allegations of government misconduct in the Amended Complaint and acknowledges that government agencies and their employees are not always above judicial scrutiny, even when they act within the scope of their statutory obligations.  *See Mullenix v. Luna*, 577 U.S. 7, 11 (2015) ("The doctrine of qualified immunity[, for example,] shields officials from civil liability [only] so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009))).  But the procedural hurdles in this particular case are too great for Plaintiffs to overcome.

[15]     To the extent that the instant Amended Complaint contains additional allegations of government misconduct that were not raised in the prior proceeding, those claims also are precluded because Plaintiffs could have raised them in the neglect case.  *See Drake*, 291 F.3d at 66 ("[A] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were *or could have been* raised in that action." (citation omitted) (emphasis added)).

preclusion.  Issue preclusion bars "successive litigation of an issue of fact," *Taylor*, 553 U.S. at 892, regardless of whether a particular legal claim was previously asserted.[16]  Here, as discussed *supra*, the factual dispute central to all of Plaintiffs' claims is whether the Defendants had sufficient evidence to undertake the actions that they did.  *See* Am. Compl., ¶ 1.  Because the Superior Court unequivocally found that the neglect charges were supported by evidence, Plaintiffs may not proceed on claims that rely on a contrary view of the facts.

Plaintiffs also argue that "Defendants were clearly not a party to the neglect proceeding." Pl. Opp. at 11; *see also* Pl. Atkinson Opp. at 7 ("Defendant Atkinson was clearly not a party to the neglect proceeding.").  Although it is true that the neglect petition was filed by the District of Columbia, and the individual Defendants therefore were not parties, District of Columbia law "permits a defendant in an action to invoke collateral estoppel based on a prior determination rejecting a plaintiff's claim against other parties, even in the absence of privity." *Walker*, 123 A.3d at 164–65 (citing *Carr v. Rose,* 701 A.2d 1065, 1076 (D.C. 1997) ("[A] stranger to the first action may invoke issue preclusion against a party to that action."); and *Schoenfeld v. U.S. Resort Mgmt., Inc.,* No. 05-cv-4368, 2007 WL 2908622, at *3 (W.D. Mo. Oct. 4, 2007) ("[I]t is immaterial that [defendant] was not a party to the arbitration; the mutuality requirement was excised from the collateral estoppel doctrine long ago.")).  Thus, Defendants may rely on issue preclusion to argue for the dismissal of Plaintiffs' Amended Complaint.  Because the Court agrees with Defendants that Plaintiffs' underlying factual premise has already been determined by "a valid, final judgment on the merits," *see Capitol Servs. Mgmt., Inc.*, 933 F.3d at 794, the

---

[16]     By contrast, claim preclusion "forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).

Court will grant Defendants' Motions to Dismiss.

## II.   Immunity of Defendants

Even if Plaintiffs' claims were not foreclosed under the doctrine of issue preclusion, the individual Defendants in this case are protected by immunity doctrines.  Plaintiffs' allegations of misconduct challenge actions taken by Defendants during D.O.'s child-abuse investigation and neglect proceeding, namely:  "ordering and undertaking painful and medically unnecessary procedures" for D.O., "unlawfully seizing" D.O., and "including fabricated evidence in a child neglect petition and falsely swearing under oath that the facts and allegations contained within the petition were true to the best of their knowledge and belief."  Am. Compl., ¶ 50.  The individual District Defendants — including CFSA employees Reddrick and Beander, and AAG Nix — contend that they are entitled to absolute immunity for their actions taken in the context of a judicial proceeding.  *See* Defs. Mot. at 12–14, 31.  Defendant Atkinson, who examined D.O. and investigated suspected child abuse, argues that she is entitled to statutory immunity as a mandatory reporter.  *See* Atkinson Mot. at 10–13.  The Court agrees that the individual Defendants are immune from suit under the present circumstances.

### A.   Social Worker Chanelle Reddrick and Supervisor Brooke Beander

Plaintiffs' claims against Defendants Reddrick and Beander are premised on their official actions as CFSA employees, taken in the context of judicial proceedings.  Specifically, Plaintiffs allege that social worker Reddrick falsely signed an affidavit in support of the District's neglect petition and provided false testimony in support of the same, *see* Am. Compl., ¶¶ 31, 63(d) (alleging that Reddrick "present[ed] fabricated evidence" and "offer[ed] perjured testimony" at the probable cause hearing); and that Beander perjured herself at the probable cause hearing

when she testified that "every doctor [D.O. saw]" expressed suspicions of neglect, *id.*, ¶¶ 33–35.

Insofar as Reddrick and Beander took action in connection with the neglect proceedings by

submitting affidavits and testifying, they are "entitled to absolute immunity from suit for what

[they] said in the statement[s]." *Gray v. Poole,* 275 F.3d 1113, 1115 (D.C. Cir. 2002)

(citing *Imbler v. Pachtman,* 424 U.S. 409 (1976). The D.C. Circuit has held that when social

workers submit statements in connection with neglect proceedings, their work is "intimately

associated" with the judicial process and rightly considered testimony in that judicial proceeding,

*id.* at 1115; and government officials "are absolutely immune from damages liability based on

their testimony in judicial proceedings," *id.* at 1118 (quoting *Briscoe v. LaHue*, 460 U.S. 325,

328, 332–33 (1983)).[17] Because all of Plaintiffs' claims stem from actions taken during and in

connection with the neglect proceeding, Reddrick and Beander are immune from suit. *See* Am.

Compl., ¶¶ 50(c), (d), (e) (Fifth Amendment claims); 55–73 (common law claims).[18]

B.    Assistant Attorney General Lynsey Nix

Plaintiffs allege that AAG Nix, the attorney responsible for filing and prosecuting the

neglect petition on behalf of the District, drafted a false petition for removal of D.O and then had

---

[17]    Indeed, the Supreme Court has held that "the immunity of [any] trial witness sued under § 1983 is broad[]: In such a case, a trial witness has absolute immunity with respect to *any* claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) (citing *Briscoe*, 460 U.S. at 332–333) (emphasis in original).

[18]    Plaintiffs' arguments to the contrary are belied by their own Amended Complaint and by clear precedent. *See* Pl. Opp. at 14–15. Plaintiffs first argue that they have made no claim against Reddrick or Beander "premised on perjury or conspiracy to commit perjury" and therefore neither defendant is "entitled to absolute immunity." *Id.* at 14. The Court need look no further than the face of the Amended Complaint to dispose of this argument; Plaintiffs plainly allege claims against both CFSA employees of "presenting fabricated evidence" and "suborning and offering perjured testimony," Am. Compl., ¶ 63(d). Plaintiffs next argue that Reddrick cannot claim absolute immunity for falsely signing an affidavit in support of the neglect petition because that act was not "taken in the context of a judicial proceeding," and therefore cannot be construed as the type of prosecutorial or testimonial conduct that entitles government actors to absolute immunity. *See* Pl. Opp. at 14–15. It is telling that Plaintiffs cite to out-of-circuit precedent for this contention, as the D.C. Circuit has held unequivocally that when a social worker signs a statement in support of a child neglect action, "[she] function[s] . . . as a witness in a judicial proceeding" and is entitled to absolute immunity. *See Gray*, 275 F.3d at 1117.

Reddrick falsely swear to its accuracy. *See* Am. Compl., ¶ 31. According to Plaintiffs, Nix then made false representations to the Court during the probable cause hearing, which the court relied upon to find probable cause that D.O. had been neglected. *Id.*, ¶¶ 32–35. Based on these allegations, Plaintiffs claim that Nix violated their Fifth Amendment rights, *id.*, ¶¶ 50(c), (d), (e); and that she is liable for negligence, *id.*, ¶¶ 55–61; abuse of process, *id.*, ¶¶ 62–64; intentional infliction of emotional distress, *id.*, ¶ 65; and negligent infliction of emotional distress, *id.*, ¶¶ 67–69.

AAG Nix, however, is entitled to absolute immunity for her actions and statements during the neglect proceedings. Because "government attorneys who prosecute child neglect actions perform 'functions analogous to those of a prosecutor,'" they are "able to claim absolute immunity with respect to such acts." *Gray v. Poole,* 243 F.3d 572, 577 (D.C. Cir. 2001) (citing *Butz v. Economou,* 438 U.S. 478, 515 (1978)).[19] Because all of Plaintiffs' claims against Nix are based on her official actions as an Assistant Attorney General initiating and prosecuting a neglect case, *see* Am. Compl., ¶¶ 30–35, the Court must dismiss the claims against her. *See* Am. Compl., ¶¶ 50(c), (d), (e) (Fifth Amendment claims); 55–73 (common law claims).

C.   Child Abuse Pediatrician Norrell Atkinson

Dr. Atkinson, who examined D.O. at CNMC and later testified in the neglect proceedings, is also immune from liability, as a mandatory reporter of suspected child abuse or neglect. Pursuant to D.C. Code § 4-1321.02(a),

> [Every physician] who knows or has reasonable cause to suspect that a
> child known to him or her in his or her professional or official capacity

---

[19]   This immunity, moreover, extends to government attorneys for their conduct in *both* "initiating and prosecuting" civil child-neglect actions. *Gray*, 243 F.3d at 577. As a result, Plaintiffs' argument that Nix cannot claim absolute immunity for her pre-hearing "inquiry into the facts" of D.O.'s case is groundless. *See* Pl. Opp. at 15–16.

> has been or is in immediate danger of being a mentally or physically
> abused or neglected child . . . shall immediately report or have a report
> made of such knowledge or suspicion to either the Metropolitan Police
> Department of the District of Columbia or the Child and Family
> Services Agency.

*See* D.C. Code § 4-1321.02(a).  As a child abuse pediatrician, Atkinson is a mandatory reporter

under this provision:  When she had "reasonable cause to suspect" that D.O. had been neglected

by reason of abuse, she had an obligation make her report to CFSA.  *Id.*; *see also* DCCA Op. at 4

(describing Atkinson's notes after examining D.O., including her observation that "[D.O.] has

widespread injury to her brain and skull that are out of proportion to the injuries that are

observed in infants who free fall from short or moderate heights . . . mak[ing] her presentation

most concerning for non-accidental trauma").  Mandatory reporters like Atkinson are afforded

immunity from liability under D.C. Code § 4-1321.04, which provides:

> Any person . . . participating in good faith in the making of a report [of
> suspected child abuse or neglect] shall have immunity from liability,
> civil or criminal, that might otherwise be incurred or imposed with
> respect to the making of the report.  Any such participation shall have
> the same immunity with respect to participation in any judicial
> proceeding involving the report.  In all civil or criminal proceedings
> concerning the child or resulting from the report good faith shall be
> presumed unless rebutted.

*See* D.C. Code § 4-1321.04.  Plaintiffs fail to rebut the presumption of good faith that attaches to

Atkinson's actions.[20]  Atkinson therefore is immune from liability for her actions relating to the

---

[20]     Plaintiffs make a number of arguments that Atkinson is not entitled to statutory immunity, primarily
claiming that Dr. Atkinson is not a mandatory reporter and that she acted in bad faith.  *See* ECF No. 38 (Plaintiffs'
Atkinson Opposition), at 8–10.  As for Dr. Atkinson's status as a mandatory reporter, the language of the D.C. Code
is clear.  Contrary to Plaintiffs' contention that Dr. Atkinson had to be the first medical professional to suspect abuse
to qualify, the language of the provision states that *any* physician who has "reasonable cause to suspect" abuse or
neglect is obligated to report their suspicions and is afforded immunity.  *See* D.C. Code §§ 4-1321.02(a), 4-1321.04.
Moreover, although Plaintiffs insist that they "have more than rebutted any presumption that [Dr. Atkinson]
conducted herself in 'good faith,'" *see* Pl. Atkinson Opp. at 11–12, that claim is contradicted by the magistrate
judge's determination that Dr. Atkinson was credible, and the affirmance of that finding by both an associate judge
of the Superior Court and the D.C. Court of Appeals.  *See supra*.  The Court need not detail those holdings once

investigation of D.O.'s suspected abuse and her participation in the subsequent neglect proceedings.

## CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motions to Dismiss as to all counts.  A separate Order will issue this day.


_____
FLORENCE Y. PAN
United States District Judge

Date:   February 10, 2022

---

again to conclude that Plaintiffs are precluded from challenging Dr. Atkinson's credibility and good faith here because they already had the opportunity to do that in the neglect proceeding.  *See Drake*, 291 F.3d at 66 ("[A] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were *or could have been* raised in that action." (citation omitted) (emphasis added)).