## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

STEPHEN OLLAR, *et al.*,

     *Plaintiffs*,

**v.**

DISTRICT OF COLUMBIA, *et al.*,

     *Defendants*.

Civil Action No. 19-1847 (FYP)

## <u>MEMORANDUM OPINION</u>

Plaintiffs have moved for reconsideration, under Federal Rule of Civil Procedure 59(e), of the Court's Memorandum Opinion and Order granting Defendants' Motions to Dismiss.  *See* ECF No. 52 (Order dated February 10, 2022); ECF No. 53 (Mem. Op.); ECF No. 54 (Pls. Mot.). Because Plaintiffs have not identified any proper basis for the Court to alter or set aside its judgment, Plaintiffs' Motion for Reconsideration is denied.

## BACKGROUND

The District of Columbia has a robust statutory framework for protecting children from abuse and neglect.  When child abuse or neglect is suspected, the District of Columbia Child and Family Services Agency ("CFSA") is duty-bound to investigate the case and to take steps to protect the child.  *See* D.C. Code § 4-1301.07(a) ("In cases in which a child is alleged to be a neglected . . . child [CFSA] shall determine whether the child should be removed."); *id.* § 4-1301.09(a) ("A social investigation shall be commenced immediately by [CFSA] in all cases of an allegedly abused child."); *id.* § 4-1303.03(a)(1) (listing the duties of the Director of CFSA,

including to "investigate reports of abuse or neglect").[1]  Mandatory reporters, such as doctors,

who are confronted with evidence that a child has been abused or neglected are required to report

the suspected abuse or neglect to CFSA for investigation.  *See id.* § 4-1321.02 (requiring "every

physician" who knows or suspects that a child is in immediate danger of abuse or neglect to

"immediately report" the suspected abuse or neglect to CFSA).  The statute authorizes CFSA to

take a child into custody when the agency has "reasonable grounds to believe that the child is in

immediate danger from [her] surroundings and that the removal of the child from [her]

surroundings is necessary."  *See id.* § 16-2309(a)(3).

The District of Columbia must file a petition alleging neglect in the D.C. Superior Court

if CFSA determines that doing so is in the best interests of the child or the public.  *See id.* § 16-

2305(a).  The petition initiating judicial action must be verified; and it must be prepared by the

Office of the Attorney General "after an inquiry into the facts and a determination of the legal

basis for the petition."  *See id.* § 16-2305(b), (c).  Once a child is taken into custody, a hearing

must be commenced within 72 hours to determine whether the child should be placed in shelter

care.  *See id.* § 16-2312(a)(1)(B).  If the court determines that shelter care is required because

"continuation in the child's home would be contrary to the welfare of the child," the court must

then hear evidence presented by an Assistant Attorney General to determine whether there is

probable cause to believe that the allegations in the petition are true.  *See id.* §§ 16-

2312(d)(3)(B), (e).  The parent, guardian, or custodian is entitled to counsel at the hearing and

---

[1]     CFSA must complete its investigation "no more than 30 days after the receipt of the first notice of the
suspected abuse or neglect."  *See* D.C. Code § 4-1301.06(a).  The investigation must determine, *inter alia*:  (1) the
"nature, extent, and cause of the abuse or neglect;" (2) the "identity of the person responsible for the abuse or
neglect;" (3) the "name, age, sex, and condition of the abused or neglected child;" (4) the "conditions in the home at
the time of the alleged abuse or neglect;" (5) "[w]hether there is any child in the home whose health, safety, or
welfare is at risk;" and (6) "[w]hether any child who is at risk should be removed from the home."  *See id.* § 4-
1301.06(b).

may present evidence on the issues and be heard on their own behalf.  *See id.* §§ 16-2312(c), (e).
At the conclusion of the hearing, the judge must order shelter care, setting forth her reasons in
writing, if she finds that the shelter care is required to protect the person of the child.  *See id.* §§
16-2312(d)(1)(a), 2310(b)(1) (child may be placed in shelter care prior to a factfinding hearing or
a dispositional hearing if shelter care is required "to protect the person of the child").

 The court must conduct a fact-finding and dispositional hearing within 45 days to
determine, by a preponderance of the evidence, whether the child is neglected.  *See id.* § 16-
2316.01.  At the hearing, the Office of the Attorney General "present[s] evidence in support" of
the petition; all evidence that is "competent, material, and relevant" is admissible.  *See* D.C.
Code §§ 16-2316(a), (b).  When the petition alleges that a child is a neglected child by reason of
abuse, "evidence of illness or injury to a child who was in the custody of [her] parent, guardian,
or custodian for which the parent, guardian or custodian can give no satisfactory explanation
shall be sufficient to justify an inference of neglect."  *See id.* § 16-2316(c).  After the factfinding
hearing, the judge must make and file written findings as to the truth of the allegations in the
petition and whether the child is neglected.  *See id.* § 16-2317(b).[2]  Respondent parents,
guardians, or custodians are entitled to appeal a judgment of abuse or neglect to an associate

---

[2] If the judge finds by a preponderance of the evidence that the child is neglected, she must proceed to hold a
dispositional hearing to determine whether the child is in need of care.  *See id.* § 16-2317(c)(2).  Prior to the
dispositional hearing, the Director of Social Services or other qualified agency must file a predisposition study and
report, which must include, *inter alia*, the recommended type of placement for a child being removed from her
parents, the reasons why the child cannot be protected in her home, the likely harm resulting from separation, and
the plans for maintaining contact between the child and parents.  *See id.* §§ 16-2319(a), (c).  In her dispositional
order for a child adjudicated neglected, the judge must address the recommendations in the predisposition report and
must include a determination of whether "reasonable efforts" were made to prevent the need for removal and
whether "[c]ontinuation of the child in the child's home would be contrary to the welfare of the child."  *See id.*
§ 2320(f).  At the conclusion of the dispositional hearing, the judge may order any disposition that "is not prohibited
by law" and that it "deems to be in the best interests of the child."  *See* D.C. Code § 2320(a)(5).

judge of the Superior Court; and may further appeal the judgment to the D.C. Court of Appeals ("DCCA").  *See* D.C. R. Fam. Div. Rule D(e), (f).

In the instant case, the foregoing statutorily prescribed process was triggered when a doctor at Sibley Memorial Hospital examined Plaintiffs' infant daughter, D.O., and suspected child abuse.[3]  *See* ECF No. 13-2 (*In re D.O.*, No. 17-FS-444 (D.C. Court of Appeals, August 23, 2019) ("DCCA Op.")), at 2–3.  The doctor, a mandatory reporter, informed CFSA of the suspected abuse.  *See id.*; ECF No. 33 (Am. Compl.), ¶ 11.  After D.O. was transferred to Children's National Medical Center, CFSA assigned social worker Chanelle Reddrick to investigate Plaintiffs for possible child abuse; child protection supervisor Brooke Beander supervised Reddrick.  *See* DCCA Op. at 3; Am. Compl., ¶¶ 7, 11.  As part of that investigation, Reddrick asked child abuse pediatrician Norrell Atkinson to evaluate D.O., in connection with the CFSA investigation.  *See* DCCA Op. at 3, 7–9; Am. Compl., ¶ 16.  Over the course of two days, Dr. Atkinson interviewed Plaintiffs, physically examined D.O., and performed or ordered a number of tests, including a blood test and an MRI, to provide CFSA with "medical information and medical findings" for use in its "determination and investigation."  *See* Am. Compl., ¶¶ 16–19, 24.

On June 29, 2016, CFSA decided to remove D.O. from Plaintiffs' custody based on "the medical evidence" of abuse and Plaintiffs' "unwillingness to answer [] questions from investigators."  *See* DCCA Op. at 3; Am. Compl., ¶ 24.  The District of Columbia then filed a neglect petition on behalf of D.O.; and within 72 hours, on July 2, 2016, the D.C. Superior Court

---

[3]     Contrary to the decision of the D.C. Court of Appeals, the Amended Complaint indicates that it was a nurse, rather than a doctor, who suspected abuse and contacted CFSA.  *See* ECF No. 33 (Am. Compl.), ¶¶ 10–11. The Court need not resolve this discrepancy because the identity of this initial reporter is immaterial to the disposition of the case.

held an initial hearing to determine "if there was probable cause to believe the allegations in the petition were true."  *See* DCCA Op. at 3; Am. Compl., ¶¶ 30–32.  Assistant Attorney General Lynsey Nix drafted the petition and represented the District at the probable cause hearing, where she called social worker Beander to testify.  *See* Am. Compl., ¶¶ 30–33.  A D.C. Superior Court judge found probable cause to believe that D.O. had been neglected and ordered that D.O. be placed in shelter care.  *See* DCCA Op. at 3.

Pursuant to D.C. Code § 16-2316.01, a Superior Court magistrate judge then held a fifteen-day trial on the District's neglect petition.  *See id.* at 4.  During that trial, Plaintiffs hotly contested the evidence of abuse and neglect.  *See* DCCA Op. at 4–5; Am. Compl., ¶¶ 38–43. The magistrate judge found that Plaintiffs' lacked credibility and ruled that D.O. was a neglected child because she had been abused, under D.C. Code § 16-2301(9)(A)(i), and because she had not been properly cared for, under D.C. Code § 16-2301(9)(A)(ii).  *See* DCCA Op. at 5. Plaintiffs appealed to an Associate Judge of the D.C. Superior Court, who affirmed the judgment. *See id.*  Plaintiffs then appealed to the DCCA, again challenging the finding of neglect and raising claims of "fabricated evidence and perjured testimony."  *See* DCCA Op. at 7; Am. Compl., ¶ 45.  The DCCA affirmed.  *See* DCCA Op. at 10.

Despite the affirmance of the judgment of abuse and neglect by the DCCA, Plaintiffs brought a civil suit challenging the government's actions in prosecuting the abuse and neglect case.  Plaintiffs assert that the District of Columbia and four individuals involved in the neglect proceedings — Beander, Reddrick, Nix, and Atkinson — violated Plaintiffs' rights and committed various common law torts when investigating and litigating the case.  *See* Am. Compl., ¶¶ 48–54 (Fourth and Fifth Amendment rights under 42 U.S.C. § 1983); ¶¶ 55–61

(negligence); ¶¶ 62–64 (abuse of process); ¶¶ 65–70 (intentional and negligent infliction of

emotional distress ("IIED" and "NIED")); ¶¶ 71–73 (negligent training, supervision, and

retention); ¶ 74 (punitive damages).

On February 10, 2022, this Court issued an opinion granting Defendants' motions to

dismiss.  *See* Mem. Op. at 24.  The Court ruled as follows:

> Because the well-established procedures of the child-neglect system were
> followed here, with the active participation of Plaintiffs, and because that
> lawful process yielded judicial findings and rulings that clearly contradict
> Plaintiffs' present allegations, Plaintiffs' myriad claims are barred — both
> by the doctrine of issue preclusion, which forecloses relitigation of issues
> already determined by courts of competent jurisdiction; and by the absolute
> and statutory immunity enjoyed by government employees and
> professionals who take part in neglect proceedings.

*See id.* at 14.  With respect to issue preclusion, the Court explained that because "Plaintiffs'

claims of governmental misconduct [in the instant case] are predicated on allegations that the

child-abuse investigation and the neglect proceeding were baseless," Plaintiffs' claims were

precluded by the valid, final judgment of the Superior Court that Plaintiffs abused and neglected

D.O.  *See id.* at 14–19.  The Court further noted that "[e]ven if Plaintiffs' claims were not

foreclosed under the doctrine of issue preclusion, the individual Defendants in this case are

protected by immunity doctrines;" namely, that Defendants Nix, Reddrick, and Beander were

shielded by absolute immunity, and Defendant Atkinson by statutory immunity under D.C. Code

§ 4-1321.04.  *See id.* at 20–24.

On March 7, 2022, Plaintiffs filed their Motion for Reconsideration, asserting that the

Court "applied the incorrect standard of review" and "made a grievously inaccurate

generalization of the stated allegations in the Amended Complaint."  *See* Pls. Mot. at 1.[4]

---

[4]    All the Defendants oppose Plaintiffs' Motion:  Defendant Atkinson filed her Opposition on March 21,

**LEGAL STANDARD**

"Motions under Fed. R. Civ. P. 59(e) are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *See Niedermeier v. Office of Max S. Baucus,* 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing *Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998)). Specifically, "[a] Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996)).

"Rule 59(e) . . . 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *See Exxon Shipping Co. v. Baker,* 554 U.S. 471, 485 n.5 (2008) (quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2810.1 (2d ed. 1995)); *see also Estate of Gaither ex rel. Gaither v. Dist. of Columbia,* 771 F. Supp. 2d 5, 10 (D.D.C. 2011) ("In this Circuit, it is well-established that motions for reconsideration, whatever their procedural basis, cannot be used as an opportunity to reargue facts and theories upon which a court has already ruled, nor as a vehicle for presenting theories or arguments that could have been advanced earlier." (internal quotation marks and citations omitted)).

**ANALYSIS**

As the Court explained in its previous opinion, the flaw in Plaintiffs' Amended Complaint and other filings is their failure to acknowledge that the government's actions were

---

2022, *see* ECF No. 57, and the District of Columbia and its employees ("District Defendants") filed their Opposition on April 4, 2022, *see* ECF No. 59.

taken in the context of an official investigation of child abuse and the subsequent prosecution of two counts of child abuse and neglect.  In the course of those legal proceedings, a magistrate judge held that Plaintiffs abused and neglected their child, based on findings of fact and conclusions of law that were adverse to Plaintiffs.  The judgment of the trial court was affirmed by an associate judge of the D.C. Superior Court and by the DCCA.  Plaintiffs' claims in the instant suit cannot succeed absent re-litigation of issues already resolved in the neglect proceedings.  Because such re-litigation is precluded, the Amended Complaint must be dismissed.  Moreover, the defendants are immune from suit for actions that they took while performing their statutory duties during the neglect proceedings.  *See generally* Mem. Op.

## I.    Issue Preclusion

The factual allegations and claims in the Amended Complaint contradict the findings and conclusions of both the D.C. Superior Court and the DCCA.  Even though the precise legal claims that Plaintiffs now seek to bring were not previously addressed by the D.C. courts, the facts underlying the legal claims have been litigated.  As stated by Plaintiffs in their Motion for Reconsideration, the Amended Complaint

> alleges six acts by Defendants that deprived Plaintiffs of their clearly established federal Constitutional rights:  1) performing medically unnecessary and harmful tests on the Plaintiffs' daughter in violation of Plaintiffs' right to make medical decisions on her behalf, 2) unlawfully seizing the Plaintiffs' daughter, 3) fabricating evidence, 4) falsely swearing the petition, 5) perjury and the subornation of perjury at the probable cause hearing, and 6) destroying and withholding evidence.

*See* Pls. Mem. at 2–3 (citing Am. Compl., ¶¶ 50(a)–(f)).[5]

---

[5]      Plaintiffs combined their motion for reconsideration and memorandum in support into one document. Their memorandum can be found at pages 5–15 of ECF No. 54.

Issue preclusion, also known as collateral estoppel, "generally confines plaintiffs to one bite at the litigation apple." *See Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 794 (D.C. Cir. 2019) (citing *B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 147 (2015)). The doctrine bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008) (citation and internal quotation marks omitted); *see also B&B Hardware, Inc.*, 575 U.S. at 147 (explaining that issue preclusion makes "the determination of a question directly involved in one action . . . conclusive as to that question in a second suit" (citation omitted)).

Specifically, issue preclusion bars successive litigation of an issue of fact or law when "'(1) the issue is actually litigated; (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; and (4) under circumstances where the determination was essential to the judgment, and not merely dictum.'" *See Capitol Servs. Mgmt., Inc.*, 933 F.3d at 794 (quoting *Walker v. FedEx Office & Print Servs., Inc.*, 123 A.3d 160, 164 (D.C. 2015)). Also precluded are arguments and issues that could have been raised in the prior proceeding. *See Drake v. FAA*, 291 F.3d 59, 66 (D.C. Cir. 2002) ("[A] final judgment on the merits of an action precludes the parties . . . from relitigating issues that were *or could have been* raised in that action." (emphasis in original) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980))).

### A.    Act 1:  Performing Medically Unnecessary and Harmful Tests on D.O.

Plaintiffs assert that "Defendant Reddrick directed Defendant Atkinson to conduct the District's investigation under the false pretext of necessary medical treatment," which resulted in

Defendant Atkinson "harm[ing]" D.O. by ordering a series of unnecessary and painful medical tests including x-ray and MRI examinations, blood tests, and the administration of anesthesia. *See* Pls. Mem. at 2 (citing Am. Compl., ¶¶ 16, 18–21); *see also* Am. Compl., ¶ 50(a). According to Plaintiffs, those actions, taken without their "consent or judicial authorization after reasonable notice or opportunity to be heard," violated their Fifth Amendment "right to make medical decisions" on behalf of their daughter. *See* Am. Compl., ¶ 50.

As noted, however, the investigation of suspected child abuse by CFSA is authorized by statute. *See* D.C. Code §§ 4-1301.07, 4-1301.09, 4-1303.03. More specifically, CFSA's initial investigation in this case, which included the medical procedures cited by Plaintiffs, complied with statutory provisions. *See id.*; *see also* D.C. Code § 4-1301.08 ("As part of the investigation required by this part, any person responsible for the investigation may . . . have radiological examinations, including full skeletal x-rays, performed on the child."). The Superior Court's finding at the initial hearing that the evidence gleaned in the investigation supported a finding of probable cause that Plaintiffs abused and neglected D.O. further validated the actions Defendants took during the initial investigation. *See* DCCA Op. at 3.

The statutory framework for the government's actions is consistent with the Constitution. The Supreme Court has recognized that "a state is not without constitutional control over parental discretion in dealing with children when their physical or mental health is jeopardized." *See Parham v. J.R.*, 442 U.S. 584, 603 (1979) (first citing *Wisconsin v. Yoder*, 406 U.S. 205, 230 (1972); and then citing *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)); *see also Prince*, 321 U.S. at 167 ("[T]he state has a wide range of power for limiting parental freedom and authority in things affecting the child's welfare."). "[S]o long as a parent adequately cares for his or her

children (*i.e.*, is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *See Troxel v. Granville*, 530 U.S. 57, 68–69 (2000).  When, however, the state has probable cause to believe that a child is in imminent danger, a parent's constitutional rights do not prevent the state from investigating and acting to protect the child.  *See Doe v. Dist. of Columbia*, 796 F.3d 96, 103 (D.C. Cir. 2015); *see also J.C. v. Dist. of Columbia*, 199 A.3d 192, 200–02, 205 (D.C. 2018) (rejecting parent's Fourth and Fifth Amendment claims because District had probable cause to seize abused and neglected children).

Accordingly, Plaintiffs cannot prevail on any Fifth Amendment claim related to the medical tests performed on D.O. unless Plaintiffs demonstrate that CFSA did not have probable cause to believe that D.O. was in imminent danger when the agency commenced the child-abuse investigation.  Plaintiffs are unable to make that required showing because the Superior Court found at the initial hearing that there was, in fact, probable cause to believe that D.O. was neglected; and that her placement in shelter care was necessary to protect her person.  *See* DCCA Op. at 3.  D.O.'s skull was fractured, and doctors in the emergency room determined that the injury was not consistent with the accidental fall that Plaintiffs described to explain it.  *See id.* at 4–5.  The court's finding of probable cause and its decision to place D.O. in shelter care pending further proceedings rested on the conclusion that D.O. was in imminent danger.  *See J.C.*, 199 A.3d at 201; *Doe*, 796 F.3d at 103.  Thus, the principles of issue preclusion bar the very argument that Plaintiffs must make in order to pursue their constitutional claim.  *See Taylor*, 553 U.S. at 892 n.5 (explaining that issue preclusion bars "successive litigation of an issue of fact or

law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim") (cleaned up).[6]

### B.    Act 2:  Removing D.O. from Plaintiffs' Custody

According to Plaintiffs, the District and its officials violated their Fourth Amendment and Fifth Amendment rights when they seized D.O. from Plaintiffs' care and removed her from the hospital without exigent circumstances or judicial authorization.  *See* Am. Compl., ¶¶ 50(b), 51(b); Pls. Mem. at 2.  Plaintiffs' claims of negligence, *see* Am. Compl., ¶ 58(1)(d), abuse of process, *see id*., ¶ 63(1)(a), and emotional distress, *see id*., ¶¶ 65(1)(c)–(d), 69, also rely in part on the District's seizure of D.O.

Like the investigation itself, however, the statutorily authorized seizure of D.O. was within the constitutional bounds of the Fourth and Fifth Amendments.  *See J.C.,* 199 A.3d at 201. Under the Fourth Amendment, a warrant or a pre-removal hearing is not required when the government acts in response to an "exigency."  *See Doe*, 796 F.3d at 103 (first citing *Doe v. Kearney,* 329 F.3d 1286, 1293–95 & 1294 n.10 (11th Cir. 2003); then citing *Brokaw v. Mercer Cnty.,* 235 F.3d 1000, 1010–11 (7th Cir. 2000)).  To be sure, the Fifth Amendment does require that, before parents may be deprived of the custody "of their children without their consent, due process — ordinarily a court proceeding resulting in an order permitting removal — must be

---

[6]    Plaintiffs also allege that the administration of the tests caused them emotional distress.  *See* Am. Compl., ¶¶ 65(1)(a), (e), 69.  But Plaintiffs cannot succeed on such claims.  The DCCA's opinion established that there was probable cause to believe that D.O. had been abused and neglected.  Under those circumstances, the testing complained of does not constitute the kind of "extreme and outrageous conduct" necessary to plead an IIED claim. *See Kerrigan v. Britches of Georgetowne, Inc.*, 705 A.2d 624, 628 (D.C. 1997); *cf. Campbell v. Dist. of Columbia*, 245 F. Supp. 3d 78, 90 (D.D.C. 2017) (holding that police "officers' use of reasonable force in effectuating an arrest [supported by probable cause] does not constitute extreme and outrageous conduct and the distress suffered from a lawful arrest does not entitle [a plaintiff] to recovery.").  Moreover, Plaintiffs plainly fail to plead the elements of a NIED claim. *See Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 810–11 (D.C. 2011) (en banc) (explicating standard for NIED claim by plaintiff who was not physically endangered by defendant's actions).

accorded to them." *See id.* (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999)); *see also Stanley v. Illinois,* 405 U.S. 645, 649–51 (1972).  Nevertheless, "extraordinary situations where some valid governmental interest is at stake," such as the health and welfare of a child, may justify "postponing the hearing until after the event."  *See Smith v. Org. of Foster Families for Equal. & Reform,* 431 U.S. 816, 848 (1977) (quoting *Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 570 n.7 (1972)); *see also Doe*, 796 F.3d at 103 (noting that the state has a valid "interest in the health and welfare of its children" (citation omitted)).

Here, Plaintiffs brought D.O. to the emergency room with a fractured skull, and CFSA reasonably believed that the injury was evidence of child abuse.  *See* DCCA Op. at 2–3; Am. Compl., ¶¶ 10–11.  Exigent circumstances justified the immediate seizure of D.O., with the commencement of a court hearing to determine probable cause within 72 hours — as required by the statutory scheme.  *See* D.C. Code § 16-2309(b) (authorizing CFSA to seize a child when it has "reasonable grounds to believe that the child is in immediate danger"); *id.* § 16-2312(a)(i)(B), (f) (requiring a hearing within 72 hours of seizure where the government must show probable cause to believe child is abused or neglected).  The District was justified in not returning D.O. to the suspected perpetrators of her abuse.  *See* DCCA Op. at 3 (finding probable cause to believe D.O. was neglected and ordering her placement in shelter care).

Plaintiffs' legal claims under the Fourth and Fifth Amendments are based on allegations that "[d]espite Defendant Atkinson's investigation not revealing any evidence of abuse, Defendants Atkinson and Reddrick agreed to remove Plaintiffs from the hospital," *see* Am. Compl., ¶ 23, and that Defendants participated in this removal even "when faced with actual or constructive knowledge that the removal lacked probable cause, exigent circumstances, or

13

judicial authorization," *id.*, ¶ 29.  Such allegations are precluded where the Superior Court, at the initial hearing, determined that there was, in fact, sufficient evidence of abuse from the initial investigation to meet the probable-cause standard, and found that removal of D.O. from Plaintiffs' care was justified to protect D.O.  *See* DCCA Op. at 3.  Contrary to Plaintiff's contentions, "probable cause" was found, "exigent circumstances" were demonstrated, and "judicial authorization" was provided at the probable cause hearing.  *See* Am. Compl., ¶ 27; Pls. Mem. at 2, 4.

For similar reasons, Plaintiffs' barrage of tort claims must also fail.  As to Plaintiff's abuse of process claim, Plaintiffs must demonstrate the "use of the [child removal] process for an immediate purpose other than that for which it was designed and intended."  *See Doe*, 796 F.3d at 108 (quoting *Scott v. Dist. of Columbia*, 101 F.3d 748, 755 (D.C. Cir. 1996)).  "But something quite nearly the opposite is what occurred here.  The legal system was employed to safeguard [a child] who had been the victim[] of [abuse]."  *See id.*  Plaintiffs similarly cannot make out an IIED claim based on the lawful conduct of a CFSA investigation.  *See id.* ("The Does' allegations hardly rise to the level of atrocious and utterly intolerable behavior.").  Nor is the lawful removal of a child a negligent act that could give rise to a NIED or negligence claim.

### C.    Acts 3, 4, & 5:  Fabricating Evidence, Falsely Swearing the Petition, Perjury, and Subornation of Perjury at the Probable Cause Hearing

Plaintiffs allege that Defendant Nix, in her role as Assistant Attorney General, drafted a false petition for D.O.'s removal and "then had Defendant Reddrick," a CFSA social worker, falsely swear to its accuracy.  *See* Am. Compl., ¶ 31.  According to Plaintiffs, Nix then made false representations to the Superior Court during the probable cause hearing, and Defendant Beander, a supervisory social worker, gave perjured testimony, all resulting in the Superior

Court's finding of probable cause to believe that D.O. had been neglected.  *See id.*, ¶¶ 32–35.

Through these alleged actions, Defendants allegedly "violated the Plaintiffs' right to have life,

liberty, and the sanctity of the family protected by due process of law, by fabricating evidence,

and conspiring to fabricate evidence, that D.O.'s injuries were 'not medically possible' and that

Plaintiffs' account of an accidental fall did not satisfactorily explain D.O.'s injuries."  *See id.*, ¶¶

50(c)–(e).  The false-evidence allegations also bleed into Plaintiffs' tort claims.  *See id.*, ¶¶

58(1)(e)–(f) (negligence); *id.*, ¶¶ 63(2)(c)–(e) (abuse of process); *id.*, ¶¶ 65(1)(k), (m) (IIED); *id.*,

¶ 69 (NIED).

In the appeal of the judgment of neglect to the DCCA, Plaintiffs brought to the court's

attention "Defendants' use of fabricated evidence and perjured testimony" and the implications

of that on "several due process issues."  *See* Am. Comp., ¶ 45.  The DCCA rejected those

arguments.  *See* DCCA Op. at 2 n.5 (rejecting the "additional arguments" made by Plaintiffs

regarding due process issues at the probable cause hearing); *id.* (noting that Plaintiffs had the

opportunity to immediately appeal the probable cause finding but failed to do so).  The DCCA

considered Plaintiffs' arguments challenging the propriety of the probable cause hearing and

found that they "lack[ed] merit."  *See id.*  Thus, Plaintiffs are precluded from relying on

allegations of fabricated evidence, perjured testimony, or improprieties at the probable cause

hearing here, even if they now purport to prove different legal theories, because those factual

contentions have already been rejected in another judicial proceeding.

### D.     Act 6:  Destroying and Withholding Evidence

Finally, Plaintiffs allege that Defendants are liable for "destroying and withholding

evidence."  *See* Pls. Mem. at 3.  More specifically, Plaintiffs claim that Defendant Reddrick

shredded her investigation notes, in violation of Plaintiffs' Fifth Amendment due process rights, *see* Am. Compl., ¶¶ 39, 50(f); and that the District and its employees refused to turn over certain documents and communications that Plaintiffs requested in a Freedom of Information Act ("FOIA") request, *see id.*, ¶¶ 44.  These allegations also underlie Plaintiffs' claims of negligence, *see id.*, ¶ 58(2)(m), and infliction of emotional distress, *see id.*, ¶¶ 65(1)(*l*) (IIED), 69 (NIED).

Once again, the Court need only look to the issues that were squarely presented to the D.C. Superior Court and the DCCA to reject this claim on issue-preclusion grounds.  As Plaintiffs recognize in their own Amended Complaint, they fully litigated their access to the District's evidence during the neglect proceedings.  *See id.*, ¶¶ 39–40, 44–45.  According to the Amended Complaint, "Plaintiffs continually fought to obtain access to [Defendant Reddrick's notes] throughout the entire neglect proceeding and thereafter." *See id.*, ¶ 39.  When Plaintiffs filed their appellate brief with the DCCA, they included their allegations of due process violations.  *See id.*, ¶ 45.  Plaintiffs thus have already fully and fairly litigated, or have had the opportunity to litigate, the facts underlying their claim that they were entitled to evidence that was withheld or destroyed by Defendants.  The DCCA rejected their arguments and affirmed the judgment against them in a valid, final judgment on the merits, which rested on the conclusion that they abused and neglected D.O.  *See Sec. Indus. Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 900 F.2d 360, 364 (D.C. Cir. 1990).  Plaintiffs' vehement disagreement with the findings and conclusions of the D.C. courts is not sufficient to overcome the principles of issue preclusion.

## II.     Applicable Immunity Doctrines

In its initial opinion, the Court held in the alternative that "[e]ven if Plaintiffs' claims were not foreclosed under the doctrine of issue preclusion, the individual Defendants in this case are protected by various and overlapping immunity doctrines." *See* Mem. Op. at 20.  Plaintiffs, in their Motion for Reconsideration, also challenge that ruling, arguing that "Defendants were not entitled to blanket immunity." *See* Pls. Mem. at 7 (cleaned up).

### A.     District Defendants

Plaintiffs allege that Defendant Nix, in her role as Assistant Attorney General, drafted a false petition for removal of D.O. and "then had Defendant Reddrick," a CFSA social worker, falsely swear to its accuracy. *See* Am. Compl., ¶ 31.  According to Plaintiffs, Nix then made false representations to the Court during the probable cause hearing and Defendant Beander, a supervisory social worker, provided perjured testimony, all resulting in the Court's finding of probable cause to believe that D.O. had been neglected. *See id.*, ¶¶ 32–35.  Based on those allegations, Plaintiffs allege that the three District defendants violated their Fifth Amendment rights, and are liable for many kinds of tortious conduct. *See id.*, ¶¶ 50(c)–(e), 58(1)(f), (h), 63(2)(c)–(d), 65(1)(b), (m), 69.

With respect to their actions related to the probable cause hearing, the Court held that Defendants Nix, Reddrick, and Beander are shielded by absolute immunity. *See* Mem. Op. at 20–22.  On their Motion for Reconsideration, Plaintiffs must show "that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *See Ciralsky*, 355 F.3d at 671 (quoting *Firestone*, 76 F.3d at 1208). They have not done so.

17

In attacking the absolute immunity enjoyed by Defendant Nix, Plaintiffs assert that Defendant Nix is not entitled to immunity because she "fabricated" evidence *before* the initial probable cause hearing; and absolute immunity only applies to actions taken during the neglect proceedings. *See* Pls. Mem. at 8–9. Plaintiffs made this same argument in their Opposition to the District's Motion to Dismiss. *See* ECF No. 41 (Pl. Opp'n) at 15–16 (asserting that Nix violated Plaintiffs' rights "prior to performing any prosecutorial function" and therefore was not entitled to absolute immunity). They cannot now "reargue [a theory] upon which [the Court] has already ruled." *See Estate of Gaither*, 771 F. Supp. 2d at 10.

In any event, the argument fails on its face. Defendant Nix's immunity as a prosecutor is not limited to what she said and did during the hearing itself. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 272 (1993) (rejecting the "extreme position" that prosecutorial immunity "extends only to the act of initiation itself and to conduct occurring in the courtroom"). Instead, it extends to anything she does in her "'role as advocate for the State,'" including her out-of-court efforts to investigate Plaintiffs' neglect and draft the neglect petition. *See id.* at 272–73 (quoting *Imbler v. Pachtman*, 424 U.S. 409, 431 n.33 (1976)). Accordingly, all of Plaintiffs' claims against Defendant Nix fall within the scope of her absolute immunity.

Pursuant to the long-standing rule that defendants are immune from suit based on their testimony in a judicial proceeding, the Court also held that absolute immunity barred claims against social worker Reddrick for allegedly "falsely sign[ing] an affidavit in support of the District's neglect petition and provid[ing] false testimony in support of the same," *see* Mem. Op. at 20–21 (citing Am. Compl., ¶¶ 31, 63(d)); and supervisor Beander for "perjur[ing] herself at the probable cause hearing," *see id.* (citing Am. Compl., ¶¶ 33–35). In their Motion for

Reconsideration, Plaintiffs concede that Defendants Reddrick and Beander are entitled to absolute immunity for those actions. *See* Pls. Mem. at 7 (failing to address Beander's conduct); *id.* (agreeing that Defendant Reddrick's allegedly false swearing of the neglect petition falls within the scope of her absolute immunity).[7]

Lest there be any lingering uncertainty, District Defendants Nix, Reddrick, and Beander also are entitled to qualified immunity from Plaintiffs' constitutional claims for the actions they took to investigate D.O.'s neglect and to litigate the neglect proceedings against Plaintiffs. Plaintiffs bring their constitutional claims under 42 U.S.C. § 1983; they seek $5,000,000 in damages. *See* Am. Compl., ¶¶ 48–54. Public officials — like Defendants Beander, Nix, and Reddrick — are entitled to qualified immunity from damages claims under Section 1983. *See, e.g.*, *City of Escondido v. Emmons*, 139 S. Ct. 500 (2019) (*per curiam*). "To overcome a claim of qualified immunity, plaintiffs must show both (1) that an official 'violated a constitutional right' and (2) that 'the right was clearly established' at the time of the violation." *See Johnson v. Gov't of the Dist. of Columbia*, 734 F.3d 1194, 1201–02 (D.C. Cir. 2013) (quoting *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001)).

Under either prong of the analysis, Plaintiffs cannot prevail, as established by the Court's analysis *supra*. To overcome Defendants' qualified immunity on the first prong, Plaintiffs must show that the individual District Defendants violated their constitutional rights. *See Johnson*, 734 F.3d at 1201–02. As the Court has already discussed, however, Plaintiffs are precluded from

---

[7] To the extent that Plaintiffs allege common law torts based on acts not connected to the judicial proceeding at issue, the Court takes this opportunity to further clarify that the District Defendants are also entitled to absolute immunity against such claims. Even assuming away the absolute immunity arising from judicial testimony, the District Defendants acted in their discretionary capacities in the carrying out of official duties, and so are entitled to absolute immunity under well-established D.C. law. *See Dist. of Columbia v. Jones*, 919 A.2d 604, 608 (D.C. 2007); *Moss v. Stockard*, 580 A.2d 1011, 1020 (D.C. 1990); *Dist. of Columbia v. Thompson*, 570 A.2d 277, 293 (D.C. 1990), *vac'd on other grounds*, 593 A.2d 621 (D.C. 1991).

making that showing for any of the constitutional violations enumerated in the Amended

Complaint.  *See supra*.  Without showing any constitutional violation at all, Plaintiffs *a fortiori*

cannot show the violation of any "clearly established" right.  *See Johnson*, 734 F.3d at 1201–02.

In any event, Plaintiffs are unable to show that the government violated any "clearly established"

constitutional rights where the actions of the District Defendants were taken in the context of a

statutorily authorized neglect proceeding, the judgment of which was affirmed on appeal.  Thus,

the District Defendants are entitled to qualified immunity.  *See Pearson,* 555 U.S. at 244–45;

*Johnson,* 734 F.3d at 1201–02.

### B.   Child Abuse Pediatrician Norrell Atkinson

The absolute and qualified immunity doctrines that shield the District defendants from

liability do not extend to private actors like Defendant Atkinson — the physician who examined

D.O.  *See* Am. Compl., ¶¶ 16–17, 19–20, 23, 28, 37, 41; *Richardson v. McKnight*, 521 U.S. 399,

403 (1997) (explaining that § 1983 immunities extend only to state actors); ECF No. 13 (Mot. to

Dismiss and Mem. in Supp.) at 3 n.4 ("Atkinson[] is not an employee of the District of Columbia

and is not a state actor.").[8]  Dr. Atkinson is instead immunized from liability by the statutory

---

[8]       Plaintiffs have maintained throughout this litigation that Dr. Atkinson should be considered a state actor.
*See* Pls. Mem. at 9–10 ("Atkinson . . . was at all times acting as a state actor [and the District] never intended D.C.
Code § 4-1321.04 to protect state actors like Defendant Atkinson."); ECF No. 22 (Pls. Opp'n to Atkinson Mot. to
Dismiss) at 14–15.  A private party is properly deemed a state actor where the private actor is subjected to the
"coercive power" of the state or "significant encouragement, either overt or covert" by the state; when the party is
controlled by an agency of the State; when a private actor is "entwined with governmental policies or when
government is entwined in its management or control;" or when a "private actor has been delegated a public
function by the State."  *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* 531 U.S. 288, 295–96 (2001).
Here, Atkinson was not employed by the District, she did not receive funds from the District, and her medical
decisions were not directed by the District.  *See generally* Am. Compl.; *Simms v. District of Columbia*, 699 F. Supp.
2d 217, 225 (D.D.C. 2010).  But even if the Court agreed with Plaintiffs that Atkinson is a state actor based on her
role in assisting the CFSA in its investigation of D.O.'s case, that would not save Plaintiffs' claims, as Atkinson
(like Beander and Reddick) would then be shielded by qualified immunity and public official immunity for
discretionary actions, in addition to the statutory immunity under D.C. Code § 4-1321.04.  *See Moss*, 580 A.2d at
1020–21 (discussing public official immunity to common law tort claims); D.C. Code § 4-1321.02(b) (listing
mandatory reporters entitled to immunity, including state employees and actors).

scheme for protecting children from abuse and neglect in the District, which the Court discussed at length in its previous opinion.  *See* Mem. Op. at 22–24.

In seeking reconsideration of the Court's ruling that Dr. Atkinson is shielded from liability by D.C. law, Plaintiffs put forward several arguments that they claim the Court did not consider:  i.e., that Atkinson is not a mandatory reporter; that she never participated in the making of any report; that Atkinson acted in bad faith; and that the Court's ruling sweeps too far, extending immunity to individuals who should not be shielded for various policy reasons.  *See* Pls. Mem. at 9–10.  As with Plaintiffs' other immunity arguments, the Court has seen these contentions before, in Plaintiffs' Opposition to Atkinson's Motion to Dismiss.  *See* ECF No. 22 (Pls. Opp'n to Atkinson Mot. to Dismiss) at 9–13 (arguing that Atkinson was not a mandatory reporter, did not participate in the making of any report, acted in bad faith, and should not be extended immunity for policy reasons).  The Court need not traverse this ground again.

## CONCLUSION[9]

For the foregoing reasons, the Court will deny Plaintiffs' Motion for Reconsideration.  A separate Order will issue this day.

_____
FLORENCE Y. PAN
United States District Judge

Date:   September 8, 2022

---

[9]       Plaintiffs also argue that the Court "abused its discretion by not providing a hearing" prior to ruling on the motions to dismiss.  *See* Pls. Mem. at 10.  It is well established under the local rules that holding a hearing on a motion is within the discretion of the Court.  *See* LCvR 7(f); *Ndoromo v. Barr*, 486 F. Supp. 3d 388, 395 (D.D.C. 2020).  Indeed, Plaintiffs themselves acknowledge that a hearing is "not required."  *See* Pls. Mem. at 10.  In a case such as this, where Plaintiffs' claims are precluded on multiple grounds, the Court plainly did not abuse its discretion in declining to schedule an oral argument on the motion.